UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC, ATLANTIC RECORDING CORPORATION, CAPITOL RECORDS, LLC, ELEKTRA ENTERTAINMENT GROUP INC., LAFACE RECORDS LLC, SONY MUSIC ENTERTAINMENT, UMG RECORDINGS, INC., WARNER BROS. RECORDS INC., WARNER MUSIC GROUP CORP., and ZOMBA RECORDING LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>VITA TKACH and DOES 1-10, D/B/A GROOVESHARK.IO and GROOVESHARK.PW,<br><br>*Defendants*. | CIVIL ACTION NO. _____<br><br>**DECLARATION OF GIANNI P. SERVODIDIO IN SUPPORT OF PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER, SEIZURE ORDER, AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**<br><br>**[FILED UNDER SEAL PURSUANT TO 15 USC § 1116]** |

I, Gianni P. Servodidio, declare as follows:

1. I am an attorney with the law firm of Jenner & Block LLP, and I represent the Plaintiffs in this action. I submit this declaration in support of Plaintiffs' *Ex Parte* Motion for a Temporary Restraining Order against Defendants Vita Tkach, Does 1-10, d/b/a Grooveshark.io and Grooveshark.pw ("Defendants"). The statements made in this declaration are based on my personal knowledge or upon information provided to me by personnel working under my supervision that I believe to be correct. True and correct copies of all of the documents referred to in this declaration are appended hereto as indicated. If called to testify as a witness, I would testify as follows:

## BACKGROUND

2.      Between January 2010 and August 2012, the Plaintiffs in this action filed three separate lawsuits against Escape Media Group ("Escape"), the former owner and operator of the eponymous music streaming service known as "Grooveshark" (the "Grooveshark service") in New York state and federal courts.  These lawsuits asserted a variety of claims relating to Escape's unauthorized reproduction, distribution, and public performance of Plaintiffs' copyrighted sound recordings via the Grooveshark service.  *UMG Recordings, Inc. v. Escape Media Group, Inc.*, No. 100152/10, Complaint (N.Y. Sup. Ct. Jan. 6, 2010); *Arista Music, et al. v. Escape Media Group, Inc.* ("*Arista Music*"), No. 11 Civ. 8407, Complaint, Dkt. No. 3 (S.D.N.Y. Dec. 18, 2011); *Capitol Records, LLC, d/b/a EMI Music North America* ("*EMI*"), No. 12-CV-6646 (AJN), Complaint, Dkt. No. 1 (S.D.N.Y. Aug. 30, 2012).

3.      From at least as early as 2008 until April 30, 2015, Escape's Grooveshark service offered visitors to www.grooveshark.com (the "Grooveshark website") the ability to locate MP3 files (a popular format for digital music files) with a search box, which was prominently displayed on the Grooveshark website, and play or "stream" those files to their personal computers or other compatible devices.  Attached hereto as Exhibit A is a true and correct copy of a "screenshot" of the Grooveshark service homepage, as it appeared on a contemporaneous January 28, 2012 blog posting.  *See* Ismail Siraj, Tutorial – How to embed Grooveshark widget on your WordPress.com blog? and How to play music automatically?, arcblazen.wordpress.com, Jan. 28, 2012 , *available at* https://arcblazen.wordpress.com/2012/01/28/tutorial-how-to-embed-grooveshark-widget-on-your-wordpress-com-and-how-to-play-music-automatically/#more-420.

4.  In January 2012, when the above screenshot was taken, internet users' interest in the Grooveshark service (as measured by the number of searches in the Google Search engine for the term "Grooveshark") was at its highest point between 2012 and the cessation of the service in 2015, and was at 89% of its all-time high in November 2011. A true and correct printout of the Google Trends page for the term "Grooveshark" is attached hereto as Exhibit B. *See also* http://www.google.com/trends/explore#q=grooveshark (last visited May, 11, 2015).

5.  On September 29, 2014 in the *Arista Music* case, and on March 15, 2015 in the *EMI* case, the Courts found Escape liable for copyright infringement via the Grooveshark service. *Arista Music*, No. 11 Civ. 8407 (TPG), 2014 WL 5089743, at *1, 21-22 (Sept. 29, 2014); *EMI*, No. 12-CV-6646 (AJN), 2015 WL 1402049, at *1 (adopting Report and Recommendation).

