UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC, ATLANTIC RECORDING CORPORATION, CAPITOL RECORDS, LLC, ELEKTRA ENTERTAINMENT GROUP INC., LAFACE RECORDS LLC, SONY MUSIC ENTERTAINMENT, UMG RECORDINGS, INC., WARNER BROS. RECORDS INC., WARNER MUSIC GROUP CORP., and ZOMBA RECORDING LLC,<br><br>    *Plaintiffs*,<br><br>v.<br><br>VITA TKACH, and DOES 1-10, D/B/A GROOVESHARK.IO and GROOVESHARK.PW,<br><br>    *Defendants*. | CIVIL ACTION NO. _____<br><br>DECLARATION OF DARREN J. SCHMIDT IN SUPPORT OF *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER, SEIZURE ORDER, AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION |

I, Darren J. Schmidt, hereby declare as follows:

1. I am employed as Senior Director, Business & Legal Affairs, for the Universal Music Group, a collection of companies that include Plaintiffs UMG Recordings, Inc. ("UMG") and Capitol Records, LLC ("Capitol Records") (collectively the "UMG Plaintiffs"). In that role, I have possession, custody, and/or control of the business records of the UMG Plaintiffs. I am submitting this declaration in support of Plaintiffs' *ex parte* application. I have personal knowledge of the following facts and, if called upon as a witness, would testify as to the following:

2. My responsibilities for the UMG Plaintiffs include, among others, supervising litigation and handling litigation-related matters. I am also knowledgeable about the UMG Plaintiffs' copyright and trademark registrations and licensing practices and am familiar with UMG Plaintiffs' business relationships.

3. The UMG Plaintiffs are engaged in the creation, distribution, marketing and/or sale of sound recordings and have business offices located in New York, New York. In connection with this business, the UMG Plaintiffs have acquired exclusive rights under copyright to various sound recordings. The UMG Plaintiffs have acquired these rights either through recording contracts with artists or through other types of agreements, such as exclusive licensing or joint venture agreements with the original copyright claimants, or by virtue of being the successor-in-interest to the original copyright claimants. The underlying business records reflecting the UMG Plaintiffs' ownership of the sound recordings at issue in this action are maintained by the UMG Plaintiffs in the ordinary course of business.

4. Attached hereto as Exhibit A is a spreadsheet showing the infringing recordings available on the Grooveshark.io domain which are at issue in this action and for which the UMG Plaintiffs either own the copyrights in the sound recordings, had exclusive rights under copyright (*e.g.*, reproduction and/or distribution rights) during the time period relevant to this litigation, or is the successor-in-interest to an entity that held such rights. These recordings are listed in Exhibit A to the Complaint filed in this action.

5. The UMG Plaintiffs have *never* authorized Defendants to distribute, perform, reproduce, or otherwise exploit any of the sound recordings listed in Exhibit A via the Grooveshark.io domain or otherwise.

6. UMG is the owner by assignment of the entire right, title, and interest in and to, *inter alia*, the following federally-registered marks at issue in this case:

| Registration No. | Trademark | Good and Services |
|---|---|---|
| 4114779 | GROOVESHARK | Entertainment marketing services, namely, marketing, promotion and advertising for recording and performing artists. Audio broadcasting; Internet radio broadcasting services; broadcasting of audio programming over the Internet. Entertainment |

2

| | | services via the Internet, namely, providing nondownloadable prerecorded music, providing nondownloadable prerecorded music according to consumer preferences, and providing information in the field of music. |
|---|---|---|
| 4114780 | ● | Same as above. |
| 4190490 | GROOVESHARK SURVEYS | Conducting market surveys. |

7. Attached hereto as Exhibits B, C, and D are true and correct copies of the above referenced trademark registrations (hereinafter "Grooveshark Marks").

8. UMG acquired ownership of the Grooveshark Marks as part of a settlement of a multi-year copyright infringement lawsuit brought by Plaintiffs against Escape Media Group, Inc. ("Escape"), the previous owner of the Grooveshark Marks and the operators of the well-known Grooveshark music streaming service (the "Grooveshark Music Service"). In addition to transferring the Grooveshark Marks to UMG, the settlement required Escape *inter alia* to disable the Grooveshark Music Service and create a static homepage message directing consumers to Plaintiffs' legitimate music streaming partners.

9. Attached hereto as Exhibit E is a true and correct copy of an assignment to UMG by which it obtained all right, title and interest in and to the Grooveshark Marks from Escape.

10. Defendants have used the Grooveshark Marks to launch a "copycat" version of the Grooveshark Music Service, making the Grooveshark Marks accessible to any Internet user at the newly-created website located at grooveshark.io (the "Counterfeit Service"). Defendants' streaming service, over which UMG has no control, threatens to destroy the reputation and goodwill associated with the Grooveshark Marks, and undermines their commercial value to UMG by causing confusion among the relevant consumers.

11. Moreover, Defendants' unlicensed streaming and viral distribution of UMG's copyrighted sound recordings is causing irreparable harm to the UMG Plaintiffs. First, the UMG Plaintiffs' business model is dependent upon the licensing of their music catalog to legitimate streaming services. If customers can instead download and stream the UMG Plaintiffs' catalog for free and without restriction from the Counterfeit Service, customers will have little incentive to purchase music or pay for the streaming services on which the UMG Plaintiffs' businesses rely. As a result, the Counterfeit Service will depress the UMG Plaintiffs' ability to charge a fair market rate for its music, since all of its licensees will have to compete with a service that pays no license fees.

12. In addition, Defendants are intentionally seeking to attract millions of former users of the Grooveshark Music Service to the Counterfeit Service where infringing copies of the UMG Plaintiffs' sound recordings can be streamed and downloaded. As noted above, the settlement agreement between Plaintiffs and Escape required Escape to direct users of the Grooveshark Music Service to Plaintiffs' legitimate streaming partners. By diverting users from the Grooveshark Music Service to the Counterfeit Service during this critical time period, Defendants are threatening to eviscerate a critical component of the settlement agreement with Escape and will perpetuate the massive and ongoing infringement of the UMG's Plaintiffs' copyrights by millions of users.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: May 11, 2015

Darren J. Schmidt