**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARISTA RECORDS LLC, ATLANTIC RECORDING CORPORATION, CAPITOL RECORDS, LLC, ELEKTRA ENTERTAINMENT GROUP INC., LAFACE RECORDS LLC, SONY MUSIC ENTERTAINMENT, UMG RECORDINGS, INC., WARNER BROS. RECORDS INC., WARNER MUSIC GROUP CORP., and ZOMBA RECORDING LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>VITA TKACH, and DOES 1-10, D/B/A GROOVESHARK.IO AND GROOVESHARK.PW<br><br>*Defendants*. | CIVIL ACTION<br>NO. 15-CV-03701<br><br>**[FILED UNDER SEAL PURSUANT TO 15 U.S.C. § 1116 AND THE MAY 13, 2015 SEALING ORDER]** |

**PLAINTIFFS' APPLICATION FOR A SUPPLEMENTAL ORDER**
**AND ORDER TO SHOW CAUSE REQUIRING THIRD PARTY CLOUDFLARE, INC.**
**TO COMPLY WITH THE PENDING TEMPORARY RESTRAINING ORDER**

**INTRODUCTION**

On May 13, 2015, this Court (Batts, J.) entered a Temporary Restraining Order, Seizure Order, and Order to Show Cause for Preliminary Injunction in this action (the "TRO"). The Court found that Plaintiffs are likely to succeed on their claims that Defendants are operating a blatantly illegal website (the "Counterfeit Service") that they have branded by stealing trademarks used to identify a popular music service, known as "Grooveshark," and that Defendants, through their Counterfeit Service, are also infringing Plaintiffs' copyrights on a massive scale. Among other things, the TRO prohibits Defendants, their agents, "any persons acting in concert or participation with them[,] or third parties providing services used in connection with Defendants' operations," from using the federally-registered Grooveshark trademarks (including the word mark "Grooveshark") in connection with the Counterfeit Service. *See* TRO at 6.

Despite having received and acknowledged notice of the TRO the next day, third party CloudFlare, Inc. ("CloudFlare") refuses to comply with the TRO and continues to provide certain vital services to Defendants, including the delivery of Internet traffic to and from Defendants' Counterfeit Service, now accessible at the domain name "grooveshark.li." Therefore, and for the reasons set forth below, Plaintiffs respectfully request that this Court issue a supplemental Order, pursuant to Federal Rule of Civil Procedure 65, 15 U.S.C. § 1116, 17 U.S.C. § 502, and the All Writs Act, 28 U.S.C. § 1651(a), requiring CloudFlare to: (1) comply immediately with the TRO and cease and desist from its provision of any and all services and other means of support to Defendants and their Counterfeit Service, (2) preserve all evidence of any interactions with Defendants or the Counterfeit Service, including (without limitation) all log files reflecting user search queries and other uses of the Counterfeit Service, and all evidence that may be used to identify Defendants, and (3) compensate Plaintiffs for their reasonable attorneys'

fees and costs in connection with this application.  Plaintiffs have served Defendants and CloudFlare with a copy of this application.[1]

## BACKGROUND

On May 12, 2015, Plaintiffs applied to this Court *ex parte* for a temporary restraining order, a seizure order, and an order to show cause for a preliminary injunction.  As explained in greater detail in Plaintiffs' Memorandum of Law in support of that application ("Plaintiffs' TRO Brief"), Defendants are anonymous, scofflaw website operators who have launched a "copycat" version of the well-known "Grooveshark" music streaming service.  The former operators of the real Grooveshark service were the subject of years of litigation brought by Plaintiffs that culminated in three separate Court orders (including by two Courts in this district) requiring them to terminate their operation of the Grooveshark service.[2]  As part of their settlement of the litigation with Plaintiffs, the former Grooveshark operators conveyed to Plaintiff UMG Recordings, Inc. ("UMG") ownership of federally-registered trademarks pertaining to the Grooveshark service (the "Grooveshark Marks"), including the word mark "Grooveshark."

Within days after the settlement and entry of consent judgments in the litigation, Defendants, on May 5, 2015, launched their Counterfeit Service using domain names that incorporated the Grooveshark Marks – at that time, "grooveshark.io" and "grooveshark.pw" – with the express intention to sow confusion in the marketplace as to whether their Counterfeit

---

[1] Plaintiffs served a copy of this Application on Defendants today by the same electronic means by which they served the Summons and Complaint.  Plaintiffs served a copy of this Application on CloudFlare by email today to CloudFlare's counsel, and have also initiated a hand-delivery to CloudFlare that is expected to be completed this afternoon.  Plaintiffs' counsel also spoke with Counsel for CloudFlare this morning by telephone and apprised him of the filing and substance of this Application.  Counsel for CloudFlare agreed to accept service by email as a courtesy, but without waiver of objections.

