### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC, ATLANTIC RECORDING CORPORATION, CAPITOL RECORDS, LLC, ELEKTRA ENTERTAINMENT GROUP INC., LAFACE RECORDS LLC, SONY MUSIC ENTERTAINMENT, UMG RECORDINGS, INC., WARNER BROS. RECORDS INC., WARNER MUSIC GROUP CORP., and ZOMBA RECORDING LLC, | CIVIL ACTION 15 Civ. 03701 (AJN) |
| *Plaintiffs*, | |
| v. | |
| VITA TKACH, and DOES 1-10, D/B/A GROOVESHARK.IO AND GROOVSHARK.PW | |
| *Defendants*. | |

### NON-PARTY CLOUDFLARE, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR A SUPPLEMENTAL ORDER

William J. Harrington, Esq.
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: 212.813.8800

Grant Fondo, Esq.*
GOODWIN PROCTER LLP
135 Commonwealth Drive
Menlo Park, CA 94025
Tel: 650.752.3100

Mitchell L. Stoltz, Esq.*
Corynne McSherry, Esq.*
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Tel: 315.425.2700

*Counsel For Third Party CloudFlare, Inc.*

*(*Pro Hac Vice Applications To Be Submitted.)*

Dated: May 28, 2015

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ........................................................................................... 2

    A.    The Nature of DNS Services .................................................................2

    B.    CloudFlare's Services ............................................................................3

    C.    The Defendants' Use of CloudFlare Relating To This Dispute ............4

ARGUMENT .................................................................................................................... 5

    A.    CloudFlare Should Not Be Ordered to Comply With the TRO Because
            CloudFlare Is Not In Active Concert or Participation with Defendants
            Under Fed. R. Civ. P. 65(d). .................................................................5

          1.    FEDERAL RULE OF CIVIL PROCEDURE 65(D) REQUIRES
                 ACTIVE CONCERT OR PARTICIPATION TO BIND A
                 NONPARTY .................................................................................6

          2.    CLOUDFLARE IS NOT IN ACTIVE CONCERT OR
                 PARTICIPATION WITH DEFENDANTS ................................7

    B.    The TRO's Other Legal Bases Are Subject To The Same Limitations As
            Fed. R. Civ. P. 65 ................................................................................10

    C.    Allowing Injunctions To Bind Non-Parties Not In Active Concert or
            Participation Would Unfairly Burden Internet Infrastructure Providers
            With No Interest In A Legal Dispute. ...................................................12

    D.    An Award of Attorney Fees Against CloudFlare is Not Appropriate ...................14

CONCLUSION .............................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alemite Mfg. Corp. v. Staff*,
   42 F.2d 832 (2d Cir. 1930).............................................................................6, 11

*Alyeska Pipeline Co. v. Wilderness Society*,
   421 U.S. 240 (1975)............................................................................................14

*In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litigation)*,
   770 F.2d 328 (2d Cir. 1985).................................................................................11

*Bambu Sales Inc. v. Ozak Trading Inc.*,
   58 F.3d 849 (2d Cir. 1995)...................................................................................15

*Blockowicz v. Williams*,
   630 F.3d 563 (7th Cir. 2010) .........................................................................6, 7, 9

*Bobolas v. Does 1-100*,
   No. CV-10-2056-PHX-DGC, 2010 WL 3923880 (D. Ariz. Oct. 1, 2010).............9

*Cablevision Sys. Corp. v. Muneyyirci*,
   No. CV 90 2997(RJD), 1995 WL 362541 (E.D.N.Y. 1995) ...................................6

*CommScope, Inc. of North Carolina v. Commscope (U.S.A.) Intern. Group Co., Ltd.*,
   809 F. Supp. 2d 33 (N.D.N.Y. 2011)...................................................................10

*E.A. Renfroe & Co., Inc. v. Moran*,
   338 Fed. Appx. 836 (11th Cir. 2009)..................................................................6, 8

*Eli Lilly & Co. v. Gottstein*,
   617 F.3d 186 (2d Cir. 2010)...................................................................................7

*Florida Med. Ass'n, Inc. v. U. S. Dept. of Health, Ed. and Welfare*,
   601 F.2d 199 (5th Cir. 1979) ...............................................................................11

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994)............................................................................................14

