UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC, ATLANTIC RECORDING CORPORATION, CAPITOL RECORDS, LLC, ELEKTRA ENTERTAINMENT GROUP INC., LAFACE RECORDS LLC, SONY MUSIC ENTERTAINMENT, UMG RECORDINGS, INC., WARNER BROS. RECORDS INC., WARNER MUSIC GROUP CORP., and ZOMBA RECORDING LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>VITA TKACH, and DOES 1-10, D/B/A GROOVESHARK.IO AND GROOVESHARK.PW<br><br>*Defendants*. | CIVIL ACTION NO. 15-CV-03701 |

**REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFFS' APPLICATION
FOR A SUPPLEMENTAL ORDER REQUIRING THIRD PARTY CLOUDFLARE, INC.
TO COMPLY WITH THE PENDING TEMPORARY RESTRAINING ORDER**

## INTRODUCTION

Despite its rhetorical claims to the contrary, CloudFlare, in its opposition brief, confirms that it is aiding and abetting Defendants in the operation of their Counterfeit Service, and thus is violating the pending temporary restraining order ("TRO"). At its essence, CloudFlare's position is that, despite its knowledge of the blatant illegality of the Counterfeit Service and this Court's TRO prohibiting the Counterfeit Service's continued operation, CloudFlare should nevertheless be permitted to continue to support the Counterfeit Service with a suite of services – including one without which the Counterfeit Service in its current configuration would be inaccessible to users – simply because Defendants could obtain those same services elsewhere if CloudFlare were to cease providing its own. Neither the law nor common sense supports such a result.

As a careful review of CloudFlare's submissions makes clear, the parties are in agreement as to the material facts: (1) CloudFlare owns and operates the authoritative "nameservers" for the Counterfeit Service, including in its current configuration at "grooveshark.li;" (2) if CloudFlare were to "deconfigure" its nameservers, users would be unable to find the Counterfeit Service absent further action by Defendants to employ nameservers elsewhere; (3) CloudFlare supplied new nameservers for the Counterfeit Service at "grooveshark.li" *after* it was fully aware of the pending TRO; (4) CloudFlare routes traffic between users and the Counterfeit Service – including user searches for infringing sound recordings – through CloudFlare's own servers; and (5) CloudFlare provides its services to Defendants expressly to "optimize" the Counterfeit Service and to make it easier to use.

In light of these undisputed facts, CloudFlare's steadfast refusal to discontinue providing its services to Defendants – who even CloudFlare acknowledges are openly in contempt of this Court's TRO – is nothing short of breathtaking. For the reasons already set forth in Plaintiffs' opening brief, and as explained further below, CloudFlare is plainly "in active concert or

participation" with Defendants and thus falls squarely within the TRO. Accordingly, the Court should order CloudFlare to comply with the TRO, immediately "deconfigure" its nameservers for the Counterfeit Service, and cease and desist its provision of any and all other means of support to Defendants and their Counterfeit Service.

**ARGUMENT**

**I.     CloudFlare Is Aiding And Abetting Defendants' Violation Of The TRO**

Rule 65(d) expressly provides the Court with authority to bind third parties "who are in active concert or participation" with an enjoined defendant. Fed. R. Civ. P. 65(d)(2)(C). Indeed, "[e]very injunction issued by a district court automatically forbids others—who are not directly enjoined but who act 'in active concert or participation' with the enjoined party—from assisting in a violation of the injunction." *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 243 (2d Cir. 2013).

One way in which a third party may be in "active concert or participation" with an enjoined defendant is by aiding and abetting the defendant in carrying out the defendant's enjoined conduct. *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 192-93 (2d Cir. 2010); *see also Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir.1930); *Reliance Ins. Co. v. Mast Const. Co.*, 84 F.3d 372, 377 (10th Cir. 1996); *Bear U.S.A., Inc. v. Kim*, 71 F. Supp. 2d 237, 246 (S.D.N.Y. 1999). Contrary to CloudFlare's suggestion that only the most "conscious[]" acts of "subterfuge" can amount to aiding and abetting, *see* Non-Party CloudFlare, Inc.'s Memorandum in Opposition to Plaintiffs' Application for a Supplemental Order ("Opp'n Br.") at 7, the failure of an Internet service provider to stop connecting users to an enjoined website, once on notice of the injunction, readily can constitute aiding and abetting for purposes of Rule 65. *See North Face Apparel Corp. v. Fujian Sharing Imp. & Exp. Ltd.*, No. 10-civ-1630 (AKH), slip op. at 4-6 (S.D.N.Y. June 24, 2011) (Dkt. No. 56) (appended hereto as Exhibit F to the Declaration of

