UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: JUN 03 2015

Arista Records, LLC, *et al.*,

        Plaintiffs,

—v—

Vita Tkach, *et al.*,

        Defendants.

15-CV-3701 (AJN)

MEMORANDUM
& ORDER

ALISON J. NATHAN, District Judge:

    On May 13, 2015, a Judge of this Court sitting in Part 1 entered a temporary restraining order ("TRO") against Defendants Vita Tkach and Does 1-10 (d/b/a Grooveshark.io and Grooveshark.pw). Dkt. No. 18. On May 22, 2015, Plaintiffs filed with this Court a "supplemental order and order to show cause requiring third party CloudFlare, Inc. to comply with the pending temporary restraining order." Dkt. No. 35. As detailed in this Court's May 27, 2015 Order, the Court held a conference with Plaintiffs and CloudFlare on May 26, 2015 and set a briefing schedule for Plaintiffs' motion for a supplemental order, which was to "determine whether CloudFlare is bound by the existing TRO and whether it will be bound by any forthcoming preliminary injunction against the Defendants, if one is entered." Dkt. No. 40 at 2. On June 1, 2015, the Court entered that preliminary injunction against the Defendants. Dkt. No. 53. Therefore, as a practical matter, the present motion is to determine whether CloudFlare was bound by the TRO and now is bound by the existing preliminary injunction (the terms of which are substantially identical to the TRO). CloudFlare has taken the position that the TRO did not apply to it largely because of the "passive" nature of its services. As described in greater detail below, the Court disagrees.

I.  **BACKGROUND**

On May 5, 2015, the Court entered a Stipulation, Consent Judgment, and Permanent Injunction against Escape Media Group, Inc. ("Escape"), which operated the website www.grooveshark.com ("Grooveshark"). *See* Dkt. No. 108 in *Capitol Records, LLC v. Escape Media Grp., Inc.*, No. 12 Civ. 6646 (AJN)(SN) (S.D.N.Y. May 5, 2015).[1] Similarly, on May 1, 2015, in a separate action, Judge Griesa entered a Stipulation, Consent Judgment, and Permanent Injunction against Escape and its founders. *See* Dkt. No. 107 in *Arista Music v. Escape Media Grp., Inc.*, No. 11 Civ. 8407 (TPG) (S.D.N.Y. May 1, 2015).[2] As part of this latter settlement, among other things, Escape conveyed to Plaintiff UMG Recordings, Inc. ownership of its federally registered trademarks relating to the Grooveshark service. *Id.*

A.  **The Temporary Restraining Order**

Shortly after the consent judgments were entered, a "copycat" version of Grooveshark appeared on the internet, which led Plaintiffs to file the present action on May 12, 2015 against Defendants Vita Tkach and Does 1-10 who are allegedly operating the copycat version of Grooveshark. Compl. ¶¶ 7-9. That same day, Plaintiffs obtained from the Part 1 Judge of this Court a TRO against Defendants "and any persons acting in concert or participation with them or third parties providing services used in connection with Defendants' operations" from, among other things, "[u]sing, linking to, transferring, selling, exercising control over, or otherwise owning the domain names grooveshark.io or grooveshark.pw or any other domain name that incorporates, in whole or in part, any of Grooveshark Marks" and from "[d]irectly or secondarily infringing Plaintiffs' copyrighted sound recordings via the [Defendants' service] or any variations thereof." Dkt. No. 18.

Plaintiffs explain that they were then drawn into what they describe as a technological globetrotting game of "whack-a-mole" in an effort to enforce the TRO. On May 13, 2015,

---

[1] The Court had earlier found Escape liable for copyright infringement based on its operation of Grooveshark. *Capitol Records, LLC v. Escape Media Grp., Inc.*, No. 12-CV-6646 (AJN), 2015 U.S. Dist. LEXIS 38007 (S.D.N.Y. Mar 5, 2015).

[2] Judge Griesa also found Escape and its founders liable for copyright infringement in the separate action. *UMG Recording v. Escape Media Grp., Inc.*, No. 11 Civ. 8407, 2014 U.S. Dist. LEXIS 137491 (S.D.N.Y. Sept. 29, 2014).

