UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC, ATLANTIC RECORDING CORPORATION, CAPITOL RECORDS, LLC, ELEKTRA ENTERTAINMENT GROUP INC., LAFACE RECORDS LLC, SONY MUSIC ENTERTAINMENT, UMG RECORDINGS, INC., WARNER BROS. RECORDS INC., WARNER MUSIC GROUP CORP., and ZOMBA RECORDING LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>VITA TKACH, and DOES 1-10, D/B/A GROOVESHARK.IO AND GROOVESHARK.PW<br><br>*Defendants*. | CIVIL ACTION NO. 15-CV-03701 |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR LEAVE TO CONDUCT EXPEDITED DISCOVERY**

## INTRODUCTION

On May 13, 2015, this Court (Batts, J.) entered a Temporary Restraining Order, Seizure Order, and Order to Show Cause for Preliminary Injunction in this action (the "TRO") against Defendants "Vita Tkatch" and other individuals whose identities are unknown (the "Doe Defendants") based on their operation of a blatantly illegal website (the "Counterfeit Service") that infringed Plaintiffs' trademarks and copyrights.  *See* TRO, 6, May 13, 2015 (Dkt. No. 33).[1] Thereafter, on June 1, 2015, this Court issued a Preliminary Injunction ("PI Order") against Defendants keeping in place relief ordered by the TRO during the pendency of this case.  PI Order, 1-2, Jun. 1, 2015 (Dkt. No. 53).[2]

Notwithstanding the TRO and PI Order, Defendants have continued to operate the Counterfeit Service, concealing their identities and using multiple infringing domain names registered through at least three different domain name registrars, thus forcing Plaintiffs to engage in a "technological globetrotting game of 'whack-a-mole.'"  June 3 Order, 2; TRO, 3 ("Defendants have attempted to conceal their identities, and move certain elements of the Counterfeit Service outside this Court's reach, including through the use of aliases and purposely deceptive contact information associated with their operation"); *see also* McDevitt Decl. TRO ("McDevitt Decl.") ¶ 19, May 22, 2015 (Dkt. No. 22).

---

[1] The TRO further enjoined defendants and those in active concert or participation with them from "moving, destroying or otherwise disposing of any computer files, electronic files, business records, or documents relating to the Counterfeit Service."  TRO, 6.

[2] The PI Order specified that it applied to Defendants "and any persons in active concert or participation with them, including but not limited to domain name registrars, domain name registries, and Internet service providers ('ISPs')."  *Id*.  On June 3, the Court further confirmed that the TRO and Preliminary Injunction Orders applied to the third party service provider CloudFlare, Inc.  Mem. & Order ("June 3 Order"), 11, Jun. 3, 2015 (Dkt. No. 58).

Although Defendants continue to conceal their true identities, Plaintiffs have identified third parties with which Defendants have contracted for services related to their Counterfeit Service and which are thus likely to have highly relevant information concerning the true identities and whereabouts of Defendants and other relevant information concerning Defendants' operation of the Counterfeit Service.  Accordingly, and for the reasons set forth below, Plaintiffs now seek leave to conduct expedited discovery from those third-party service providers and others that Plaintiffs may identify in the course of their investigation that have information relevant to the identities and location of Defendants.

## ARGUMENT

Although discovery generally commences after the parties have satisfied the meet and confer requirement of Federal Rule of Civil Procedure ("Rule") 26(f), discovery may proceed without a conference "when authorized by . . . court order." Fed. R. Civ. P. 26(d)(1).  Courts within the Second Circuit and elsewhere routinely authorize such expedited discovery based on a "flexible standard of reasonableness and good cause."  *See, e.g., Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241, 244-45 (S.D.N.Y. 2012) (Nathan, J.); *Microsoft Corp. v. Does 1-39*, No. 12-cv-1335(SJ)(RLM), 2012 WL 5497946 (E.D.N.Y. Nov. 13, 2012); *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005); *Stern v. Cosby*, 246 F.R.D. 453, 457 (S.D.N.Y. 2007); *Sony Music Entm't Inc. v. Does 1-40,* 326 F. Supp. 2d 556, 568 (S.D.N.Y. 2004); *Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1, 6-7 (D.D.C. 2008) (noting the "overwhelming number of cases where courts have routinely applied the 'good cause' standard and permitted expedited discovery" to identify Doe defendants).

In evaluating whether "good cause" exists under these circumstances, courts have considered such factors as whether plaintiffs have alleged a *prima facie* case of infringement,

whether plaintiffs have no alternative method of obtaining Defendants' identities, and whether, without expedited discovery, data may be deleted or location information may become outdated. *See, e.g., Digital Sin*, 279 F.R.D. at 241-42; *Ayyash*, 233 F.R.D. at 327 (granting expedited discovery because defendants could hide assets); *UMG Recordings, Inc. v. Doe*, No. C 08-1193 SBA, 2008 WL 4104214, at *4 (N.D. Cal. Sept. 3, 2008).

Good cause for expedited discovery plainly exists here. First, Defendants have made clear that they have no intention of participating in this action. *See* PI Order, 1 (noting Defendants' "failure to . . . indicate a willingness to participate in this litigation"). Indeed, Defendants have flouted the orders of this Court and sought to conceal their true identities and hide their operations. *See* June 3 Order, 3-4 (Defendants registered additional infringing domain names after issuance of TRO); Pls.' Mem. TRO ("TRO Br."), 8-9, 12-13, May 22, 2015 (Dkt. No. 20) (Defendants concealed identities and operations); McDevitt Decl. ¶¶ 10-11, 14, 16, 19 (same). Thus, Defendants plainly have no intention of participating in a discovery conference under Rule 26(f) or of otherwise responding to any discovery requests. For this reason alone, discovery should not await a Rule 26(f) conference, as no such conference is possible given Defendants' refusal to appear.

