UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC, ATLANTIC RECORDING CORPORATION, CAPITOL RECORDS, LLC, ELEKTRA ENTERTAINMENT GROUP INC., LAFACE RECORDS LLC, SONY MUSIC ENTERTAINMENT, UMG RECORDINGS, INC., WARNER BROS. RECORDS INC., WARNER MUSIC GROUP CORP., and ZOMBA RECORDING LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>VITA TKACH, and DOES 1-10, D/B/A GROOVESHARK.IO AND GROOVSHARK.PW<br><br>*Defendants*. | CIVIL ACTION<br>NO. 15-CV-03701-AJN |

**MEMORANDUM IN SUPPORT OF NON-PARTY CLOUDFLARE INC.'S MOTION TO MODIFY PRELIMINARY INJUNCTION**

## INTRODUCTION

Following this Court's Order of June 3, 2015, which stated that the preliminary injunction issued in this matter applies to CloudFlare, CloudFlare has complied with the preliminary injunction by terminating the user accounts that used the domain names grooveshark.io, grooveshark.pw, grooveshark.vc, grooveshark.li, and other domain names containing "grooveshark."

CloudFlare seeks clarification from the Court, however, because further compliance appears to leave CloudFlare in an untenable position. Plaintiffs have not claimed that CloudFlare is liable for any trademark or copyright infringement by Defendants, nor could they under the rule of *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107 (2d Cir. 2010) (holding that a third party did not have an affirmative duty to remedy trademark infringement by others on its platform absent specific knowledge of the infringement). Yet a plausible reading of the preliminary injunction would seem to require CloudFlare to act as the enforcers of Plaintiffs' trademarks and to determine whether *any* of its customers, present *and future*, are entitled or are not entitled to use domain names that contain "grooveshark," "in whole or in part," depending on whether the customer has a license from Plaintiff UMG or whether the customer's use is non-infringing as a matter of law. Alternatively, the injunction may require CloudFlare to prevent all of its current and future customers from using CloudFlare's service with domain names that contain the term "grooveshark," regardless of the customer's legal right to use such names under license or in a non-infringing manner.

In effect, although Plaintiffs' dispute is with a particular group of defendants running a single website adjudged to be infringing (the "new Grooveshark" site), the order would seem to task CloudFlare with evaluating whether Plaintiffs' trademark interests are implicated by a

1

customer's use and enforcing Plaintiffs' trademarks against the world. This result conflicts with the Second Circuit's holding in *Tiffany* that only knowledge of specific instances of infringement on the part of an intermediary give rise to an "affirmative duty to remedy the problem." 600 F.3d at 107. While CloudFlare does not believe this to be the Court's intent, CloudFlare thought it prudent to seek clarification.

Therefore, CloudFlare respectfully asks the Court to modify the injunction to make clear that CloudFlare must cease serving a domain only when given notice by the Plaintiffs that the domain name infringes Plaintiffs' trademark, or if CloudFlare otherwise has actual knowledge of specific infringements.

CloudFlare's counsel conferred with counsel for Plaintiffs. Plaintiffs did not consent to the relief requested herein.

## PROCEDURAL HISTORY

The language of the operative preliminary injunction comes from the Temporary Restraining Order and Order to Show Cause issued by Judge Batts on May 13, 2015. That order was briefed and issued under seal, and made known to CloudFlare only after it issued. CloudFlare had no opportunity to challenge its particulars. On its face, the order enjoins those bound by it from "[u]sing, linking to, transferring, selling, exercising control over, or otherwise owning the domain name grooveshark.io or grooveshark.pw or any other domain name that incorporates, in whole or in part, any of the Grooveshark Marks" (the "Infringing Domain Names").

Plaintiffs moved for a supplemental order to require CloudFlare to comply with the Temporary Restraining Order, and CloudFlare opposed. On June 3, this Court issued a further order clarifying that CloudFlare is bound by the original order, since converted into a

preliminary injunction. Following the June 3 Order, CloudFlare disabled all of the user accounts on its system that were associated with domains containing "grooveshark."

