UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC, ATLANTIC RECORDING CORPORATION, CAPITOL RECORDS, LLC, ELEKTRA ENTERTAINMENT GROUP INC., LAFACE RECORDS LLC, SONY MUSIC ENTERTAINMENT, UMG RECORDINGS, INC., WARNER BROS. RECORDS INC., WARNER MUSIC GROUP CORP., and ZOMBA RECORDING LLC,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>VITA TKACH, and DOES 1-10, D/B/A GROOVESHARK.IO AND GROOVESHARK.PW<br><br>    *Defendants*. | CIVIL ACTION<br>NO. 15-CV-03701-AJN |

**PLAINTIFFS' OPPOSITION TO THIRD-PARTY CLOUDFLARE INC.'S
MOTION TO MODIFY THE PRELIMINARY INJUNCTION**

**INTRODUCTION**

CloudFlare's motion to modify the preliminary injunction should be denied for several reasons. First, the motion is entirely unnecessary. Although CloudFlare contends that it "cannot determine on its own which sites are under the control of [Plaintiff] UMG [Recordings, Inc.] or are using the ["grooveshark"] mark under license from them," Memorandum in Support of CloudFlare's Motion to Modify Preliminary Injunction at 6, Dkt. No. 72 ("Mem."), the solution to this supposed problem is not to modify the injunction, but rather for CloudFlare simply to ask Plaintiffs whether a given site is authorized or not. Indeed, CloudFlare already did so on one occasion, which promptly and fully resolved CloudFlare's question without the need for this Court's involvement.

Second, CloudFlare's requested modification is premised on a set of imagined circumstances, involving hypothetical websites whose infringing status CloudFlare professes it would be unable to determine if those websites actually existed. In fact, however, the terms of the injunction are crystal clear and targeted in their scope, and CloudFlare has already demonstrated that it is able to identify and discontinue its services to any *actual* infringing websites with no difficulty whatsoever. Plaintiffs respectfully submit that, unless and until CloudFlare confronts a website whose infringing status is uncertain (and if consultation with Plaintiffs does not resolve any such uncertainty), this Court should decline CloudFlare's invitation to render an advisory ruling on the best way to address non-existent websites.

Finally, the relief that CloudFlare seeks is no mere "modification" of the injunction, but is instead a thinly disguised effort to gut the protections afforded to Plaintiffs under the Court's Order. Under the existing injunction, CloudFlare is prohibited from providing its services to any website that, among other things, "incorporates, in whole or in part, any of [the] Grooveshark Marks" in its domain name. Preliminary Injunction Order at 2, Dkt. No. 53. Under CloudFlare's

proposed "modification," however, CloudFlare would be free to provide – or, indeed, resume – service to any such website going forward without regard to whether its domain name incorporates the "grooveshark" mark, unless and until Plaintiffs notify CloudFlare in writing of what is already made abundantly clear by the injunction itself; *i.e.*, that the site is infringing the mark.  In fact, CloudFlare's Proposed Order goes even further and would allow CloudFlare to continue to provide service to infringing websites for an additional five (5) days even after receipt of a notice from Plaintiffs – and perhaps longer, as CloudFlare apparently reserves for itself the right to continue to provide service until its website customer has an opportunity to file an objection with the Court.  *See* Proposed Order (emailed to the Clerk of Court on June 17, 2015).  Such an arrangement – which CloudFlare constructed from whole cloth – would therefore effectively guarantee the very aiding and abetting of infringement that the Court's Order was intended to prevent.

       CloudFlare's proposed amendment thus has it precisely backwards:  it is CloudFlare, not Plaintiffs, that will first know the domain name of any website seeking to employ CloudFlare's services, and it is CloudFlare, not Plaintiffs, that is best situated to determine whether the operators of any infringing website – *i.e.*, CloudFlare's own customers – are individuals other than the Defendants or their cohorts.  It is entirely appropriate, therefore, that CloudFlare is prohibited from providing service to any website that incorporates any of the Grooveshark Marks in its domain name unless CloudFlare confirms that the website is *not* affiliated with Defendants and does *not* infringe Plaintiffs' intellectual property rights.  Should any such website seeking to employ CloudFlare's services actually exist (and CloudFlare has identified none), questions regarding CloudFlare's obligations can easily be addressed through a simple consultation with Plaintiffs, without the need for the Court's intervention.  Accordingly, CloudFlare's motion should be denied.

