UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC, ATLANTIC RECORDING CORPORATION, CAPITOL RECORDS, LLC, ELEKTRA ENTERTAINMENT GROUP INC., LAFACE RECORDS LLC, SONY MUSIC ENTERTAINMENT, UMG RECORDINGS, INC., WARNER BROS. RECORDS INC., WARNER MUSIC GROUP CORP., and ZOMBA RECORDING LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>VITA TKACH, and DOES 1-10, D/B/A GROOVESHARK.IO AND GROOVSHARK.PW<br><br>*Defendants*. | CIVIL ACTION<br>NO. 15-CV-03701-AJN |

**NON-PARTY CLOUDFLARE INC.'S REPLY MEMORANDUM IN FURTHER
SUPPORT OF ITS MOTION TO MODIFY THE PRELIMINARY INJUNCTION**

CloudFlare respectfully requests that the Court modify the Preliminary Injunction in order to bring it more closely in line with what CloudFlare believes was the Court's original intent. Read literally (and as construed by the Plaintiffs) the injunction prevents CloudFlare from providing its services to lawful websites with no connection to the instant case. In fact, CloudFlare has already been compelled by the injunction to deny service to at least one website that is plainly non-infringing, and to others that are arguably non-infringing and have no discernible connection with the Defendants in this case. This harm to CloudFlare's business and potentially to customer's businesses, and to the free speech rights of its customers, will continue without a modification of the Preliminary Injunction.

The Court should also modify the Preliminary Injunction because as written, it imposes an affirmative obligation to prevent future infringement of Plaintiffs' "grooveshark" trademark *by anyone*, whether or not CloudFlare knows of such infringement.  CloudFlare does not believe this is the intent of the Preliminary Injunction.  It also is contrary to Second Circuit law as expressed in *Tiffany v. eBay* and to the principles of intermediary liability that underlie that decision—principles that protect the legitimate interests of Internet services like CloudFlare, and their users.

Plaintiffs' opposition to CloudFlare's motion for modification is founded on three errors. First, Plaintiffs imply that any use of the word "grooveshark" in an Internet domain name is presumptively infringing, a position that is contrary to law and contradicted by the activities of CloudFlare users since the Court's previous order. As many uses of "grooveshark" in a domain can be, and are, noninfringing, anyone not affiliated with the Defendants in this case (the only parties adjudged to be infringing the "grooveshark" mark) should be permitted to use

1

CloudFlare's services in connection with such domain names *unless* CloudFlare has knowledge of an infringement, from Plaintiffs or otherwise.

Second, despite CloudFlare's uncontradicted evidence to the contrary, Plaintiffs continue to insist that CloudFlare is "best situated" to know whether a particular CloudFlare user account is affiliated with the Defendants. CloudFlare simply cannot do this for accounts on its free tier. Thus, not only does CloudFlare lack knowledge of infringements other than those specifically identified in the Preliminary Injunction, CloudFlare is unable to determine whether new user accounts are affiliated with Defendants and thus already enjoined. Consistent with *Tiffany*, and with what we believe to be this Court's intent, it is Plaintiffs who are best positioned to identify websites that are affiliated with Defendants, through third-party discovery or otherwise, or to bring new claims against additional defendants should unrelated infringements of the "grooveshark" mark come to light.

Third, a modification to the Preliminary Injunction would not be an "advisory ruling." CloudFlare has already been compelled to cease doing business with sites whose non-infringing status *and* relationship or lack thereof, with the Defendants are unclear.