6.  On April 30, 2015, Escape ceased to operate the Grooveshark service and assigned its intellectual property, including, but not limited to, the word mark "Grooveshark" and the shark fin logo design featured on the Grooveshark.com website (hereinafter "Grooveshark Marks") to Plaintiff UMG Recordings, Inc. ("UMG") pursuant to the terms of a settlement agreement between Escape and Plaintiffs. A true and correct printout of the Intellectual Property Assignment between Escape and UMG memorializing the intellectual property transfer is attached hereto as Exhibit C.

7.  On that same date, Escape and Plaintiffs submitted consent judgments in all three cases providing for permanent injunctive relief against Escape and, in two of the cases, awarding Plaintiffs monetary damages of $50 million dollars (in the *Arista Music* case) and $25 million dollars (in the *EMI* case). The Courts entered all three judgments shortly thereafter. *Arista Music*, No. 11 Civ. 8407 (TPG), Dkt. No. 175 (May 1, 2015); *UMG v. Escape*, No. 100152/10,

Dkt. No. 269 (May 4, 2015); *EMI*, No. 12-CV-6646 (AJN), Dkt. No. 108 (May 5, 2015).

8. Since the cessation of Escape's operation of the Grooveshark service on April 30, 2015, the Grooveshark website consists of only a single webpage explaining that Escape has shut down the former Grooveshark service and has assigned its intellectual property rights to the Plaintiffs. *See* grooveshark.com (last accessed May 11, 2015).

## THE PARTIES

### Plaintiffs

9. As set forth in the Declarations of Plaintiffs' representatives filed in support of this application, Plaintiffs are in the business of producing, distributing, selling, licensing, and facilitating the distribution, sale, public performance, and other authorized uses of sound recordings (*i.e.*, recorded music).

10. As set further explained in the Plaintiffs' representatives' declarations filed in support of this application, Plaintiffs are the copyright owners or owners of exclusive rights with respect to the majority of copyrighted sound recordings sold in the United States, including by some of the most popular and successful recording artists of all time, such as Beyoncé, Bob Marley, Green Day, Justin Timberlake, Kanye West, Lady Gaga, Michael Jackson, the Red Hot Chili Peppers, Santana, and many more.

### Defendants

11. As far as Plaintiffs have been able to determine, Defendants reside and operate a "copycat" version of the Grooveshark service available at a newly-created website accessible at grooveshark.io (the "Counterfeit Service") from unknown locations outside the United States.[1]

---

[1] According to the NIC.io website at http://www.nic.io/about.html, the .io domain is administered by NIC.io, which is operated by Internet Computer Bureau, a provider of domain

12. Additionally, Internet traffic to the web address grooveshark.pw is automatically redirected to grooveshark.io.[2]

13. According to Exhibit B of the Declaration of Mark McDevitt ("McDevitt Decl."), the registration record for the "grooveshark.io" domain name lists an individual named "Vita Tkach" as the Domain Owner, Admin Contact, Technical Contact, and Billing Contact with an address in the city of Vinnytsia in Ukraine. McDevitt Decl. ¶ 10 & Ex. B.

14. Plaintiffs have been unable to locate any publicly available information beyond the domain registration record identifying any person named "Vita Tkach" as involved in any manner with the Grooveshark.io domain.

15. Does 1-10 are individuals who, along with Vita Tkach, own and/or operate the Counterfeit Service, but whose identities and addresses are currently unknown to Plaintiffs.

**THE COUNTERFEIT SERVICE**

16. Defendants have described the Counterfeit Service on popular search engines with the patently false and misleading claim that the Counterfeit Service is the "New Grooveshark.com." Attached hereto as Exhibit D are true and correct copies of search results for "Grooveshark" and "Grooveshark.io" from the Google and Bing search engines, respectively, that I caused to be created on May 9, 2015.

17. A selection of recent posts from Twitter.com shows that users were misled into believing, *inter alia*, that "Grooveshark is back, and how!" "Grooveshark is back from the dead,"

---

name services based in the United Kingdom. *See* http://www.nic.io/about.html (last accessed May 11, 2015).

[2] According to the Registry.PW website at http://registry.pw/about/, the .pw domain name is administered by the .PW Registry, which is controlled by the Directi Group, a business organization with offices in India, China, and the United Arab Emirates. *See* http://registry.pw/about/ (last accessed May 11, 2015); http://www.directi.com/about/offices (last accessed May 11, 2015.