[2] *See Arista Music, et al. v. Escape Media Group, Inc*, No. 11 Civ. 8407 (TPG), Consent Judgment, Dkt. No. 175 (S.D.N.Y. May 1, 2015); *UMG Recordings, Inc. Escape Media Group, Inc.*, No. 100152/10, Consent Judgment, Dkt. No. 269 (N.Y. Sup. Ct. May 4, 2015); *Capitol Records, LLC, d/b/a EMI Music North America*, No. 12-CV-6646 (AJN), Consent Judgment, Dkt. No. 108 (S.D.N.Y. May 5, 2015).

Service was a resurrected version of the real Grooveshark service. Plaintiffs filed this action on May 12, 2015, alleging that Defendants were engaged in trademark counterfeiting and infringement, unfair competition and false designation of origin, cybersquatting, and direct and secondary copyright infringement.

1. **Defendants' Contempt of the TRO**

On May 13, 2015, this Court found that Plaintiffs were likely to succeed on the merits of their claims and issued the TRO. Plaintiffs served the TRO immediately on Defendants and Namecheap, Inc., the California-based domain name registrar through which Defendants had registered the "grooveshark.io" and "grooveshark.pw" domains names. *See* Declaration of Kenneth L. Doroshow ("Doroshow Decl."), appended hereto, at ¶¶ 3-4. Although Defendants openly flouted the TRO, Namecheap promptly complied with it, the effect of which was the disabling of the "grooveshark.io" and "grooveshark.pw" domains. *See* Supplemental Declaration of Mark McDevitt ("Supp. McDevitt Decl."), appended hereto, at ¶ 3.

Immediately following the disabling of those two domains, Defendants registered a new infringing domain name, "grooveshark.vc," and used that domain as the new online location for the Counterfeit Service. *Id.* ¶ 4. In open defiance of the TRO, Defendants vowed that Plaintiffs "will not stop us" and that "we're more determined than ever to keep Grooveshark alive and kicking." *See* Doroshow Decl. ¶ 8, Exhibit F. The domain registrar through which Defendants had registered the "grooveshark.vc" domain (a company called "Dynadot") is also located in the United States, however, so Plaintiffs promptly served Dynadot with notice of the TRO. *Id.* ¶ 5. Dynadot complied with the TRO and, as a result, the "grooveshark.vc" domain was also disabled. *See* Supp. McDevitt Decl. ¶ 4.

Immediately following the disabling of the "grooveshark.vc" domain, Defendants registered yet another domain name, "grooveshark.li," where the Counterfeit Service now is

3

accessible. *Id.* ¶ 5. The ".li" domain is the Internet country code top-level domain for the nation of Liechtenstein, and the registrar through which Defendants registered their "grooveshark.li" domain is located in Switzerland. *Id.*

    2.    **CloudFlare's Refusal to Comply with the TRO**

At all times since the inception of the Counterfeit Service to the present day, Defendants have employed the services of CloudFlare for most aspects of the Counterfeit Service's operations.[3] As explained in Plaintiffs' TRO Brief, CloudFlare provides a so-called "pass-through security service" that acts, in effect, as a "middleman" that sits between a website and the users who interact with it. *See* Plaintiffs' TRO Brief at 12. Rather than allow users to contact the server on which the Defendants' website is hosted directly (the "Host Server"), CloudFlare receives certain user interactions with the Counterfeit Service (including, for example, all search queries and results for infringing sound recordings) and relays them through CloudFlare servers to and from the Host Server and the requesting users. *Id.* CloudFlare also provides other services that facilitate user interactions with the Counterfeit Service and allow Defendants to conceal their true identities. *See* Supp. McDevitt Decl. ¶¶ 6-7. As it is currently configured, the Counterfeit Service would be inaccessible to users at its domain name "grooveshark.li" absent CloudFlare's role in facilitating user interactions with the service. *Id.* ¶ 6.