*GMA Accessories, Inc. v. Eminent*,
   2008 WL 2355826 (S.D.N.Y. 2008)......................................................................7

*Hall v. Cole*,
   412 U.S. 1 (1973)................................................................................................15

*Hammer v. Trendl*,
   No. CV02-2462ADS, 2002 WL 32059751 (E.D.N.Y. 2002)................................10

*Matthew Bender v. West Publ'g*,
   240 F.3d 116 (2d Cir. 2001)...................................................................................14

*Microsystems Software, Inc. v. Scandinavia Online AB*,
   226 F.3d 35 (1st Cir. 2000)......................................................................................6

*New York v. Operation Rescue Nat'l*,
   80 F.3d 64 (2d Cir. 1996)....................................................................6, 7, 11, 14

*Paramount Pictures Corp. v. Carol Pub. Group, Inc.*,
   25 F. Supp. 2d 372 (S.D.N.Y. 1998).....................................................................10

*Pitbull Productions, Inc. v. Universal Netmedia, Inc.*,
   No. 07 Civ. 1784(RMG)(GWG), 2007 WL 3287368 (S.D.N.Y. 2007) ................10

*Regal Knitwear Co. v. N.L.R.B.*,
   324 U.S. 9 (1945)......................................................................................................6

*Reno Air Racing Ass'n, Inc. v. McCord*,
   452 F.3d 1126 (9th Cir. 2006) ...............................................................................11

*S.E.C. v. Platinum Inv. Corp.*,
   98 Fed. App'x. 33 (2d Cir. 2004)..............................................................................7

*Software Freedom Conservancy, Inc. v. Westinghouse Digital Electronics, LLC.*,
   812 F. Supp. 2d. 483 (S.D.N.Y. 2011)......................................................................7

*TE-TA-MA Truth Foundation-Family of URI, Inc. v. World Church of the Creator*,
   392 F.3d 248 (7th Cir. 2004) ..................................................................................15

*Twin Peaks Prods. v. Publ'ns Int'l, Ltd.*,
   996 F.2d 1366 (2d Cir. 1993)..................................................................................15

*United States v. Regan*,
   858 F.2d 115 (2d Cir. 1988)...............................................................................6, 12

*Vuitton et Fils S.A. v. Carousel Handbags*,
   592 F.2d 126 (2d Cir. 1979)..............................................................................10, 11

**Statutes**

18 U.S.C. § 981............................................................................................................12

18 U.S.C. § 984............................................................................................................12

18 U.S.C. § 1956 ..........................................................................................................12

28 U.S.C. § 1651(a) .....................................................................................................11

All Writs Act ................................................................................................................11

Lanham Act § 34 ..........................................................................................................11

Lanham Act § 1117(a) .................................................................................................15

**Other Authorities**

Fed. R. Civ. P. 65 ..................................................................................................... *passim*

Stop Online Piracy Act of 2011 (H.R. 3261) ..............................................................13

*Obama Administration Responds to We the People Petitions on SOPA and Online
    Piracy* (Jan. 14, 2012), https://www.whitehouse.gov/blog/2012/01/14/obama-
    administration-responds-we-people-petitions-sopa-and-online-piracy ...................13

## INTRODUCTION

In their Application for a Supplemental Order (the "Application") filed on March 22, 2015, Plaintiffs seek to enforce an order against CloudFlare, Inc., a nonparty that provides a service to the Defendants but takes no action to further their allegedly infringing conduct and cannot control, influence, or stop it. The law does not allow such enforcement, and for good reason.

CloudFlare provides services to websites, making them faster and more resistant to malicious attack. CloudFlare does not control the contents of its customers' websites, and it does not sell, transfer, register, or administer customers' domain names.

Plaintiffs, who are record labels, accuse Defendants of creating a website that infringes their trademarks and copyrights, and seek to make the Defendants' website disappear from the Internet. In pursuit of that goal, Plaintiffs obtained a Temporary Restraining Order (the "TRO") naming a particular website, ordering it to cease using the name "grooveshark," and to cease infringement of Plaintiffs' copyrights. Although CloudFlare is not a party to the case, Plaintiffs now contend that the TRO applies to CloudFlare and requires it to stop providing services to new websites that Plaintiffs contend have been started by the Defendants.