Gianni P. Servodidio ("Servodidio Decl.")); *Fujian*, Transcript of Oral Argument and Bench Ruling at 35:20-36:18 (S.D.N.Y. June 13, 2011) (Dkt. No. 58) (appended hereto as Servodidio Decl., Ex. G); *cf. South Central Bell. Tel. Co. v. Constant, Inc.*, 304 F. Supp. 732, 736 (E.D. La. 1969) (telephone company, once on notice that subscriber was using its equipment to violate an injunction, had duty to prevent its equipment from being so used). CloudFlare's actions go well beyond this standard.

It is undisputed that CloudFlare supplies the authoritative nameservers for the Counterfeit Service. *See* CloudFlare Opp'n Br. at 3-4 . CloudFlare claims that "[a]n operator of an authoritative domain name server who is not a domain name owner, registrar, or registry does not control a domain name and has no ability to block, transfer, or reassign it." Opp'n Br. at 3. But CloudFlare's Systems Engineer, on whom CloudFlare relies for this claim, says no such thing – in fact, he acknowledges precisely the opposite.

According to CloudFlare's Systems Engineer, CloudFlare can – and routinely does – end its service to a customer by "completely deconfigur[ing] any DNS response to a DNS query relating to the customer's website" – in other words, by deconfiguring the authoritative nameservers that CloudFlare provides to that website. Declaration of Ólafur Guðmundsson, submitted in support of CloudFlare's Opp'n Br. ("Guðmundsson Decl.") at ¶ 11. The result of such a "deconfiguration," as CloudFlare's engineer explains, is that a user who seeks access to the website based on its domain name "***will not be able to find the customer's website***." *Id.* (emphasis added). Although the customer may subsequently "restore its DNS settings to use its own nameservers instead of CloudFlare's," *id.*, there is no dispute that CloudFlare could easily – but consciously chooses not to – deconfigure the nameservers that it currently provides to the

3

Counterfeit Service and thereby prevent users from finding the Counterfeit Service until such time as Defendants employed nameservers elsewhere.[1]

There is nothing "passive" about CloudFlare's refusal to take this routine, ministerial step here. As with the domain registry in the *North Face v. Fujian* case, this Court's TRO, "once served upon [CloudFlare], should have alerted it to no longer play its role in allowing [users] to connect to defendant counterfeiters' websites, for [CloudFlare] would, by continuing to do so, commit an unlawful act, by aiding and abetting in defendants' unlawful counterfeiting activities in violation of United States law" *Fujian*, slip op. at 4-6 (S.D.N.Y. June 24, 2010).

Moreover, CloudFlare is not merely "passively continuing to provide pre-established, automated services" to Defendants, as it now claims. Opp'n Br. at 9. Indeed, the current domain name for the Counterfeit Service ("grooveshark.li") did not even exist until May 15th, the day *after* CloudFlare received notice of the TRO. CloudFlare thus supplied new name servers to Defendants' newest (and still current) domain name for the Counterfeit Service even after it had already been put on notice of the TRO. *Compare, e.g.*, McDevitt Decl. (Dkt. No. 22) (dated May 12, 2015), Ex. D at 3 (article showing Whois record for grooveshark.io as of May 5, 2015, identifying the authoritative name servers as "ian.ns.cloudflare.com" and "melissa.ns.cloudflare.com") *with* Supp. McDevitt Decl. (Dkt. No. 38) (May 22, 2015), Ex. C

---

[1] CloudFlare claims that, "[s]hould CloudFlare stop serving a customer, *their domain name still exists*," Opp'n Br. at 9 (emphasis added), and that, regardless of any action CloudFlare may take, the Counterfeit Service "would remain up and running at its current domain." *Id.* at 1. CloudFlare's careful choice of words is telling, as rendering the Counterfeit Service *non-existent* is not the same thing as rendering it *unfindable* by its domain name, the latter of which CloudFlare concedes it has the capacity to do through a simple, ministerial act. *See, e.g., What Is DNS*, https://support.cloudflare.com/hc/en-us/articles/200168656-What-is-DNS (appended hereto as Servodidio Decl., Ex. B); *DNS*, https://www.cloudflare.com/dns, (appended hereto as Servodidio Decl., Ex. C). Moreover, CloudFlare's claim that the websites would continue to be available "even if *every company in the world* that provides services comparable to CloudFlare's were enjoined from providing them to Defendants," Opp'n Br. at 8 (emphasis in original), is supported only by the statement of CloudFlare's Systems Engineer with respect to CloudFlare's CDN and reverse proxy services, not its provision of authoritative nameservers. *Compare* Guðmundsson Decl. ¶¶ 16-17.