Plaintiffs served the TRO on Defendants and Namecheap, Inc., a California-based domain name registrar through which Defendants had registered "grooveshark.io" (.io is the country-code domain reserved for the British Indian Ocean Territory) and "grooveshark.pw" (.pw is the country-code domain reserved for the Republic of Palau). Pls.' Br. 3 (citing Doroshow Decl. ¶¶ 3-4). Namecheap, Inc. complied with the TRO, which effectively disabled the ".io" and ".pw" Grooveshark domain names. Pls.' Br. 3 (citing Suppl. McDevitt Decl. ¶ 3). Defendants then registered "grooveshark.vc" (.vc is the country-code domain reserved for Saint Vincent and the Grenadines) through Dynadot, which was subsequently served with the TRO. Pls.' Br. 3 (citing Doroshow Decl. ¶ 5). After Dynadot complied with the TRO, the "groveshark.vc" domain name was disabled. Pls.' Br. 3 (citing Suppl. McDevitt Decl. ¶ 4). Defendants then registered a "grooveshark.li" domain name (.li is the country-code domain reserved for the principality of Liechtenstein). Pls.' Br. 3-4 (citing Suppl. McDevitt Decl. ¶ 5). The domain name registrar through which Defendants registered the .li domain is located in Switzerland. *Id.* At roughly this point, Plaintiffs opted for a different tactic and served the TRO on CloudFlare.

### B.   CloudFlare, Inc.'s Services

CloudFlare is an internet service provider that provides authoritative domain name system servers for its customers as a means of providing content delivery network and reverse-proxy services. Opp'n Br. 3-4. CloudFlare explained that an "authoritative domain name server" is a "computer on the Internet that is designated by the domain name owner to report the correct IP address for that domain, which information is then propagated to other DNS servers worldwide as it is needed." Opp'n Br. 3 (citing Guðmundsson Decl ¶¶ 11-13). In laymen's terms, this appears to mean that when someone types a domain name such as "grooveshark.li" into a web browser, the Defendants have engaged CloudFlare to convert the domain name into the IP address for the website associated with that domain name so that the user can connect to the website they are trying to reach. Without CloudFlare, a user could still get to "grooveshark.li" if the user had the actual IP address for the website associated with that domain name; alternatively, Defendants could obtain CloudFlare's authoritative domain name system

server from another third-party service provider comparable to CloudFlare or Defendants could provide that same service on their own. Guðmundsson Decl. ¶¶ 15, 19-20; Foster Decl. ¶ 5. CloudFlare also "optimizes the delivery of customers' websites from the customers' origin server to visitors' browsers. This gives visitors to a customer's website faster page load times and better performance, while blocking threats and abusive bots and crawlers from attacking the websites." Opp'n Br. 3 (citing Guðmundsson Decl. ¶¶ 9, 16).

On May 2, 2015, a user opened a free account at CloudFlare and configured the domain names grooveshark.pw and grooveshark.io to use CloudFlare's services. Opp'n Br. 4 (citing Paine Decl ¶ 7). On May 13, 2015, an anonymous user using a different email address and server IP address opened a new free account and configured the domain name grooveshark.vc to use CloudFlare's services. *Id.*

On May 14, 2015, Plaintiffs served a copy of the TRO on CloudFlare and requested that it cease providing support to the Grooveshark sites. Doroshow Decl. ¶ 6; Opp'n Br. 4. CloudFlare confirmed receipt of the TRO, but stated that it did not construe the TRO as applying to it, insisting that Plaintiffs seek an order from this Court requiring CloudFlare's compliance. *Id.* Then, on May 15, 2015, an anonymous user opened yet another free account at CloudFlare and configured the domain name grooveshark.li to use CloudFlare's services; this anonymous user used another email address and server IP address that were not the same as either of the ones used earlier. Opp'n Br. 5 (citing Paine Decl. ¶ 7).

C.   **The Motion for Contempt/Clarification**

As explained in the Court's May 27, 2015 Order, on May 22, 2015, Plaintiffs filed an *ex parte* "Proposed Supplemental Order to Show Cause" requesting a court order requiring third-party CloudFlare, Inc. to comply with the existing TRO. Dkt. No. 40. After a conference was held on May 26, 2015, the Court clarified that it would construe Plaintiffs' request as an expedited contempt motion for violation of the existing TRO or, alternatively, an expedited motion for clarification of the existing TRO. Dkt. No. 40 at 2. The Court set a briefing schedule and provided the parties with an opportunity to request an evidentiary hearing, Dkt. No. 40 at 2,

4

which they declined, Dkt. No. 48. Therefore, factual findings contained herein are based on the parties' written submissions, which were fully submitted today—June 3, 2015. Both sides requested an expedited process and this Court is issuing this Order on an expedited basis.