Second, the Court already has concluded that Plaintiffs have made *prima facie* claims against Defendants for trademark counterfeiting, cybersquatting, and copyright infringement, and that such claims are likely to succeed on the merits. TRO, 2-3; *see also* PI Order, 1-2 (continuing relief granted in TRO).

Third, Plaintiffs have no alternative methods to discover information concerning Defendants' identities, whereabouts, and operations. The only available sources of information concerning Defendants and their operation of the Counterfeit Service are the various service

providers with whom Defendants entered into contractual arrangements to operate their Counterfeit Service. Those entities include:

- Namecheap, Inc. located in Los Angeles, CA – the registrar through which Defendants registered the Grooveshark.io and Grooveshark.pw domain names. *See* TRO, 5, 7;
- Dynadot, LLC in San Mateo, CA – the registrar through which Defendants registered the Grooveshark.vc domain name. *See* June 3 Order, 3;
- CloudFlare, Inc., located in San Francisco, CA – until recently, the provider of authoritative name servers, content delivery, and reverse-proxy services for the Counterfeit Service. *See* June 3 Order, 3-4; and
- Nodisto IT, LLC, located in Las Vegas, NV and Dallas, TX – the hosting provider Defendants initially used to provide users of the Counterfeit Service with infringing copies of Plaintiffs' sound recordings. *See* McDevitt Decl. ¶ 17.

All of these entities are highly likely to have discoverable information. For example, as third party CloudFlare has confirmed, CloudFlare has possession of user names and IP addresses associated with Defendants' accounts and servers. Decl. of Justin Paine ¶ 2, May 28, 2015 (Dkt. No. 43). Additionally, to procure the infringing domain names for the Counterfeit Service from Namecheap and Dynadot, Defendants were likely required to open accounts with these entities and provide payment for their services. *See* Declaration of Lindsay W. Bowen ("Bowen Decl."), filed herewith, Ex. B ("Domain Prices," https://www.dynadot.com/domain/tlds.html) (last accessed Jun. 9, 2015), Ex. C ("Domain Name Search," https://www.namecheap.com/domains/registration.aspx) (last accessed Jun. 9, 2015).

Fourth, there is a short window of time before relevant information in the possession of the foregoing third parties will become stale—especially where Defendants have a demonstrated record of changing contact information, IP addresses, and the physical location of their servers in order to avoid detection—or be deleted by third parties in the normal course of business. TRO Br., 3-4, 13; *see Digital Sin*, 279 F.R.D. at 242 ("expedited discovery is necessary to prevent the requested data from being lost forever as part of routine deletions").

Finally, the discovery requested herein is targeted in nature and seeks documents concerning the identity, contact information, and location of Defendants and information concerning Defendants' operation of the Counterfeit Service. *See Digital Sin*, 279 F.R.D. at 244 (ordering targeted discovery concerning identity, contact information, and location of Defendants). Moreover, Plaintiffs will use any information disclosed by a third party solely for the purpose of enforcing their intellectual property rights against Defendants. *See id.* at 245 (establishing a similar limitation on the discovery granted); Proposed Order, filed herewith.[3]

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to commence expedited discovery should be granted.

---

[3] Although "[f]or the most part, courts in this district have applied a 'flexible standard of reasonableness and good cause' to determine whether expedited discovery is appropriate," some courts have applied a four-factor test for expedited discovery that requires a showing of (1) irreparable injury; (2) some probability of success on the merits; (3) some connection between the expedited discovery and the avoidance of irreparable harm; and (4) some evidence that the need for the expedited discovery outweighs the injury defendants will suffer from the expedited discovery. Order at 6, *Digital Sin, Inc. v. Does 1-27*, No. 12 Civ. 3873 (JMF) (S.D.N.Y. Jun. 6, 2012) (Dkt. No. 6), attached as Exhibit A to the Bowen Decl.; *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982). Plaintiffs also plainly satisfy that test. The Court already has determined that Plaintiffs will be irreparably harmed as long as the Counterfeit Service continues to operate and that they have demonstrated a likelihood of success on the merits of the underlying claims. TRO, 3; *see also* TRO Br., 21-29. The requested discovery bears directly on the irreparable harm caused by Defendants because, if they are able to maintain their anonymity, Defendants will be able to continue their infringement. TRO Br., 19-20. Finally, the injury resulting to Plaintiffs from denying the requested discovery far outweighs any impact to Defendants' interests from disclosing their true identities and whereabouts. *See* TRO Br., 30-31 (describing harm to Plaintiffs).

DATED: New York, NY  
           June 10, 2015

Respectfully submitted,

JENNER & BLOCK LLP

By: /s/ Kenneth L. Doroshow
    Kenneth L. Doroshow (KD-8374)
    1099 New York Ave., N.W.
    Suite 900
    Washington, DC 20001
    Telephone: (202) 639-6027
    Facsimile: (202) 639-6066

    Andrew H. Bart (AB-6724)
    Gianni P. Servodidio (GS-0713)
    Lindsay W. Bowen (LB-8510)
    Alison I. Stein (AS-2884)
    Ava U. McAlpin (AM-4645)
    919 Third Avenue
    39th Floor
    New York, NY 10022
    Telephone: (212) 891-1600
    Facsimile: (212) 891-1699

*Attorneys for Plaintiffs*