## ARGUMENT

This Court can modify a preliminary injunction through "the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place." *Sierra Club v. U.S. Army Corps of Engineers*, 732 F.2d 253, 256 (2d Cir. 1984) (contrasting the standard for modifying a preliminary injunction with that of a permanent injunction). The Court should modify the preliminary injunction as applied to CloudFlare because it conflicts with the Second Circuit's rule of secondary liability in trademark cases. In so doing, the preliminary injunction significantly alters the role of Internet intermediaries in trademark cases, giving them affirmative enforcement responsibilities absent any knowledge of specific infringements. This is a change with serious implications for Internet services and their users.

    A.    **Under Settled Law, Internet Intermediaries Cannot Be Held Responsible For Preventing Trademark Infringement By Customers Without Having Specific Knowledge Of Which Customers Are Infringing**.

Settled law defines Internet intermediaries' responsibilities with respect to future trademark infringements by parties yet unidentified. Where an Internet user is accused of infringing a trademark, a service provider can only be held responsible for remedying the infringement if it has knowledge of specific acts of infringement. It cannot be held responsible for enforcing the trademark on behalf of the trademark owner absent such knowledge.

In *Tiffany (NJ), Inc. v. eBay Inc.*, a jewelry maker sued online auction service eBay, arguing that eBay's facilitation of online auctions, including auctions for counterfeit items, constituted contributory trademark infringement. 600 F.3d at 103. Tiffany argued that once it

3

notified eBay that particular items available for auction on the eBay site were counterfeit, eBay had a continuing obligation not to "make its services available to infringing sellers." *Id.* at 106.

The district court applied the standard of *Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 854 (1982), and its progeny that secondary trademark liability applies when a "service provider 'continues to supply its [service] to *one* whom it knows or has reason to know is engaging in trademark infringement.'" *Tiffany*, 600 F.3d at 104-05 (emphasis in original). Thus, to establish liability, "Tiffany would have to show that eBay 'knew or had reason to know of specific instances of actual infringement' beyond those that it addressed upon learning of them." *Id.* at 107 (*quoting Tiffany (NJ) Inc. v. eBay Inc.,* 576 F. Supp. 2d 463, 510 (S.D.N.Y. 2008)). The district court concluded that "*generalized* knowledge of trademark infringement on its website" did not meet the "'knowledge or reason to know' prong of the *Inwood* test", and that "specific knowledge as to which particular sellers were making such sales" was required before the court would "impose upon eBay an affirmative duty to remedy the problem." *Id.* The Second Circuit affirmed these conclusions. *Id*. Consequently, absent specific knowledge of trademark infringement, eBay could not be compelled to take affirmative steps to interdict future counterfeit sales.

Other circuits have adopted a similar rule, and none have rejected it. *See, e.g., Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 983-85 (9th Cir. 1999) (holding that trademark infringement liability by a domain name registrar required "actual or constructive knowledge of any infringement"); *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (applying *Lockheed*); *David Berg and Co. v. Gatto Intern. Trading Co., Inc.*, 884 F.2d 306, 311 (7th Cir. 1989) (secondary liability requires knowledge or intent); *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 164-65 (4th Cir. 2012) (citing *Tiffany* with approval);

4

*see also Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 439 n.19 (1984) (describing the *Inwood* standard as requiring that a defendant "supply its products to *identified individuals* known by it to be engaging in continuing infringement of respondents' [trademarks]" (emphasis added)).

### B. The Preliminary Injunction Imposes Responsibilities On Non-Party CloudFlare That Are Inconsistent With the Standard of Secondary Liability in Trademark Cases.

In this case, Plaintiffs do not claim that CloudFlare is liable for any trademark infringement, nor could they. Plaintiffs have not alleged that CloudFlare had knowledge of any infringement, *except* that receipt of the Temporary Restraining Order put CloudFlare on notice of the specific infringements described therein. As CloudFlare complied with the Order upon the Court's confirmation that it was required to do so, CloudFlare is not liable for any alleged trademark infringement by Defendants.

However, the preliminary injunction seems to impose upon CloudFlare "an affirmative duty to remedy" *future* infringements of the "grooveshark" mark by *anyone*, by preventing all current and future customers from using "grooveshark" domains on CloudFlare's service.