**ARGUMENT**

A party moving to modify a preliminary injunction must show that the modification is justified by a change in circumstances. *See, e.g.*, *Lawsky v. Condor Capital Corp.*, No. 14 CIV. 2863 CM, 2014 WL 3858496, at *5 (S.D.N.Y. Aug. 1, 2014); *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, 427 F. Supp. 2d 491, 501-02 (S.D.N.Y. 2006), *aff'd,* 246 F. App'x 73 (2d Cir. 2007); *see also Favia v. Ind. Univ. of Pa.*, 7 F.3d 332, 337, 340-41 (3d Cir. 1993); *Concilio de Salud Integral de Loiza, Inc. v. Perez–Perdomo*, 551 F.3d 10, 16 (1st Cir. 2008). CloudFlare makes no such showing.[1]

Instead, CloudFlare contends only that the preliminary injunction places it in an "untenable position," in two respects. Mem. at 1. First, CloudFlare claims that it is unable to determine whether a website that incorporates the "grooveshark" mark in its domain name is infringing, as there could be (according to CloudFlare) non-infringing uses of that mark. *Id.* Second, CloudFlare argues that the injunction could be construed to require it to refuse service to websites that, while infringing, are owned or operated by individuals other than Defendants or their cohorts. *Id*. As explained below, both concerns are without factual basis, and neither merits modification of the injunction.

**I.     CloudFlare's Proposed Modification Is Unnecessary.**

CloudFlare acknowledges that it has had no difficulty complying with the preliminary injunction and that it has already terminated the user accounts for numerous domain names containing the "grooveshark" mark, beyond those identified by Plaintiffs. *See* Mem. at 1. As far

---

[1] Although CloudFlare captions its motion as one to "modify" the preliminary injunction, it appears from the substance of the motion to be one for clarification, s*ee, e.g.*, Mem. at 1 ("CloudFlare seeks clarification from the Court…."); *id*. at 2 ("While CloudFlare does not believe this to be the Court's intent, CloudFlare thought it prudent to seek clarification."), or, to the extent that it relies on arguments already advanced (and rejected) in connection with this Court's Order of June 3, 2015, for reconsideration of that Order.

3

as Plaintiffs can see (although CloudFlare is in a far better position to know), CloudFlare has terminated the accounts of all websites on their customer roster with "grooveshark" in their names, either in whole or in part. CloudFlare's motion, therefore, concerns only hypothetical "grooveshark"-named websites whose owners may seek to employ CloudFlare's services in the future.

With respect to these hypothetical websites, there is already a mechanism in place to address CloudFlare's professed concerns should they arise: a telephone. If CloudFlare has any genuine reason to question whether a given "grooveshark"-named website is "under the control of [Plaintiff] UMG" or is "using the ["grooveshark"] mark under license from them," Mem. at 6, CloudFlare can simply contact Plaintiffs and ask whether the site is authorized. If the website were indeed authorized, then Plaintiffs would have every incentive to confirm as much for CloudFlare.

The parties' actual course of dealings bears this out. On June 5, 2015, two days after this Court issued its Order clarifying that CloudFlare is bound by the preliminary injunction (the "June 3 Order", Dkt. No. 58), CloudFlare contacted Plaintiffs' counsel to ask whether Plaintiffs wanted CloudFlare to discontinue service to a single website, "grooveshark.com" (the website for the original "Grooveshark" service), which appeared to be authorized by Plaintiffs and, to that point, had been a CloudFlare customer. *See* Declaration of Kenneth L. Doroshow appended hereto ("Doroshow Decl.") Ex. A. Within less than twenty-four hours, Plaintiffs' counsel confirmed for CloudFlare that "grooveshark.com" was no longer a CloudFlare customer, thereby rendering CloudFlare's question moot. *Id.* No "clarification" or "modification" of the preliminary injunction was necessary to achieve this simple and complete resolution. To date, CloudFlare has not brought any other websites to Plaintiffs' attention, but Plaintiffs stand ready to respond to any such inquiries in the future.