The modified Preliminary Injunction will remedy the infringement. Indeed, CloudFlare's inadvertent and unknowing role in the infringements identified in the Complaint and Preliminary Injunction has already been remedied, as CloudFlare is no longer servicing the domains grooveshark.io, grooveshark.vc, or grooveshark.li. The modification CloudFlare requests would preserve the status quo with respect to the Defendants, and would achieve the proper goal of a temporary injunction in this Lanham Act case. It also requires CloudFlare to stop servicing any infringers identified by Plaintiffs, or if CloudFlare becomes aware of an infringer. The existing injunction, as Plaintiffs characterize it in their Opposition, creates an end-run around the rule of

2

*Tiffany* by imposing obligations on a non-party who is not liable for any infringement that could not even be imposed on a culpable defendant. Although the language of the Preliminary Injunction is clear, CloudFlare does not believe the Court intended to render the Second Circuit's rule superfluous and accordingly requests modification.

1. **MODIFICATION IS NECESSARY BECAUSE UNDER THE PRESENT INJUNCTION, CLOUDFLARE IS PREVENTED FROM SERVICING LAWFUL, NON-INFRINGING WEBSITES.**

The Plaintiffs do not dispute that an intermediary service provider who is named as a defendant under a theory of contributory trademark infringement does not have "an affirmative duty to remedy" infringements of which it has no knowledge. *Tiffany (NJ), Inc. v. eBay Inc.*, 600 F.3d 93, 107 (2d Cir. 2010). Yet Plaintiffs assert that CloudFlare, which was not named as a defendant (and cannot be, given its unawareness of any infringement prior to the TRO), can properly be required to prevent future infringements of the "grooveshark" mark by *anyone*, regardless of CloudFlare's knowledge or lack thereof. Under Plaintiffs' rationale, trademark plaintiffs can obtain injunctions against online service providers *as nonparties* that would have been barred by *Tiffany* had the same service providers been adjudicated as *culpable defendants*—a logic-defying result that does violence to the balanced approach established by the Second Circuit. Plaintiffs argue only that the standards for nonparty preliminary injunctions and for contributory trademark liability "are not the same," without suggesting why the former, which does not require any showing of knowledge or intent, can properly be used to evade the requirements of the latter, which does.[1]

---

[1] Plaintiffs again invoke the All Writs Act as another supposed basis for bypassing the requirements of statutory procedure. Pls.' Opp. to CloudFlare's Mot. to Modify (ECF No. 77), at 7 n.2 ("Opp."). This Court did not rely on the All Writs Act in its Order applying the Temporary Injunction to CloudFlare, *see* Order, ECF No. 58, and Plaintiffs' reliance on it remains improper. The Act authorizes orders aimed narrowly at protecting a *court's* jurisdiction, not the rights of a *party*. *See Additive Controls & Measurement Sys., Inc., v. Flowdata, Inc*., 96 F.3d 1390, 1396 (Fed. Cir. 1996); *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978) ("[C]onduct not shown to be detrimental to the court's jurisdiction or exercise thereof could not have been enjoined under the Act").

3

Plaintiffs' contention that the current injunction is "entirely appropriate" appears to be based on an assumption that all domain names containing "grooveshark" are presumptively infringing regardless of their use or context—that "the very name of the website" creates "knowledge or reason to know . . . that the specific site is infringing." Opp. at 9 n.4. This is incorrect. Trademark infringement requires use of a mark in commerce in a manner "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). The use of a trademark to identify or comment on a service, or indeed any use that is not connected with a sale of goods or services, is not an infringement. *See Lamparello v. Falwell*, 420 F.3d 309, 317-18 (4th Cir. 2005) (holding that the use of fallwell.com to critique preacher Jerry Falwell's teachings on homosexuality did not create likelihood of confusion and therefore did not infringe Falwell's trademark); *see also, e.g*, *Bosley Med. Inst., Inc v. Kremer*, 403 F.3d 672, 674 (9th Cir. 2005) (finding that www.BosleyMedical.com, a site critical of Bosley Medical Group, did not infringe the Bosley Medical trademark); *Utah Lighthouse Ministry v. Found. for Apologetic Info. and Research*, 527 F.3d 1045, 1052-53 (10th Cir. 2008) (holding that use of the unregistered trademark "UTLM" in a domain name linking to a parody website was not trademark infringement). Nor does registering a domain name containing a trademark constitute a use in commerce as required for infringement. *Cline v. 1-888-PLUMBING Grp., Inc.*, 146 F. Supp. 2d 351, 369-70 (S.D.N.Y. 2001) (collecting cases). Thus, the presence of a mark or partial mark within an Internet domain name does not, without more, constitute an infringement.