"someone revived the recently defunct Grooveshark," "Grooveshark is back up through Grooveshark_io," and "someone resurrected Grooveshark." Attached hereto as Exhibit E are true and correct copies of posts from Twitter.com, which I cause to be printed on May 9, 2015.

18. Users who visit the Counterfeit Service can locate MP3 files with a search box, copied from the original Grooveshark website, which is prominently displayed to the user. Attached hereto as Exhibit F is a true and correct copy of a "screenshot" of the homepage of the Grooveshark.io website, which I caused to be created on May 9, 2015. After a user enters a search query, the Counterfeit Service directs users to search result pages, which contain links to MP3 files located on Defendants' servers. This process enables users to reproduce or perform the song embodied in each MP3 file. Each result on a search result page contains two types of icons: (a) a "download" icon, which enables users to download a new copy of the MP3 file, and (b) a "play" icon, which opens a small in-page player and begins playing the song.

19. The Counterfeit Service's collection of MP3 files contains an enormous number of Plaintiffs' copyrighted works. Users can quickly and easily find, and then reproduce or perform, full-length infringing copies of Plaintiffs' sound recordings like, *inter alia*, Michael Jackson's "Billie Jean," Green Day's "American Idiot," and Lady Gaga's "Born This Way."

20. As an indicator of the growing popularity of the Counterfeit Service, Grooveshark.io is already the top search return on Google in response to a query for "Grooveshark," even though the Counterfeit Service has existed for *less than a week.* See Ex. D.

21. Attached hereto as Exhibit G is a is a true and correct copy of a screenshot of the privacy policy page of the Counterfeit Service, which I caused to be created on May 9, 2015.

22. Attached hereto as Exhibit H is a is a true and correct copy of a screenshot of the "Contact Us" page of the Counterfeit Service, which I caused to be created on May 9, 2015.

**THE PRESENT APPLICATION**

23. Plaintiffs have not publicized that they are seeking the requested relief in this application, nor have they made a previous application for similar relief in this action.

24. As described in more detail in the McDevitt Declaration, the provision of notice to defendants of this application would nullify plaintiffs' ability to obtain meaningful relief as Defendants are highly likely to attempt to transfer the infringing domain names to registrars located outside the U.S. and beyond the reach of this Court and thereby ensure the ongoing operation of the Counterfeit service irrespective of this action. McDevitt Decl. ¶¶ 19, 25-26.

25. Numerous courts in this District and elsewhere have granted the same or comparable *ex parte* relief requested herein, including the restraint of counterfeit-related assets and instrumentalities. See, e.g, Prelim. Inj. Order, *Advanced Access Content Sys. Licensing Admin., LLC v. Shen d/b/a DVDFab*, No. 14-cv-01112, slip op. (S.D.N.Y. Mar. 4, 2014), Dkt. No. 21; *Microsoft Corp. v. Does 1-8*, No. 13-CV-1014, slip op. (W.D. Tex. Nov. 25, 2013); Order, *Datatech Enterprises v. FF Magnat Ltd.*, No. C-12-4500, slip op. (N.D. Cal. Aug. 28, 2012) Dkt. No. 9; TRO, *Liberty Media Holdings, LLC v. FF Magnat Ltd.*, 12-cv-1057, slip op. (D. Nev. June 21, 2012), Dkt. No. 11; TRO, *True Religion Apparel, Inc. v. Xiaokang Lei*, No. 11-cv-8242(HB), slip op. (S.D.N.Y. Nov. 17, 2011), Dkt. No. 7; TRO, *PRL USA Holdings, Inc. v. Kiat*, No. 10-cv-6456 (PGG), slip op. (S.D.N.Y. Sept. 1, 2010), Dkt. No. 11; TRO, *N. Face Apparel Corp. v. Fujian Sharing Imp. & Exp. Ltd.*, No. 10-civ-1630, slip op. (S.D.N.Y. Mar. 2, 2010), Dkt. No. 15; TRO, *Nat'l Football League v. Cheng d/b/a nfljerseydiscount.com*, No. 11-cv-344 (WHP), slip op. (S.D.N.Y. Jan. 19, 2011), Dkt. No. 7. Attached hereto as Exhibit I are true and correct copies of examples of Orders in the above-mentioned cases.

26.     Attached hereto as Exhibit J is a true and correct copy of a letter from me to the Chief of the Civil Division U.S. Attorney Office in the Southern District of New York, dated May 12, 2015.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of May, 2015, at New York, New York.

_____
Gianni P. Servodidio