On May 14, 2015, Plaintiffs served CloudFlare with a copy of the TRO and requested that CloudFlare comply with the TRO by ceasing and desisting from its provision of support to Defendants' Counterfeit Service. Doroshow Decl. ¶ 6. CloudFlare's counsel confirmed receipt

---

[3] CloudFlare is a Delaware corporation that does business throughout the United States, including in New York. *See, e.g.*, *Terms of Use*, https://www.cloudflare.com/terms (last visited May 22, 2015); Patrick Hoge, *CloudFlare Reveals $50 Million Round*, San Francisco Business Times (Dec. 17, 2013, 4:00 AM PST), http://www.bizjournals.com/sanfrancisco/blog/2013/12/cloudflare-reveals-50-million-round.html (last visited May 22, 2015).

of the TRO and Plaintiffs' request that same day. *Id.* The next day, in a telephone conversation with Plaintiffs' counsel, CloudFlare's counsel stated that CloudFlare did not construe the TRO as applying to it and, rather than ceasing the provision of services to Defendants, insisted that Plaintiffs seek an order from this Court requiring CloudFlare to do so. *Id.* ¶ 7.

## ARGUMENT

CloudFlare is in plain violation of the TRO and should be ordered to comply forthwith. By its terms, the TRO applies to "Defendants, including their agents, … confederates … and any persons acting in concert or participation with them or *third parties providing services used in connection with Defendants' operations*…." TRO at 6 (emphasis added). Moreover, the TRO prohibits such parties from "using" or "linking to … any … domain name that incorporates, in whole or in part, any of [the] Grooveshark Marks (the 'Infringing Domain Names')." *Id.* at 5.

CloudFlare is fully on notice of the TRO, Plaintiffs' claims, Defendants' open flouting of this Court's Order, the fact that Plaintiff UMG is the owner of the Grooveshark Marks (including the "Grooveshark" word mark), and the fact that Defendants' Counterfeit Service has been – and continues to be – accessible at domain names that incorporate the Grooveshark word mark (now, "grooveshark.li"). By choosing to continue to provide its services to Defendants in the face of this clear knowledge of the illegality of Defendants' actions, CloudFlare is now aiding and abetting that unlawful conduct and should be ordered to cease and desist from it immediately.[4] *See, e.g.*, *North Face Apparel Corp. v. Fujian Sharing Imp. & Exp. Ltd.*, No. 10-civ-1630 (AKH), slip op. at 4-6 (S.D.N.Y. June 24, 2010) (finding domain name registry to have aided and abetted counterfeiting websites by continuing to connect users to the websites: "My

---

[4] Given CloudFlare's refusal to cease its aiding and abetting of this unlawful conduct absent a further Order from this Court, an award of Plaintiffs' reasonable attorneys' fees and costs in connection with this Application is also appropriate. *See, e.g.*, *Hall v. Cole*, 412 U.S. 1, 4 (1973) ("[F]ederal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require"); *B&M Linen, Corp. v. Kannegeisser, USA, Corp.*, 679 F. Supp. 2d 474, 485 (S.D.N.Y. 2010).

injunction, once served upon [the] Registry, should have alerted it to no longer play its role in allowing customers to connect to defendant counterfeiters' websites, for [the] Registry would, by continuing to do so, commit an unlawful act, by aiding and abetting in defendants' unlawful counterfeiting activities in violation of United States law"); *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 195-96 (2d Cir. 2010) ("Nonparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction, if, with actual notice of the court's order, they actively aid and abet a party in violating that order" (quoting *Waffenschmidt v. MacKay*, 763 F.2d 711, 714 (5th Cir. 1985)).[5]

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that CloudFlare be ordered to: (1) immediately cease and desist from its provision of any and all services and other means of support to Defendants and their Counterfeit Service, (2) preserve all evidence of any interactions with Defendants or the Counterfeit Service, including (without limitation) all log files reflecting user search queries and other uses of the Counterfeit Service, and all evidence that may be used to identify Defendants, and (3) compensate Plaintiffs for their reasonable attorneys' fees and costs in connection with this application.

---

[5] Pursuant to this Court's Order issued yesterday, the TRO that CloudFlare is violating will be converted into a preliminary injunction on May 29, 2015, if Defendants, who failed to notice an appearance and to answer Plaintiffs' complaint by the court-ordered deadline, also fail to submit answering papers on Plaintiffs' order to show cause. *See* Order (May 21, 2015).

DATED: New York, NY
       May 22, 2015

Respectfully submitted,

JENNER & BLOCK LLP

By: _____
Andrew H. Bart (AB-6724)
Gianni P. Servodidio (GS-0713)
Lindsay W. Bowen (LB-8510)
Alison I. Stein (AS-2884)
Ava U. McAlpin (AM-4645)
919 Third Avenue
39th Floor
New York, NY 10022
Telephone: (212) 891-1600
Facsimile: (212) 891-1699

Kenneth L. Doroshow (KD-8374)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone: (202) 639-6027
Facsimile: (202) 639-6066

*Attorneys for Plaintiffs*

7