Under all applicable legal standards, only a party, a party's agent, or one in "active concert or participation" with them can be bound by a TRO or an injunction. Fed. R. Civ. P. 65(d)(2). Active concert requires action, and CloudFlare has taken none. Participation means assisting a defendant in evading an injunction. CloudFlare has not so assisted defendants and, in fact, has no ability to stop the alleged infringement. Even if CloudFlare—and *every company in the world that provides similar services*—took proactive steps to identify and block the Defendants, the website would remain up and running at its current domain name.

1

Rule 65's requirement that an injunction order be appropriately tailored serves a vital function, particularly with respect to new technologies. Even the simplest communications on the Internet involve systems owned by numerous entities, from the Domain Name System to data transit providers to colocation facilities, in complex interaction that varies over time. While all of these entities participate in the process of Internet data transmission, each one's contribution is automated, cooperative, and generally replaceable. Only some have the ability to block or suppress particular communications. Among these entities, only those in collaboration with a defendant through affirmative acts can be subject to an injunction. Disregarding the limits of the injunction power turns a tool for the "just, speedy, and inexpensive resolution of every action and proceeding" into a legal cudgel that can be wielded indiscriminately by a party.

Accordingly, CloudFlare requests that the Court deny the Application for Supplemental Order.

## FACTUAL BACKGROUND

### A.    <u>The Nature of DNS Services</u>

An understanding of CloudFlare's business requires an explanation of the Domain Name System (DNS). DNS is a globally distributed database that matches human-readable domain names like cloudflare.com into the numeric Internet Protocol addresses that computers use to route data to its destination. *See* Declaration of Ólafur Guðmundsson ¶¶ 1, 4 ("Guðmundsson Decl."). Although most devices and services on the Internet use DNS, and millions of computers and organizations worldwide collectively implement the database, only a small number of entities control the mapping of a particular domain name to one or more IP address, and thus the website or other service to which the domain name points. Typically, these include the owner of the domain name, the registrar that registered the name, and the registry that maintains it. Guðmundsson Decl. ¶¶ 4-8.

2

Each domain name in use has one or more "authoritative domain name servers"—a computer on the Internet that is designated by the domain name owner to report the correct IP addresses for that domain, which information is then propagated to other DNS servers worldwide as it is needed. Guðmundsson Decl. ¶¶ 11-13. The authoritative domain name server may or may not be under the control of the domain name owner. Guðmundsson Decl. ¶¶ 11-13. Such servers are relatively easy to set up and maintain. Many businesses, government agencies, and other entities operate their own authoritative domain name servers, though some also use servers run by others. Guðmundsson Decl. ¶ 13.

An operator of an authoritative domain name server who is not a domain name owner, registrar, or registry does not control a domain name and has no ability to block, transfer, or reassign it. Guðmundsson Decl. ¶¶ 13-14.

**B.    <u>CloudFlare's Services</u>**

CloudFlare operates content delivery network (CDN) and "reverse proxy" services for website owners. CloudFlare's service optimizes the delivery of customers' websites from the customers' origin server to visitors' browsers. This gives visitors to a customer's website faster page load times and better performance, while blocking threats and abusive bots and crawlers from attacking the websites.  Guðmundsson Decl. ¶¶ 9, 16. Although these services add value, they are not necessary to the operation of a website. Guðmundsson Decl. ¶ 16.  CloudFlare provides these services to more than 2,000,000 websites, including major e-commerce websites and government agencies. The CloudFlare network operates out of 34 data centers in 25 countries on 6 continents. Guðmundsson Decl. ¶ 9.

A customer begins using CloudFlare's services by pointing their DNS settings at CloudFlare's nameservers.  This change is configured via the customer's DNS registrar, outside of the CloudFlare network. Guðmundsson Decl. ¶ 12. CloudFlare is neither a DNS registrar nor a

DNS registry for its customers. However, CloudFlare provides authoritative DNS servers for its customers as a means of providing CDN and reverse proxy services. This allows CloudFlare to receive and optimize requests for data from the customer's website. Guðmundsson Decl. ¶¶ 9-10.