(domain registration records showing creation of "grooveshark.li" on May 15, 2015, and authoritative name servers as "jim.ns.cloudflare.com" and "olga.ns.cloudflare.com"). This case is therefore wholly unlike *Blockowitz v. Williams*, on which CloudFlare so heavily relies, in which the entire transaction at issue took place before the injunction even issued, with no change whatsoever after the injunction. *See* 630 F.3d 563, 568 (10th Cir. 2010).

In any event, CloudFlare's participation in Defendants' enjoined actions goes well beyond the provision of authoritative nameservers, and well beyond the sort of conduct that has been found to constitute aiding and abetting in other cases. As CloudFlare itself boasts, CloudFlare's services "optimize" the delivery of its customer's websites to "give[] visitors to a customer's website faster page load times and better performance…." Opp'n Br. at 3; *see also Content delivery network*, https://www.cloudflare.com/features-cdn (appended hereto as Servodidio Decl., Ex. D). This includes, among other things, caching elements of the customer's website on CloudFlare's own servers, providing the "public IP address[]" for the website, and routing traffic between the website and its users. *See, e.g.*, *Overview*, https://www.cloudflare.com/overview ("Once your website is a part of the CloudFlare community, its web traffic is routed through our intelligent global network") (appended hereto as Servodidio Decl., Ex. A).[2] Unlike the domain name registry at issue in *North Face v. Fujian*, CloudFlare has a direct, contractual relationship with Defendants to provide these targeted services, all for the express purpose of making Defendants' Counterfeit Service more effective and easier to use. *See id.*; *Terms*, https://www.cloudflare.com/terms (appended hereto Servodidio Decl., Ex. E). Given that the TRO orders (among other things) the cessation of the

---

[2] These features are analogous to the "clearing system" financial institutions that "process[ed] the payments from Argentina to the exchange bondholders" and that the court in *NML Capital* found, and the Second Circuit affirmed, "surely are 'in active concert or participation' with Argentina …." *NML Capital, Ltd. v. Republic of Argentina*, No. 08 CIV. 6978 TPG, 2012 WL 5895786, at *5 (S.D.N.Y. Nov. 21, 2012) *aff'd*, 727 F.3d 230 (2d Cir. 2013).

Counterfeit Service, CloudFlare's continued provision of its services with the express intention of *optimizing* the Counterfeit Service is quintessentially a form of aiding and abetting.

None of the cases on which CloudFlare relies is to the contrary. For example, as noted, the Seventh Circuit in *Blockowitz v. Williams* refused to enjoin a website and its manager from hosting defamatory comments only because every act involved in the posting of the comments had already taken place before the injunction had issued. 630 F.3d at 568. In contrast, CloudFlare supplied its current nameservers for the Counterfeit Service after it was already on notice of the TRO, and maintains an ongoing, dynamic relationship with Defendants – indeed, CloudFlare processes countless transactions on Defendants' behalf every day through its "intelligent global network," including all user searches for infringing copies of Plaintiffs' sound recordings. *See supra* at 3-5. And, as Judge Hellerstein observed in *North Face v. Fujian*, the *Blockowitz* decision has no bearing on whether a failure to stop connecting users to an already-enjoined website, as CloudFlare does here, constitutes aiding and abetting. *See Fujian*, Transcript of Oral Argument and Bench Ruling at 35:20-36:5 (Servodidio Decl., Ex. G) (rejecting application of *Blockowitz* as "a deficient analysis of what is involved in this so-called passivity ….").[3]