## II. DISCUSSION

Plaintiffs contend that CloudFlare is in active concert or participation with (i.e., aiding and abetting) the Defendants because it (1) owns and operates the authoritative name server for grooveshark.li (and the other Grooveshark sites) and (2) optimizes the performance of grooveshark.li (and the other Grooveshark sites), making them faster and more resistant to malicious attack. Although there is no genuine factual dispute regarding the services CloudFlare provides to the Grooveshark sites, CloudFlare contends that it should not be bound by the injunction because its service is "passive" and not necessary for the operation of the Grooveshark sites.

CloudFlare rests its legal argument on the longstanding principal that a court "cannot lawfully enjoin the world at large, no matter how broadly it words its decree." *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir. 1930) (Hand, J.). The problem for CloudFlare is the equally venerable proposition that "a person who knowingly assists a defendant in violating an injunction subjects himself to civil as well as criminal proceedings for contempt." *Id.*; *see also* 11A *Charles A. Wright, et al.*, Federal Practice and Procedure § 2956 at 394 (3d ed. 2013) (explaining that *Alemite* "clearly does not grant immunity to someone who knowingly aids, abets, assists, or acts in concert with a person who has been enjoined from violating the injunction"). Federal Rule of Civil Procedure 65 expressly incorporates this countervailing proposition in that every TRO or injunction binds not only the parties and their agents but also "other persons who are in active concert or participation with them." Fed. R. Civ. P. 65(d)(2).

CloudFlare makes two primary arguments in opposition. First, it takes the position that it is not in such "active concert or participation" with Defendants because its "systems have passively and automatically served the domain names at issue." Opp'n Br. 9. It further argues that it need not comply with the TRO because, even if it complies, the Plaintiffs will not

accomplish their ultimate goal: "Even if CloudFlare—and *every company in the world that provides similar services*—took proactive steps to identify and block the Defendants, the website would remain up and running at its current domain name." Opp'n Br. 1. The Court finds neither argument persuasive.

### A. CloudFlare's Passivity Argument

Turning to CloudFlare's passivity argument first, the Court notes that there is a surprising dearth of authority addressing the meaning of Rule 65's "active concert or participation" language in the context of internet service providers such as CloudFlare. The authority CloudFlare relies on either does not support the point for which it is offered or is factually inapposite. *See* Opp'n Br. 6-10. And the Court itself was unable to find on-point authority beyond the two cases discussed below. Therefore, the Court must rely on more general applications of Rule 65, which have noted that "active concert or participation" exists if the third party "aided and abetted" the party subject to the injunction. This requires "show[ing] that the non-party had actual knowledge of the judicial decree and violated it, and that the challenged action was taken for the benefit of, or to assist, a party subject to the decree." *Adcor Indus. v. Bevcorp, LLC*, 411 F. Supp. 2d 778, 794 (N.D. Ohio 2005) (citing *Microsystems Software, Inc. v. Scandinavia Online AB*, 226 F.3d 35, 43 (1st Cir. 2000); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1353 (Fed. Cir. 1998)); *see also Lindland v. U.S. Wrestling Ass'n*, 227 F.3d 1000, 1006 (7th Cir. 2000) ("The 'active concert or participation' clause is designed to prevent what may well have happened here: the addressee of an injunction, eager to avoid its obligations, persuades a friendly third party to take steps that frustrate the injunction's effectiveness." (citing *Reich v. Sea Sprite Boat Co.*, 50 F.3d 413 (7th Cir. 1995)).

There is no real dispute that CloudFlare had knowledge of the TRO at least as of May 14, 2015 and that it subsequently permitted an anonymous user to establish a free account that configured the domain name grooveshark.li to use CloudFlare's services. CloudFlare's authoritative domain name server translates grooveshark.li as entered in a search browser into the correct IP address associated with that site, thus allowing the user to connect to the site.