In the June 3 Order, the Court noted that its determination that the TRO applied to CloudFlare was based solely on "the actuality of concert or participation"—that is, the mere fact that CloudFlare was providing domain name resolution and reverse proxy services to the Defendants. June 3 Mem. and Order (ECF No. 58) at 8 (citation omitted). Absent any reference to intent or knowledge, the preliminary injunction, as written, seems to impose ongoing responsibilities on CloudFlare that go far beyond the facts of the instant case, the specific defendants involved, and their "new Grooveshark" website. Requiring CloudFlare to block or

5

cancel user accounts that use "grooveshark" domains regardless of who the user is, or alternatively requiring CloudFlare to determine if a user's use of "grooveshark" in a domain name is infringing, but *without* a precondition that CloudFlare must have knowledge of a specific infringement, is in conflict with the holding of *Tiffany*.

This presents a practical problem, because CloudFlare currently has no automated means of filtering out users at the time of registration based on the domain names they use. Declaration of David Koston ¶ 4. Customers open accounts for approximately 5,000 to 7,000 domain names on CloudFlare's service each day. *Id.* ¶¶ 3-4.

Moreover, while CloudFlare maintains contact information on its website for the reporting of infringement claims, and passes such claims along to its customers, CloudFlare has no way of determining who may legally use a given domain name. *Id.* ¶¶ 6-8. While CloudFlare is now aware that the "grooveshark" trademark is owned by Plaintiff UMG Music, CloudFlare cannot determine on its own which sites are under the control of UMG Music or are using the mark under license from them.

And in addition, some websites may be using domain names containing "grooveshark" in a manner that does not infringe. For example, a non-commercial blog called "groovesharknews.com" that contained commentary or reporting about Grooveshark and its litigation (and had no connection to the Defendants in this case) would likely be a non-infringing use in connection with speech protected by the First Amendment. *See Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1176-81 (9th Cir. 2010) ("You can preen about your Mercedes at mercedesforum.com and mercedestalk.net, [and] read the latest about your double-skim-no-whip latte at starbucksgossip.com."). In fact, the domain groovesharknews.com was associated with a CloudFlare customer account as of June 3, but the site had no content at that

time. Koston Decl. ¶ 2. Under the current preliminary injunction, CloudFlare would be required *not* to provide service to such a website, or to try to ascertain, at CloudFlare's own risk, whether the site infringed.

The practical problems for CloudFlare, and the potential for harm to the interests of non-infringing website owners, will multiply if similarly broad injunctions against service providers like CloudFlare become the norm. The factual scenario presented by this case—a dispute between a rightsholder and the owners of a website alleged to infringe a trademark or copyright—is quite common. If any "service that is directly engaged in facilitating access" to a particular website adjudged to be infringing a trademark, June 3 Order at 9, could be required to proactively prevent *all others* from infringing the trademark indefinitely, the cost and risk to service providers would grow dramatically. A service like CloudFlare may quickly find itself having to monitor all user accounts for their use of any of a long and growing list of trademarks owned by others, facing the risk of contempt if such monitoring fails to identify an infringement. This is precisely the sort of burden on non-infringing service providers that the *Tiffany* rule and similar protections for Internet intermediaries avoid.

## CONCLUSION

A modification to the preliminary injunction would make it consistent with the applicable rule of secondary liability in trademark law. Therefore, CloudFlare requests that the Court modify the preliminary injunction to make clear that CloudFlare is not required to cease providing services to a website unless Plaintiffs notify CloudFlare that a particular customer website infringes its trademarks, or CloudFlare otherwise has particularized actual knowledge of

a specific infringement. A proposed order supplements this Motion and will be separately emailed to the Court.

DATED: June 17, 2015                              Respectfully submitted,


      /s/ Grant P. Fondo_____

William J. Harrington (WH-6376)
Grant Fondo (admitted *pro hac vice*)
GOODWIN PROCTER LLC

Mitchell L. Stoltz (admitted *pro hac vice*)
Corynne McSherry(admitted *pro hac vice*)
ELECTRONIC FRONTIER FOUNDATION

*Attorneys for Non-Party CloudFlare, Inc.*

8

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Grant P. Fondo