4

As for CloudFlare's professed inability to determine whether an infringing website is owned or operated by Defendants or their cohorts, this is the same argument that CloudFlare already made – and the Court rejected – in connection with the June 3 Order.  *See, e.g.*, CloudFlare's Mem. in Opp. to Pls.' App. for Supp. Order, at 12, Dkt. No. 42 ("CloudFlare's Mem. In Opp.") ("CloudFlare has no way of identifying accounts opened by Defendants, other than their alleged use of domains containing the name 'grooveshark'….  The only way that CloudFlare could deny the Defendants in this case the use of CloudFlare's service is to prevent anyone from linking a CloudFlare account to any domain name containing 'grooveshark.'").  As this Court found, "far from being unable to comply [with the injunction], CloudFlare acknowledges that it can identify customers using domain names containing the name 'grooveshark.'"  June 3 Order at 9.

**II.     CloudFlare's Motion Seeks An Impermissible Advisory Ruling.**

It is well settled that, "[t]o avoid a possible tendency to seek … advisory opinions on matters hypothetical, the role of the courts under Article III is confined to passing upon an actual 'case or controversy.'"  *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 411, 450 n.6 (S.D.N.Y. 2014) (quoting *Evans v. Lynn*, 537 F.2d 571, 596 (2d Cir. 1975)).  As noted above, however, CloudFlare's motion is premised entirely on hypothetical scenarios, as CloudFlare appears to have removed from its customer roster all websites with "grooveshark" in their domain names and has identified no other such websites anywhere in existence, let alone one that seeks to employ CloudFlare's services.  Courts routinely refuse to entertain motions based on such hypothetical facts.  *See, e.g.*, *Mears v. Montgomery*, 566 F. App'x 17, 17 (2d Cir. 2014) (upholding district court's denial of motion to modify injunction in trademark infringement case where scope of "injunction was unambiguous" and "'blanket endorsement' of [the moving party's] proposed terms 'would amount to an impermissible advisory opinion.'"); *see also, e.g.*,

5

*Topps Chewing Gum, Inc. v. Fleer Corp.*, 799 F.2d 851, 858 (2d Cir. 1986) (declining to "render an advisory opinion [based] on a hypothetical question"); *Kuriakose v. Fed. Home Loan Mortg. Co.*, 674 F. Supp. 2d 483, 492-93 (S.D.N.Y. 2009) ("The Court will not risk issuing an advisory opinion on a hypothetical set of facts").

In fact, CloudFlare identifies only one domain name – "groovesharknews.com" – in support of its motion. Although CloudFlare claims that this domain name was once associated with a CloudFlare customer, it acknowledges that the website "had no content at that time" and does not exist today. Mem. at 6-7. As a result, CloudFlare can only posit that, *if* there were a "groovesharknews.com" website and *if* the website "contained commentary or reporting about Grooveshark and its litigation," then, in CloudFlare's view, the domain name "would likely be a non-infringing use" of the "grooveshark" mark. Mem. at 6. But it is just as easy to imagine that this hypothetical "groovesharknews.com" website contained no such commentary or reporting (which, in fact, the real "groovesharknews.com" did not as it "had no content" at all) or, indeed, that it offered unauthorized music downloads, in which case the use of "groovesharknews.com" as the domain for the site would surely be infringing and not a fair use of the "grooveshark" mark. Such speculation based on hypothetical facts is no basis for the Court to modify the preliminary injunction.