Nonetheless, by its plain terms, the current Preliminary Injunction requires CloudFlare to deny service to anyone using "grooveshark" in their domain names "in whole or in part,"

---

And the Act does not allow courts "to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Pennsylvania Bureau of Correction v. United States Marshals Serv.*, 474 U.S. 34, 43 (1985). The All Writs Act, in other words, cannot authorize an order that the Lanham Act, as interpreted in *Tiffany*, forbids.

whether affiliated with the Defendants or not. The injunction has already required CloudFlare to cease serving domains that are plainly non-infringing or at least questionable. For example, many domains that CloudFlare ceased serving after the Court's Order of June 3 did not resolve to any publicly accessible website. Decl. of Justin Paine in Further Support of Non-Party CloudFlare, Inc.'s Mot. for Modification ¶ 2 ("Paine Reply Decl."). These domains did not appear to be used in connection with the sale of any goods or services, and thus were noninfringing despite their use of "grooveshark."

Additionally, after CloudFlare filed its Motion to Modify the Injunction, a CloudFlare customer opened an account for the domain "groovesharkcensorship.cf". Paine Reply Decl. ¶ 3. That domain did not contain any music downloads or other goods or services, but rather a commentary on this litigation, stating that

> [t]his page is to express my opinion regarding unjust forced enforcement of Grooveshark Censorship. Since this is a webpage only expressing my opinion censoring this page would involve limiting freedom of speech in my personal view. The term Grooveshark Censorship reffers [sic] to the fact the word Grooveshark has to be censored and is not affiliated with Grooveshark in any way or form. I wish cloudflare best of luck in there [sic] fight against unjust censorship.

Decl. of Mitchell Stoltz in Further Support of Non-Party CloudFlare, Inc.'s Mot. for Modification ¶ 2, Ex. A ("Stoltz Reply Decl."). The domain owner was not affiliated with CloudFlare or its counsel. Paine Reply Decl. ¶ 4. Although this site is obviously non-infringing, CloudFlare was compelled by the Preliminary Injunction to stop supporting it. Paine Reply Decl. ¶¶ 5-7.

Moreover, CloudFlare cannot determine which if any "grooveshark" domains other than those identified in the Preliminary Injunction and the Complaint are affiliated with Defendants. On its free service tier, CloudFlare records only an email address, mailing address, and Internet

Protocol address.[2] Decl. of David Koston (ECF No. 73) ¶ 5. CloudFlare has no way to determine whether accounts using different email, mailing, and IP addresses belong to the same person. *Id*. Despite Plaintiffs' repeated insinuations to the contrary, they have not disputed CloudFlare's evidence. In most cases, CloudFlare does not know "the identities of its own customers" on its free tier, nor can it without extraordinarily burdensome and disruptive changes, such as requiring payment information from its free tier customers. Nor did the Court find that CloudFlare has the ability to link accounts to their owners. The Court found only that CloudFlare can identify and disable *all* accounts using domains that contain "grooveshark," a category that includes the specific domains identified by Plaintiffs and many more besides. June 3 Order at 3, 9. CloudFlare does not dispute its ability to deny service to lawful users of "grooveshark" along with infringers, but the ability, and the proper responsibility, to distinguish the two lies with Plaintiffs.

Plaintiffs originally located and identified the sites that are the subject of the Complaint. Plaintiffs are currently seeking Defendants' identity and information about other infringements from multiple sources through subpoenas. Plaintiffs can, as can any Internet user, locate and access public websites to see their contents and context. And Plaintiffs can and should be the ones to decide which sites to pursue as alleged infringers, and to bear the risk of pursuing a site that in fact uses the "grooveshark" mark in a noninfringing way. Any "whois" query on a particular website will return a definitive answer as to whether CloudFlare is providing service to that website.