Thus, while CloudFlare's service makes use of and is provisioned through DNS, CloudFlare does not control the configuration of a customer's domain name – only the customer does. Guðmundsson Decl. ¶ 14. Once DNS is properly configured, the CloudFlare network is a passive conduit for its customers' content, merely transmitting customer data from the customer's origin server to visitors of the customer's website. Should CloudFlare stop serving a customer, their domain name still exists and can easily continue functioning. Guðmundsson Decl. ¶¶ 15-16.

CloudFlare is not an anonymity service. It is not marketed as such. Indeed, many customers proudly disclose both their own identities and their use of CloudFlare's services. In fact, it would not be possible for a customer to obfuscate its use of CloudFlare's services. CloudFlare discloses customer information upon receipt of valid and binding legal process. Declaration of Justin Paine ¶¶ 5-6 ("Paine Decl.").

C.     **The Defendants' Use of CloudFlare Relating To This Dispute**

On May 2, 2015, a user opened a free account at CloudFlare and configured the domain names grooveshark.pw and grooveshark.io to use CloudFlare's network. Paine Decl. ¶ 7.  On May 13, before CloudFlare had any notice of the TRO, an anonymous user, who could be the same person or not, using a different email address and server IP address, opened a new free account and configured the domain name grooveshark.vc to use CloudFlare. *Id.*

CloudFlare received a copy of the TRO on May 14, 2015 and conferred with Plaintiffs' counsel on May 15. CloudFlare explained to Plaintiffs the nature of CloudFlare's service, and that CloudFlare's termination of a user would not remove that user's website from the Internet.

CloudFlare declined to comply with an order that neither named CloudFlare nor validly applied to it.

Also on May 15, an anonymous user opened a new free account at CloudFlare, using an email address and server IP address that were not the same as the accounts opened on May 13 and earlier. That account used the domain name "grooveshark.li". Paine Decl. ¶ 7. While Plaintiffs now attribute all four domain names to the Defendants, the only identifying information available to CloudFlare and held in common by the three accounts—and thus the only indication that they were opened by the same person or persons—was their use of the word "grooveshark" in their domain names. Paine Decl. ¶ 8.

CloudFlare received no further communications from Plaintiffs until Friday, May 22. On that date, Plaintiffs served CloudFlare with the Application and initially requested that CloudFlare appear before the Court the same day. The Court held a conference on Tuesday, May 26 and granted CloudFlare until 5PM Eastern Time on Thursday, May 28 to file a response.

## ARGUMENT

**A.**   **CloudFlare Should Not Be Ordered to Comply With the TRO Because CloudFlare Is Not In Active Concert or Participation with Defendants Under Fed. R. Civ. P. 65(d).**

The TRO does not name CloudFlare.  Plaintiffs seek to extend the TRO to CloudFlare by arguing that its provision of third party CDN and reverse proxy services is "aiding and abetting" the Defendants.  The facts and law do not support Plaintiffs' position.  CloudFlare has taken no action to support continued infringement by Defendants. Enjoining CloudFlare will not remove the Defendants' content from the Internet, nor would it make Defendants' content inaccessible, and Defendants' use of CloudFlare's services has not made it any easier for Defendants to evade the reach of the Court's TRO.  An order against CloudFlare will provide no additional remedy to Plaintiffs.

1.     Federal Rule of Civil Procedure 65(d) Requires Active Concert or Participation To Bind a Nonparty.

"[A] court generally may not issue an order against a nonparty." *United States v. Regan,* 858 F.2d 115, 120 (2d Cir. 1988). Injunctions issued under Fed. R. Civ. P. 65 may apply only to parties, their "officers, agents, servants, employees, and attorneys," or those in "active concert or participation" with them.

"Rule 65(d) codifies the well-established principle that, in exercising its equitable powers, a court 'cannot lawfully enjoin the world at large.'" *New York v. Operation Rescue Nat'l*, 80 F.3d 64, 70 (2d Cir. 1996) (quoting *Alemite Mfg. Corp. v. Staff,* 42 F.2d 832, 832 (2d Cir. 1930)). Thus, "[t]he courts . . . may not grant an . . . injunction so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law." *Regal Knitwear Co. v. N.L.R.B.,* 324 U.S. 9, 13 (1945); *see also Blockowicz v. Williams*, 630 F.3d 563, 568 (7th Cir. 2010); *E.A. Renfroe & Co., Inc. v. Moran,* 338 Fed. Appx. 836, 840 (11th Cir. 2009) ("The law is clear that a court may not enforce an injunction against a nonparty 'who act[s] independently' of the enjoined party.") (quoting *Regal Knitwear Co.,* 324 U.S. at 13); *Microsystems Software, Inc. v. Scandinavia Online AB,* 226 F.3d 35, 43 (1st Cir. 2000) ("A nonparty who has acted independently of the enjoined defendant will not be bound by the injunction.").