---

[3] CloudFlare's other cited cases either stand for the unremarkable proposition that another way for a third party to fall within the scope of an injunction under Rule 65(d)(2)(C) is if it is "legally identifiable" with or a "successor and assign" to defendants, *see, e.g.*, *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945); *New York v. Operation Rescue Nat'l*, 80 F.3d 64, 70-71 (2d Cir. 1996); *Cablevision Sys. Corp. v. Muneyyirci*, No. CV 90 2997 (RJD), 1995 WL 362541, at *2 (E.D.N.Y. June 2, 1995), or are easily distinguished from the present case, *see, e.g.*, *Hammer v. Trendl*, No. CV02-2462ADS, 2002 WL 32059751, at *4 (E.D.N.Y. Oct. 10, 2002) (denying motion for TRO against the defendant and thus also denying motion to enjoin third party Amazon.com, further noting that "there is no indication that Amazon.com was given notice of this motion for a temporary restraining order"); *CommScope, Inc. of N.C. v. Commscope (U.S.A.) Intn'l Grp. Co., Ltd*, 809 F. Supp. 2d 33, 42 (N.D.N.Y. 2011) (declining to order the Secretary of New York State to strike from its register of corporations the defendant's infringing corporate name because, among other things, the plaintiff had "not briefed the legal standards for issuing injunctions against non-parties, ... or discussed how those standards would support the injunction requested here"); *Pitbull Prods., Inc. v. Universal Netmedia, Inc.*, No. 07 Civ. 1784 (RMG) (GWG), 2007 WL 3287368, at *7 (S.D.N.Y. Nov. 7, 2007) (denying injunctive relief against third party because

In short, CloudFlare, by continuing to provide its services to Defendants and their Counterfeit Service, with full knowledge of the Counterfeit Service's illegality and this Court's TRO enjoining its continued operation, is plainly aiding and abetting Defendants' violation of the TRO. As a result, CloudFlare is squarely within the scope of the TRO and should be ordered to comply with it forthwith. As Judge Hellerstein observed in *North Face v. Fujian*, "[i]n an Internet age, the Internet cannot be allowed to be a lawless method of evading court orders. There is a public interest in this Court to protect lawfully-abiding companies in the use of their trademarks. And when counterfeiters willy-nilly can use domain names, changing them at will by the mere ministerial act of registration, evading the lawful orders of this Court, this Court must act." *Fujian*, Transcript of Oral Argument and Bench Ruling, at 36:6-12 (Servodidio Decl. Ex. G); *see also* Plaintiffs' Mem. Of Law In Supp. Of *Ex Parte* Application For A Temporary Restraining Order, Seizure Order, And Order To Show Cause For Preliminary Injunction, dated May 12, 2015 (Dkt. No. 20) at 17-19 (citing cases enjoining various Internet entities from providing services to infringing websites).[4]

---

plaintiff "failed to provide any facts in admissible form with respect to the conduct of these non-parties … [and] has not briefed the legal standards for issuing injunctions against non-parties"); *Bobolas v. Does 1-100*, No. CV-10-2056-PHX-DGC, 2010 WL 3923880, at *2 (D. Ariz. Oct. 1, 2010) (denying injunction because plaintiffs "provided no legal or factual basis" regarding the third party's relationship to the defendants); *Paramount Pictures, Corp. v. Carol Publ'g Grp., Inc.*, 25 F. Supp. 2d 372, 373-76 (S.D.N.Y. 1998) (declining to find third party retailers and distributors of infringing books to be bound by injunction against infringing defendant because the "transaction" between defendant and the third parties was "final" before the injunction issued); *E.A. Renfroe & Co., Inc. v. Moran*, 338 Fed. App'x 836, 838-840 (11th Cir. 2009) (vacating a contempt judgment against non-party attorney who did not have ongoing relationship with defendants because the attorney's single independent action was taken on his own, not in concert with defendants).

[4] CloudFlare contends that "the All Writs Act does not authorize an injunction against a non-party not in active concert or participation with a defendant." Opp'n Br. at 11. This misstates the law. As the Supreme Court has held, "[t]he power conferred by the [All Writs] Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice and encompasses even those who have not taken any affirmative action to hinder justice." *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977); *see also, e.g., Faught v. American Home Shield Corp.*, 660 F.3d 1289, 1292-93 (11th Cir. 2011) ("The authority to protect a judgment, under the [All Writs] Act, is

## II. CloudFlare's Stated Policy Considerations Are Inapposite

CloudFlare seeks to distract the Court with the alarmist contention that an injunction against CloudFlare would "set a dangerous precedent" by reaching "a vast array of infrastructure providers and other services with no interest in or influence over a dispute between parties." Opp'n Br. at 13.  This contention is groundless for the simple reason that CloudFlare is not such a disinterested provider, as it is plainly in "active concert" with Defendants, as explained above.  The supplemental Order that Plaintiffs seek here, therefore, is fully within with the metes and bounds of Rule 65, and not the sweeping injunction that CloudFlare has imagined for the sake of its argument here.