Connecting internet users to grooveshark.li in this manner benefits Defendants and quite fundamentally assists them in violating the injunction because, without it, users would not be able to connect to Defendants' site unless they knew the specific IP address for the site. Beyond the authoritative domain name server, CloudFlare also provides additional services that it describes as improving the performance of the grooveshark.li site. Opp'n Br. 3.

As noted, there is limited authority addressing services such as CloudFlare's, but the few courts that have addressed comparable technological services have similarly held that they fall within an injunction's reach if those services are knowingly used to facilitate injunction violations. *See, e.g., The North Face Apparel Corp. v. Fujian Sharing Imp. & Exp. Ltd. Co.*, No. 10 Civ. 1630 (AKH), slip op. 4-6 (S.D.N.Y. June 24, 2011) ("Public Interest Registry, for example, cannot continue to make the connections that enable customers attracted to defendants' websites to access those websites."); *South Cent. Bell Tel. Co. v. Constant, Inc.*, 304 F. Supp. 732, 736 (D.La. 1969) ("As soon as South Central Bell was apprised of the fact that the subscriber, Constant, was, by use of South Central Bell's equipment, violating the injunction imposed by this Court, it had a duty not to act in any way in concert with Constant to effectuate or perpetuate the violation. South Central Bell had the means to prevent its equipment from being used to violate the injunction, and its failure to do so would, at the very least, have amounted to a passive participation in the violation."). Indeed, at least one district court has included CloudFlare within the reach of an injunction aimed at an infringing website: "[A]ll website hosting, website optimization, and any other company or person that provides website services for the MFN domains, including without limitation, CloudFlare, Inc., shall within 24 hours of receipt of this Order, cease all website services made in connection with the MFN domains." *Dish Network LLC v. Dillion*, No. 12cv157 BTM (NLS), 2012 U.S. Dist. LEXIS 13277, at *14 (S.D. Cal. Feb. 3, 2012).

In opposition, CloudFlare relies heavily on *Blockowicz v. Williams*, 630 F.3d 563 (7th Cir. 2010), which involved a third-party website that refused to remove allegedly defamatory content posted by enjoined defendants. But that case, which applied an abuse of discretion

7

standard of review to a district court's refusal to enforce an injunction against third parties, is distinguishable from the facts here. To begin with, the *Blockowicz* court emphasized that the only act of the third-party service provider, "entering into a contract with the defendants, occurred long before the injunction was issued." *Id.* But CloudFlare acknowledges that it permitted an anonymous user to register a "grooveshark" domain name to use its services *after* it had received notice of the TRO. The *Blockowicz* court also highlighted the fact that the third-party service provider merely continued to host the defamatory content on its website as it had done prior to the issuance of the injunction. In contrast, CloudFlare's authoritative domain name server connects users to the new Grooveshark site by translating a user's browser entry into the IP address for the site, and it also ensures faster load times and optimal performance for the site, both of which are far from the passive hosting of content at issue in *Blockowicz*.

CloudFlare's passivity argument also implies that it should not be bound by the injunction because it is not motivated by a desire to help Defendants violate the injunction; rather, CloudFlare contends it is merely providing the same service to Defendants that it would provide to anyone else. But the Second Circuit has "held that a court's inquiry into the fact of aiding and abetting is 'directed to the actuality of concert or participation, without regard to the motives that prompt the concert or participation.'" *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 193 (2d Cir. 2010) (quoting *N.Y. State Nat'l Org. for Women v. Terry*, 961 F.2d 390, 397 (2d Cir. 1992), *vacated on other grounds sub nom., Pearson v. Planned Parenthood Margaret Sanger Clinic (Manhattan)*, 507 U.S. 901 (1993)). Thus, CloudFlare's motivations are not at issue.

### B. CloudFlare's Futility Argument

CloudFlare's second, or "futility," argument is equally unpersuasive. In essence, CloudFlare contends that Plaintiffs will obtain a short-lived victory if it complies with the temporary restraining order because another third-party service provider could provide the same service or Defendants could provide that service on their own. In other words, even if CloudFlare complied with the injunction, this would not "necessarily" shut down grooveshark.li or other various incarnations of Grooveshark that Defendants might set up. But just because

another third party could aid and abet the Defendants in violating the injunction does not mean that CloudFlare is not doing so. Similarly, the Court is unaware of any principle requiring Plaintiffs to show that Defendants' site would be inaccessible but for CloudFlare's services; they need only show that CloudFlare is in active concert or participation with Defendants.