### III. CloudFlare's Proposed "Modification" Would Undermine The Preliminary Injunction

CloudFlare's Proposed Order is no mere "modification" of the injunction's terms, but is instead an attempt largely to undo the injunction as it applies to CloudFlare. As noted above, CloudFlare's Proposed Order would allow CloudFlare to provide service to any website (including even those whose accounts it has already terminated) without regard to whether the website incorporates the "grooveshark" mark in its domain name, unless and until Plaintiffs confirm in writing for CloudFlare that the site is infringing. Even upon such written notice,

6

CloudFlare would still be allowed to continue to provide service to these infringing websites for an additional five (5) days – and perhaps even longer, until CloudFlare's website customer has an opportunity to file an objection with the Court.  *See* CloudFlare's Proposed Order.  Such an arrangement would ensure that CloudFlare continues to aid and abet the very infringement that the injunction was intended to prevent.

CloudFlare contends that to do otherwise, and to impose any obligation on CloudFlare to determine on its own whether its provision of services to a given website aids or abets Defendants in their violation of the injunction, would conflict with the Second Circuit's decision in *Tiffany (NJ), Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010).  *See* Mem. 1-2.  But *Tiffany* had nothing to do with the standard for enjoining third parties who aid and abet violations of an injunction.  Rather, the case addressed the standard for contributory liability for trademark infringement, which CloudFlare acknowledges is not at issue here.  *See* Mem. at 5 ("Plaintiffs do not claim that CloudFlare is liable for any trademark infringement….").  CloudFlare's reliance on *Tiffany*, therefore, is misplaced.[2]

Moreover, CloudFlare's proposal to reverse by 180 degrees the presumption underlying

---

[2] CloudFlare conflates the standards of contributory liability with those governing third-party injunctions, but the two are not the same.  For an injunction to bind a third party as an aider and abettor under Rule 65(d), all that is required is notice of the injunction, not knowledge of specific instances of infringement. *Compare, e.g.*, *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 13-14 (1945) ("Every order granting an injunction . . . is binding . . . upon those persons in active concert or participation with [the enjoined parties] who receive actual notice of the order . . . .") *with Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).  Simply providing the third party with notice of the injunction gives the third party fair notice that enabling the defendants' violation of the injunction would subject the third party to contempt proceedings.  *See Regal Knitwear Co.*, 324 U.S. at 13-14; *see also Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 129 (2d Cir. 1979).  The court's power to enjoin third parties extends beyond substantive liability standards and, indeed, includes even the power to enjoin otherwise permissible practices.  *See, e.g.*, *Philip Morris USA, Inc. v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 246 (S.D.N.Y. 2004) ("The Court has authority to enjoin actions otherwise lawful when such action is deemed ... necessary to correct the evil effects of unlawful conduct.") (quotation omitted); *see also* Reply Br. in Supp. of Pls.' App. for Supp. Order, at 7-8 n.4, Dkt. No. 45 (discussing the broad scope of relief against third parties under the All Writs Act).

the preliminary injunction ignores entirely the practical realities of CloudFlare's and Plaintiffs' respective roles in relation to the infringing conduct.  Under the preliminary injunction as it currently stands, CloudFlare is presumptively prohibited from providing service to any website that incorporates any of the Grooveshark Marks in its domain name unless CloudFlare can confirm that the website is *not* affiliated with Defendants and does *not* infringe Plaintiffs' intellectual property rights.  This is entirely appropriate, as only CloudFlare is a position to know the identities of its own customers, and only CloudFlare has access to the full list of domain names in use by its customers.[3]  As CloudFlare itself has already acknowledged, "[t]he only way that CloudFlare could deny the Defendants in this case the use of CloudFlare's service is to prevent anyone from linking a CloudFlare account to any domain name containing 'grooveshark.'"  CloudFlare's Mem. in Opp.', at 12.  Requiring CloudFlare to do so until it can confirm that Defendants or their cohorts are not involved in operating a given website is thus the most logical means of preventing the aiding and abetting of Defendants' violation of the injunction, and is well within the Court's "wide range of discretion in framing an injunction in terms it deems reasonable to prevent wrongful conduct."  *Forschner Grp., Inc. v. Arrow Trading Co.*, 124 F.3d 402, 406 (2d Cir. 1997) (quotation marks omitted).[4]