Further, placing the onus on CloudFlare to determine which websites are infringing places an unfair administrative burden on a non-party. Indeed, as the Doroshow declaration

---

[2] Between four thousand and six thousand new users sign up on CloudFlare's free tier every day. Paine Reply Decl. ¶ 9.

shows, the Plaintiffs are not forthcoming in providing information as to legitimate websites. *See* Decl. of Kenneth L. Doroshow (ECF No. 78), Pls.' Ex. A.  The thread contains six emails over two days, seeking to clarify the status of groovshark.com.  Even at the conclusion of the thread, Plaintiffs do not directly answer the question whether grooveshark.com is a legitimate website. Rather, Plaintiffs only provide the inference that the website is legitimate since the Plaintiffs have control over DNS for the website. Requiring CloudFlare to make such determinations at scale would impose potentially huge costs for years to come.

2. **THE SCOPE OF THE INJUNCTION, AND CLOUDFLARE'S RESPONSIBILITIES UNDER IT, CONSTITUTE A PRESENT CASE OR CONTROVERSY; MODIFYING THE INJUNCTION IS NOT AN ADVISORY RULING.**

Given the actual websites, either clearly non-infringing or questionable, that CloudFlare has already been required not to provide service  to a modification of the Preliminary Injunction would not be an "advisory ruling." A case or controversy exists for purposes of federal subject matter jurisdiction where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)  (holding that a patent licensee has Article III standing to seek a declaration of invalidity without first breaching the license). A substantial controversy exists when a litigant is effectively coerced into taking action to avoid liability. *Id.* at 128-29 ("[W]e do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat.").

The binding injunction in this case is similar to the binding license at issue in *MedImmune*, in that the party being bound seeks leave to modify its legal duties without first breaching them and risking substantial damages. *See* 549 U.S. at 134 ("The rule that a plaintiff

must destroy a large building, bet the farm, or . . . risk treble damages . . . before seeking a declaration of its actively contested legal rights finds no support in Article III."). CloudFlare users continue to attempt to use the service on domains that contain "grooveshark" in their names, and CloudFlare continues to disable those accounts as required. Paine Reply Decl. ¶ 9. CloudFlare would like to provide its services to sites such as groovesharkcensorship.cf that use "grooveshark" but are unaffiliated with the Defendants and are not known to be infringing, but CloudFlare cannot currently do this. This is more than sufficient to establish an ongoing case or controversy.

Moreover, all of the circumstances suggest these attempts will continue. Thus, CloudFlare is searching for and disabling accounts that use "grooveshark" on an ongoing basis. If Plaintiffs believed that no additional CloudFlare users would register accounts on CloudFlare's system using domain names that contain "grooveshark" after CloudFlare's initial removal of such domain names, no injunction would be necessary at this point. Since Plaintiffs seek to have CloudFlare continue to block *all* accounts using "grooveshark," regardless of their lack of affiliation with the Defendants or violation of Plaintiffs' trademark rights, there appears to be no dispute that further attempts to use domains containing "grooveshark" through the CloudFlare service are likely. Likely future activity of the type complained of in a lawsuit creates an Article III case or controversy that permits resolution of the dispute. *Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*, 523 F. Supp. 2d 376, 383 (S.D.N.Y. 2007) (finding actual controversy existed where potential future statements of a party may continue a trademark dispute raised in a prior cease and desist letter).

The cases cited by Plaintiffs are not applicable here. In *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 450-51 (S.D.N.Y. 2014), the court dismissed a breach of contract

claim on the pleadings and declined to rule on the extent of damages for the dismissed claim. This holding does not contradict that of *MedImmune* that a litigant need not breach a legal duty in order to raise a challenge to its scope when the parties demonstrably disagree on what that scope should be. Here, CloudFlare is not seeking to determine the potential damages for non-compliance with the Preliminary Injunction, but rather a modification of that injunction.