Rule 65(d)s inclusion of "active concert or participation" aims to prevent defendants from "nullify[ing] a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding," *Regal Knitwear Co.,* 324 U.S. at 14, or to enjoin non-parties used "as a device to circumvent the Court's orders." *Cablevision Sys. Corp. v. Muneyyirci,* No. CV 90 2997(RJD), 1995 WL 362541, at *2 (E.D.N.Y. 1995). Because injunctions cannot bind the world, such non-parties are limited to those individuals associated

with defendants who have actively and directly assisted in violation of an injunction. These can include those who are "legally identified" or "one and the same" as defendants, *see, e.g., Software Freedom Conservancy, Inc. v. Westinghouse Digital Electronics, LLC*., 812 F. Supp. 2d. 483 (S.D.N.Y. 2011) (enjoining non-party because new company shared employees and web address with enjoined defendant).  It may also include non-parties who engage in subterfuge or have "consciously and actively attempted to assist the enjoined party in evading the injunction." *GMA Accessories, Inc. v. Eminent*, 2008 WL 2355826 at *13 (S.D.N.Y. 2008); *see also Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010) (enjoining non-party because they assisted in violating protective order by filing frivolous subpoenas); *S.E.C. v. Platinum Inv. Corp.*, 98 Fed. App'x. 33, 34 (2d Cir. 2004) (upholding application of injunction freezing assets to grandfather of named defendant due to use of his bank accounts for transfer in violation of consent judgment).

A party seeking to enforce the terms of an injunction against a non-party bears the burden of proving that the third party is within the scope of the injunction. *Operation Rescue Nat'l*, 80 F.3d at 70; *Blockowicz*, 630 F.3d at 567.

2.     CloudFlare Is Not In Active Concert or Participation with Defendants.

Plaintiffs have not met their burden of demonstrating that CloudFlare is legally identified with or related in any way to Defendants, or that CloudFlare has engaged in subterfuge or consciously and actively attempted to assist the enjoined Defendants in evading the Court's order.  Instead, Plaintiffs have asserted only that CloudFlare provides third party services to the Defendants and is listed as the authoritative DNS provider for two of the grooveshark domain names at issue.

Neither of these facts supports the claim that CloudFlare is in active concert with Defendants.  First, the mere provision of third party services to an enjoined entity is not

7

sufficient to bring a party within the scope of an injunction. *E.A. Renfroe & Co. v. Moran*, 338 Fed. Appx. 836, 838 (11th Cir. 2009) (holding that a lawyer who had represented defendants in another action was not covered by injunction unless aiding and abetting defendant). <u>Second</u>, the fact that CloudFlare was listed as the authoritative DNS provider for two grooveshark domain names does not mean that CloudFlare had any control over the content or viability of those sites. CloudFlare was not the domain registrar for either site (Guðmundsson Decl. ¶¶ 13, 16; Paine Decl. ¶ 7), and therefore CloudFlare does not have the ability to render that site unavailable, even if it were to terminate serving it (Guðmundsson Decl. ¶¶ 15-17).  In fact, even if *every company in the world* that provides services comparable to CloudFlare's were enjoined from providing them to Defendants, the websites would not be rendered unavailable. Guðmundsson Decl. ¶¶ 16-17. <u>Third</u>, CloudFlare had no way of knowing that Defendants had any role in these sites when the relevant CloudFlare accounts were opened.  In connection with each newly registered domain name, new CloudFlare accounts were opened to service them, bearing different identifying information.  <u>Fourth</u>, once the Plaintiffs compelled the domain registrar to make the relevant site go dark, CloudFlare provided no further services to that account.  Taking Plaintiffs' allegations at face value, it appears that CloudFlare's services were only used again because, unbeknownst to CloudFlare, the Defendants apparently registered a new domain name and opened a new CloudFlare account to service it. Paine Decl. ¶¶ 7-8. Again, only the domain name registrar can cause the website to go dark; CloudFlare merely provides supplemental services to a site once it is live.