Moreover, Plaintiffs have served only two other Internet services with notice of the TRO, both of which promptly complied.  Indeed, CloudFlare, upon information and belief, is now the *only* remaining U.S. entity that provides services to Defendants, pursuant to a direct contractual relationship, supporting Defendants' clearly illicit activities.  *See* Doroshow Decl. (Dkt. No. 39) (May 22, 2015) ¶¶ 3-5 & Exs. A-D.  CloudFlare's characterization of the requested relief as an injunction against "the world at large," therefore, is entirely without basis and ignores CloudFlare's essential and conscious role in facilitating user access to an illegal service.  Opp'n Br. at 14.

Finally, it is hardly a "far-reaching and costly proposition" to require CloudFlare to "prevent anyone from linking a CloudFlare account to any domain name containing

---

broader than the authority conferred in a 'traditional' injunction issued under Federal Rule of Civil Procedure 65…."); *In re Baldwin-United Corp.*, 770 F.2d 328, 338-39 (2d Cir. 1985) ("Injunctions issued under the authority of the All-Writs Act stem from very different concerns than those … governed by" Rule 65); 19 Stacy L. Davis and Lisa A. Zakolski, Federal Procedures, Lawyers Edition § 47:51 (2013) ("Although Fed. R. Civ. P. 65(d) provides that nonparties in general are not bound by injunctive or restraining orders, this general prohibition cannot be read to restrict the inherent power of a federal court to protect its jurisdiction from being obstructed by the actions of nonparties who are properly on notice of the outstanding order or orders").  Because CloudFlare so clearly aids and abets Defendants' actions, however, the Court is fully empowered by Rule 65 to enjoin CloudFlare here and need not rely on the All Writs Act or its inherent equitable powers to do so.

'grooveshark'." Opp'n Br. at 12. The word "grooveshark" is a highly-distinctive registered trademark, owned by Plaintiff UMG, and preventing CloudFlare from "linking to" any domain name that includes the "grooveshark" word mark is precisely what the TRO requires (among other things), regardless of which top-level domain (e.g., .li, .io, .pw, .vc, etc.) is used. *See* TRO at 5. CloudFlare fails to explain how compliance with this requirement would be in any way difficult to achieve. In any event, CloudFlare knows precisely which domain name is currently in use for the Counterfeit Service – "grooveshark.li" – yet it simply refuses to stop providing service to it. The supposed "costs" of compliance with the TRO that CloudFlare posits have no basis in fact.

## CONCLUSION

For the reasons stated above, and for those stated in Plaintiffs' opening brief, Plaintiffs' Application for a Supplemental Order should be granted.

DATED: New York, NY
         May 29, 2015

Respectfully submitted,

JENNER & BLOCK LLP

By: /s/ Kenneth L. Doroshow
    Andrew H. Bart (AB-6724)
    Gianni P. Servodidio (GS-0713)
    Lindsay W. Bowen (LB-8510)
    Alison I. Stein (AS-2884)
    Ava U. McAlpin (AM-4645)
    919 Third Avenue, 39th Floor
    New York, NY 10022
    Telephone: (212) 891-1600
    Facsimile: (212) 891-1699

    Kenneth L. Doroshow (KD-8374)
    1099 New York Ave., N.W., Suite 900
    Washington, DC 20001
    Telephone: (202) 639-6027
    Facsimile: (202) 639-6066

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Ava U. McAlpin, hereby certify that on this 29th of May 2015, I caused true and correct copies of ***Plaintiffs' Reply in Support of Plaintiffs' Application for a Supplemental Order and Order to Show Cause Requiring Third Party CloudFlare, Inc. to Comply with the Pending Temporary Restraining Order***, ***Proposed Order*** and accompanying declaration to be served registered participants as identified on the Notice of Electronic Filing (NEF) via ECF and upon defendants via electronic mail.

                                                                  /s/ Ava U. McAlpin
                                                                  Ava U. McAlpin