CloudFlare also suggests that it would not be able to comply with the injunction because it "has no way of identifying accounts opened by the Defendants, *other than* their alleged use of domains containing the name 'grooveshark.'" Opp'n Br. 12 (emphasis added). But as Plaintiffs note, "[t]he word 'grooveshark' is a highly-distinctive registered trademark, owned by Plaintiff UMG, and preventing CloudFlare from 'linking to' any domain name that includes the 'grooveshark' word mark is precisely what the TRO requires (among other things), regardless of which top-level domain (e.g., .li, .io, .pw, .vc, etc.) is used." Reply Br. 8-9. Thus, far from being unable to comply, CloudFlare acknowledges that it can identify customers using domain names containing the name "grooveshark."

Finally, CloudFlare suggests that the TRO could potentially enjoin any service provider that is remotely connected to the new Grooveshark site(s). The Court does not share this concern in light of the wording of the TRO, which is sufficiently narrow in scope that "the party enjoined [is] able to ascertain from the four corners of the order precisely what acts" are forbidden, *Sanders v. Air Line Pilots Association*, 473 F.2d 244, 247 (2d Cir. 1972). While there may be more attenuated services that indirectly support Defendants' sites, the Court is addressing the facts before it, which involve a service that is directly engaged in facilitating access to Defendants' sites with knowledge of the specific infringing names of those sites. In this respect, CloudFlare seems quite similar to a domain name registrar, which both parties appear to agree is covered by the injunction.

In sum the Court concludes that CloudFlare is in active concert or participation with the Defendants based on the following facts: (1) CloudFlare admittedly owns and operates the authoritative domain name server for the new Grooveshark sites, which connects users entering the Grooveshark domain names into a web browser to the specific IP address associated with that

9

site; (2) CloudFlare provides other services designed to improve the performance of the new Grooveshark sites; and (3) CloudFlare began providing its services to grooveshark.li after it acknowledged receipt of the TRO. Furthermore, for the purpose of determining whether CloudFlare is in active concert or participation with the Defendants, it is not determinative that CloudFlare's services are automated, that CloudFlare lacks a specific desire or motivation to help the Defendants violate the injunction, or that the Grooveshark sites would continue to exist even without CloudFlare's assistance. The Court thus hereby concludes and clarifies that CloudFlare was bound by the TRO and is now bound by the existing preliminary injunction.

### C.  Attorney's Fees

Plaintiffs made only a passing request for attorney's fees in their opening brief and did not press their case for attorney's fees in their reply brief despite the fact that CloudFlare offered arguments against an award of attorney fees in its opposition. Thus, it appears that Plaintiffs have abandoned their halfhearted request for attorney's fees. *See, e.g., Adams v. N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 452 n.32 (S.D.N.Y. 2010) (Peck, M.J.) (collecting cases); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 456 F Supp. 2d 131, 152 (D. Me. 2006) ("A party's failure to oppose specific arguments in a motion to dismiss results in waiver of those issues."). Even if not abandoned, Plaintiffs failed to establish a willful violation necessary to support an award of attorney's fees and CloudFlare advanced a colorable, good-faith basis for believing that it was not covered by the injunction. Therefore, the Court will not award attorney's fees. *See, e.g., GMA Accessories, Inc. v. Eminent, Inc.*, No. 07 Civ. 3219 (LTS)(DF), 2008 U.S. Dist. LEXIS 55107, at *34-35 (S.D.N.Y. May 29, 2008) ("Most courts in this Circuit strictly adhere to the general principle that, for attorneys fees and costs to be awarded on a contempt motion, the contemnor's conduct must have been willful. But if the Court does find that the defendant's violation was willful it should then award attorneys' fees and costs unless there are persuasive grounds to deny them." (citations and internal quotation marks omitted)). Going forward, however, CloudFlare is now aware that it is bound by the injunction so any

future failure to comply might expose it to a contempt finding that could result in the award of attorney's fees or other consequences.

### III. CONCLUSION

For the reasons stated above, the Court concludes and clarifies that third-party service provider CloudFlare, Inc. was bound by the TRO and is bound by the existing preliminary injunction in this case.

SO ORDERED.

Dated: June ___, 2015
New York, New York

_____
ALISON J. NATHAN
United States District Judge