---

[3] CloudFlare claims that it "currently has no automated means of filtering out users at the time of registration based on the domain names they use," Mem. at 6 (citing Declaration of David Koston), but this claim is difficult to square with CloudFlare's capabilities as a sophisticated technology company, such as its acknowledged ability to filter out duplicates of domain names at the time of registration, evidently on an automated basis.  *See, e.g.*, Doroshow Decl. Ex. B.  *See also, e.g.*, *Tiffany*, 600 F.3d at 109-10 (when a service provider "has reason to suspect that users of its service are infringing a protected mark, it may not shield itself from learning of the particular infringing transactions by looking the other way").  In any event, CloudFlare has already demonstrated that it is fully capable of identifying infringing domain names to comply with the injunction and, moreover, acknowledges that it has the ability, at a minimum, to filter out such domain names by hand at the time of their registration.  *See* Koston Decl. ¶ 4, Dkt. No. 73.

[4] Even if CloudFlare were able to demonstrate that an infringing website was unaffiliated with Defendants or their cohorts – a burden that appropriately rests with CloudFlare, as it is in the best position to know the identities of its own customers – CloudFlare would still need to think twice before providing

## CONCLUSION

For the foregoing reasons, CloudFlare's motion should be denied.

DATED: New York, NY
          July 1, 2015

Respectfully submitted,

JENNER & BLOCK LLP

By:   /s/ Kenneth L. Doroshow
    Kenneth L. Doroshow (KD-8374)
    1099 New York Ave., N.W., Suite 900
    Washington, DC 20001
    Telephone: (202) 639-6027
    Facsimile: (202) 639-6066

    Andrew H. Bart (AB-6724)
    Gianni P. Servodidio (GS-0713)
    Lindsay W. Bowen (LB-8510)
    Alison I. Stein (AS-2884)
    Ava U. McAlpin (AM-4645)
    919 Third Avenue, 39th Floor
    New York, NY 10022
    Telephone: (212) 891-1600
    Facsimile: (212) 891-1699

    *Attorneys for Plaintiffs*

---

its services to such a website. As the Second Circuit made clear in *Tiffany*, on which CloudFlare so heavily relies, a service provider that "continues to supply its ... [service] to one whom it knows or has reason to know is engaging in trademark infringement" is itself contributory liable for that infringement. *Id.* at 107 (quoting *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 508 (S.D.N.Y. 2008), *judgment aff'd in part, rev'd in part by* 600 F.3d 93 (2d Cir. 2010)) (first bracket in original) (emphasis omitted). The scenario that CloudFlare posits here – where a website infringes the Grooveshark Marks but is owned and operated by someone other than Defendants – is not, as CloudFlare seems to believe, one involving mere "generalized knowledge" that infringement may be occurring somewhere among CloudFlare's many customers, as in *Tiffany*. Rather, the issue here concerns the prospect of CloudFlare providing service directly to a website when CloudFlare has knowledge or reason to know – from the very name of the website – that the specific site is infringing, regardless of who CloudFlare's customer may be. *See* June 3 Order at 9 (observing that CloudFlare was "directly engaged in facilitating access to Defendants' sites *with knowledge of the specific names of those sites*" (emphasis added)). No modification of the injunction is needed to address an imagined scenario that is unlikely to occur given CloudFlare's incentive to avoid its own contributory liability.

## CERTIFICATE OF SERVICE

I, Alison I. Stein, hereby certify that on this 1st day of July 2015, I caused true and correct copies of ***Plaintiffs' Opposition To Third-Party CloudFlare Inc.'s Motion To Modify The Preliminary Injunction*** and accompanying declaration to be served upon registered participants as identified on the Notice of Electronic Filing (NEF) via ECF and upon defendants via electronic mail.

                                                        /s/ Alison I. Stein  
                                                        Alison I. Stein