*Mears v. Montgomery*, 566 F. App'x 17, 17 (2d Cir. 2014) involved an enjoined party's request that the Court expound on the meaning of an existing injunction without "factual context." *See Mears v. Montgomery*, No. 02 CIV. 407 (MHD), 2013 WL 69221, at *2 (S.D.N.Y. Jan. 4, 2013), aff'd, 566 F. App'x 17. CloudFlare is not asking this Court to resolve hypothetical applications of the existing Preliminary Injunction but rather to modify that injunction. While *Mears* also included discussion of a modification to the injunction, the district court in that case declined modification, *not* because modification constitutes an advisory opinion, but because the moving party "fail[ed] to demonstrate that a modification is warranted. 2013 WL 69221, at *3. There was, in other words, no conflict between the injunction and positive law, as the injunction here conflicts with *Tiffany*. *Topps Chewing Gum, Inc. v. Fleer Corp.*, 799 F.2d 851, 858 (2d Cir. 1986), and *Kuriakose v. Fed. Home Loan Mortg. Co.*, 674 F. Supp. 2d 483, 492-93 (S.D.N.Y. 2009), are similar, in that they involved a request to expound on the meaning of existing contracts, not a request to create a new set of legal relations between the parties.

CloudFlare's request to change the manner in which it must respond to events that have happened and will continue to happen is in no way hypothetical, and Plaintiffs' suggestion that a modification of the injunction would be an "advisory ruling" is without merit.

3. **THE PROPOSED MODIFICATION REMEDIES THE INFRINGEMENT AT ISSUE IN THIS CASE.**

Plaintiffs fail to explain how the proposed modification would "undo" the Preliminary Injunction with respect to the infringements and the Defendants. Under the proposed modification, CloudFlare would still be required to refrain from serving any sites for which it has knowledge of infringement. As CloudFlare is plainly on notice of the infringements identified in the Preliminary Injunction, it can, and will, continue to ban users of those specific domains and email addresses, and any others for which CloudFlare has knowledge of a connection to the Defendants. Only new infringements by different or unidentified actors would no longer fall within CloudFlare's duty to enforce against, unless and until CloudFlare has specific knowledge of them from Plaintiffs or otherwise. This no more "undo[es]" the injunction than the *Tiffany* decision, which requires the same level of knowledge to trigger a responsibility to act, 'undoes' the Lanham Act's remedies. Nor does allowing affected customers several days' time to intervene destroy the remedial scheme. It is, rather, a standard component of nearly all civil actions involving Internet intermediaries. *See*, *e.g.*, 17 U.S.C. § 512(c), (g) (establishing notice and response mechanism for users of Internet services accused of copyright infringement); *Dendrite Int'l., Inc. v. Doe No. 3*, 342 N.J. Super. 134, 141, 775 A.2d 756, 760 (App. Div. 2001) ("[T]he trial court should first require the plaintiff to undertake efforts to notify the anonymous posters that they are the subject of a subpoena").

## CONCLUSION

Defendants have shown that they intend to parlay the accident (for them) of CloudFlare's having unknowingly and unintentionally provided its services to a single trademark infringer into a means of compelling CloudFlare to enforce Defendants' trademark against all comers, potentially permanently. The law does not permit this. Accordingly, CloudFlare respectfully asks the Court to modify the Temporary Injunction.

DATED: July 8, 2015    Respectfully submitted,


 /s/ Grant P. Fondo_____

William J. Harrington (WH-6376)
Grant Fondo (admitted *pro hac vice*)
GOODWIN PROCTER LLC

Mitchell L. Stoltz (admitted *pro hac vice*)
Corynne McSherry(admitted *pro hac vice*)
ELECTRONIC FRONTIER FOUNDATION

*Attorneys for Non-Party CloudFlare, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Grant P. Fondo_____