Given these facts, Plaintiffs' request to apply Rule 65 to CloudFlare is in conflict with the accepted meaning of the phrase "active concert or participation" and would turn Rule 65 into a vehicle for sweeping unassociated entities into disputes between private parties. CloudFlare has

not assisted any party in evading the TRO, or enabled Defendants to circumvent the Court's orders. What CloudFlare has done— passively continuing to provide pre-established, automated services—is not "active concert or participation."

The decision in *Blockowicz v. Williams* is instructive. In that case, the plaintiff sought an injunction against a non-party website ordering it to remove postings by the defendant that were deemed defamatory. 630 F.3d at 565-66. The website ripoffreport.com did not have "any contact with the defendants after the injunction was issued," but continued to make the posting available on its website, and its servers continued to respond to requests for that material. *Id.* at 568. The court concluded that despite such passive, automatic sharing of information, the website owners had not taken "any action to aid or abet the defendants in violating the injunction after it was issued," *id.* at 568, and their "mere inactivity" was "inadequate to render them aiders and abettors." *Id.; see also Bobolas v. Does 1-100*, No. CV-10-2056-PHX-DGC, 2010 WL 3923880, at *2 (D. Ariz. Oct. 1, 2010) (declining to enjoin domain name registrar and website host GoDaddy "from allowing [defendant's false statements] to be made . . . accessible on the Internet.").

The same analysis should apply here. CloudFlare has not actively assisted the Defendants. Instead, CloudFlare's systems have passively and automatically served the domain names at issue. Indeed, CloudFlare is in an even less meaningful position than the non-party websites in *Blockowicz* and *Bobolas*. The website ripoffreport.com had the ability to make the defamatory statements at issue unavailable by taking them down, whereas CloudFlare is incapable of rendering Defendants' website inaccessible. Guðmundsson Decl. ¶¶ 15-17. Likewise, CloudFlare has not communicated with Defendants nor taken any action in concert with them since each of the relevant accounts were opened, at which point CloudFlare did not

even know the TRO was implicated. Non-parties who have completed transactions with the plaintiff or are not otherwise in an ongoing relationship with overlapping goals are not in concert. *Paramount Pictures Corp. v. Carol Pub. Group, Inc.*, 25 F. Supp. 2d 372, 376 (S.D.N.Y. 1998) (finding booksellers and distributors selling copies of infringing work were not in active concert or participation with infringers); *see also Hammer v. Trendl*, No. CV02-2462ADS, 2002 WL 32059751, at *4 (E.D.N.Y. 2002) (denying TRO against Amazon.com for hosting allegedly defamatory reviews as it was not a party to the case).

Given that CloudFlare clearly is not in "active concert or participation" with Defendants, it appears Plaintiffs are effectively attempting to expand the traditional boundaries of Rule 65. That attempt, if accepted by this Court, could have implications well beyond this case. Other parties may seek the same remedy, using allegations of trademark or copyright infringement to obtain orders against the world. New York courts have regularly rejected such efforts, declining to enjoin non-parties who are not actively assisting a defendant even when such an injunction arguably would have benefitted the plaintiff. *See, e.g.*, *CommScope, Inc. of North Carolina v. Commscope (U.S.A.) Intern. Group Co., Ltd.,* 809 F. Supp. 2d 33, 42 (N.D.N.Y. 2011) (declining to direct non-party Secretary of State to dissolve trademark infringing defendant's corporate name), *see also Pitbull Productions, Inc. v. Universal Netmedia, Inc.*, No. 07 Civ. 1784(RMG)(GWG), 2007 WL 3287368, at *7 (S.D.N.Y. 2007) (declining to grant injunction ordering non-party GoDaddy to take down an website infringing plaintiff's trademark).

**B.      The TRO's Other Legal Bases Are Subject To The Same Limitations As Fed. R. Civ. P. 65**

Plaintiffs cannot point to the other bases of legal authority in the TRO to support their contention that CloudFlare is bound by the TRO. The reach of an injunction issued pursuant to trademark law is governed by Rule 65(d). *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d

126, 129 (2d Cir. 1979); *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1128-29 (9th Cir. 2006). Thus, Section 34 of the Lanham Act does not create independent grounds for applying the TRO to CloudFlare.

Likewise, the All Writs Act does not authorize an injunction against a non-party not in active concert or participation with a defendant. "While the All Writs Act empowers a district court to fashion extraordinary remedies when the need arises, it does not authorize a district court to promulgate an Ad hoc [sic] procedural code whenever compliance with the Rules proves inconvenient." *Florida Med. Ass'n, Inc. v. U. S. Dept. of Health, Ed. and Welfare*, 601 F.2d 199, 202 (5th Cir. 1979). The All Writs Act allows courts to issue writs "in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). It applies to acts of non-parties only when those acts "thwart[] the court's ability to reach and resolve the merits of the federal suit before it." *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litigation)*, 770 F.2d 328, 338-39 (2d Cir. 1985). CloudFlare has declined to comply voluntarily with a court order that does not apply to it. This *inaction* in no way interferes with the Court's ability to decide the merits of the underlying case. Absent such a showing by Plaintiffs, any attempt to invoke the All Writs Act would simply be an attempt to bypass the limitations of Rule 65(d).

Finally, the Court's inherent equitable powers do not provide authority for Plaintiffs' attempt to apply the TRO to CloudFlare. As with Rule 65(d), the Court's equitable power to bind nonparties is limited to persons who "either abet the defendant, or must be legally identified with him." *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir. 1930). In fact, Rule 65 merely codifies this common-law limitation. *Operation Rescue Nat'l*, 80 F.3d at 70.

**C.** **Allowing Injunctions To Bind Non-Parties Not In Active Concert or Participation Would Unfairly Burden Internet Infrastructure Providers With No Interest In A Legal Dispute.**

Plaintiffs' Application for a TRO against CloudFlare would transform a dispute between specific parties into a mandate to third parties to enforce Plaintiffs' trademarks against the world in perpetuity.  CloudFlare has no way of identifying accounts opened by the Defendants, other than their alleged use of domains containing the name "grooveshark."  *See* Paine Decl. ¶¶ 7-8. Although Plaintffs allege that the same person or persons are responsible for registering various "grooveshark" domains, CloudFlare cannot verify this. Other unrelated persons, anywhere in the world, may register domains containing "grooveshark" in the future, including the Plaintiffs. The only way that CloudFlare could deny the Defendants in this case the use of CloudFlare's services is to prevent anyone from linking a CloudFlare account to any domain name containing "grooveshark."  CloudFlare, along with all other service providers upon whom Plaintiffs decide to serve the TRO, would then be required to proactively enforce Plaintiffs' trademark against all comers – a far-reaching and costly proposition that would reach far beyond a resolution of this particular case.

Where Congress has intended to grant the federal courts the power to issue injunctions to entities that are not in active concert or participation with a party, it has done so explicitly. For example, 18 U.S.C. § 1956 and 18 U.S.C. § 981 empower the federal courts to order banks to seize or transfer a defendant's funds, and the civil forfeiture provisions of 18 U.S.C. § 984 allow for *in rem* proceedings against a defendant's property regardless of who is in possession.  *See Regan*, 858 at 120 (2d Cir. 1988) (distinguishing Rule 65 injunctions from statutory injunctions "that may be directed routinely at third parties . . . even though those parties have no interest in the merits of the underlying litigation.")

In contrast, Congress explicitly considered and *rejected* granting such authority to the courts with respect to Internet infrastructure providers and other intermediaries for the purpose of making a website disappear from the Internet. The Stop Online Piracy Act of 2011 (H.R. 3261, 112th Cong.) would have authorized *in rem* proceedings against a domain name, and injunctions directed to any DNS server operator, ordering them to take "measures designed to prevent access by its subscribers located within the United States to [an accused website] that is subject to the order." In discussing the bill, the President warned that any legislation "must not inhibit innovation by our dynamic businesses large and small," and "must not tamper with the technical architecture of the Internet through manipulation of the Domain Name System (DNS), a foundation of Internet security." *Obama Administration Responds to We the People Petitions on SOPA and Online Piracy* (Jan. 14, 2012), https://www.whitehouse.gov/blog/2012/01/14/obama-administration-responds-we-people-petitions-sopa-and-online-piracy. The bill was met with widespread public criticism from Internet users, technology companies, law professors, and software pioneers who helped create the Internet. (https://www.eff.org/files/internet-engineers-letter.pdf). Congress tabled the bill and did not advance it further.

Here, Plaintiffs ask the Court to construe its injunction power as though H.R. 3261 had in fact become law. But lacking explicit statutory authority for such an order against a nonparty, the TRO cannot be construed to reach so far.

Again, any contrary ruling could set a dangerous precedent. If an injunction to a website can be construed to reach any "third parties providing services used in connection with Defendants' operations," even if they are not in active concert, such an injunction could, cover a vast array of infrastructure providers and other services with no interest in or influence over a dispute between parties. It's highly likely that anyone viewing the Defendants' website in the

U.S. is using Internet backbone facilities owned and operated by AT&T, Verizon, or Level 3. They are also likely to use consumer Internet service providers, wireless carriers, proxy services, and other intermediaries. These interactions are unpredictable and often unknown to either Defendants or visitors to their site. Yet, taken literally, all of these companies are "providing services used in connection with Defendants' operations." Under Plaintiffs' interpretation of the TRO, all of these companies could be required to proactively identify and block transmissions from or attempts to connect to Defendants' website. It may or may not be possible to enjoin a sufficient number of such companies to cause significant disruption to Defendants' website, but the overall cost of doing so to third parties and all of their users would be staggering. Plaintiffs' interpretation of the TRO would effectively transform it into an attempt to "enjoin the world at large." *Operation Rescue Nat'l*, 80 F.3d at 70. This is a clear example of why the Court's injunction power is limited in its application to nonparties absent explicit authority from Congress.

**D.    An Award of Attorney Fees Against CloudFlare is Not Appropriate**

An award of attorney's fees against CloudFlare is not appropriate. The default American rule is that parties must bear their own costs and fees. *See, e.g., Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 528-33 (1994); *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 247-62 (1975). Both trademark and copyright law provide for attorneys' fees *only in exceptional cases*. This is not such a circumstance.

In copyright infringement cases, courts evaluate the "frivolousness, motivation, objective unreasonableness . . . and the need in particular circumstances to advance considerations of compensation and deterrence" before awarding attorney fees. *Fogerty,* 510 U.S. at 533, 535 n.19; *see also Matthew Bender v. West Publ'g,* 240 F.3d 116, 121 (2d Cir. 2001).

14

Similarly, §1117(a) of the Lanham Act provides for awards of reasonable attorneys fees in "exceptional cases," such as willful infringement, *Bambu Sales Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995), or instances of "fraud or bad faith," *Twin Peaks Prods. v. Publ'ns Int'l, Ltd.,* 996 F.2d 1366, 1383 (2d Cir. 1993).

Equitable principles permit an award of attorney's fees in similar circumstances: where a party has acted in "bad faith, vexatious, wantonly, or for oppressive reasons." *Hall v. Cole,* 412 U.S. 1, 5 (1973) (internal quotations omitted).

CloudFlare has not engaged in anything remotely resembling bad faith or objectively unreasonable behavior. "Playing hard—by the rules—cannot suffice to make a case exceptional." *TE-TA-MA Truth Foundation-Family of URI, Inc. v. World Church of the Creator*, 392 F.3d 248, 264 (7th Cir. 2004). Playing by the rules is precisely what CloudFlare's customers expect it to do and precisely what CloudFlare has done. To punish it by awarding attorneys' fees to Plaintiffs would create significant and unwarranted burden for all service providers by over-deterring the provision of services to which a court order does not validly apply.

15

## CONCLUSION

Defendants' alleged conduct, no matter how unsavory, cannot justify an attempt to "enjoin the world." Thus, the Court should find that the TRO of May 13, 2015, does not apply to CloudFlare, and that any further injunction against CloudFlare sought by Plaintiffs in this action must be shown to comply with Fed. R. Civ. P. 65(d).

DATED: May 28, 2015                 Respectfully submitted,


  /s/William J. Harrington

William J. Harrington (WH-6376)
Grant Fondo*
GOODWIN PROCTER LLP

Mitchell L. Stoltz*
Corynne McSherry*
ELECTRONIC FRONTIER FOUNDATION

(*pro hac vice application to be submitted)

*Counsel for Non-Party CloudFlare, Inc.*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ William J. Harrington_____