UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: JUL 09 2015

Arista Records, LLC, *et al.*,

        Plaintiffs,

–v–

Vita Tkach, *et al.*,

        Defendants.

15-CV-3701 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

    Pending before the Court is third-party CloudFlare, Inc.'s motion to clarify the preliminary injunction that this Court entered on June 1, 2015. Dkt. No. 71. For the reasons provided below, the motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

    On May 13, 2015, the then-presiding Part 1 Judge of the Southern District of New York entered a temporary restraining order ("TRO") against Defendants Vita Tkach and Does 1-10 (d/b/a Grooveshark.io and Grooveshark.pw). Dkt. No. 18. On June 1, 2015, the Court converted that TRO into a preliminary injunction ("PI"). Dkt. No. 53. And on June 3, 2015, the Court clarified that the PI covered those individuals and entities in active concert or participation with the Defendants, including, in the context described in the June 3 Order, third-party CloudFlare. Dkt. No. 58. The Court assumes familiarity with this background material. On June 17, 2015, CloudFlare filed a motion seeking further clarification of the PI. Dkt. No. 71. The motion was fully briefed on July 8, 2015.

    As explained previously, CloudFlare provides authoritative domain name system servers for its customers, which means that when someone types a domain name such as "grooveshark.li" into a web browser, CloudFlare converts the domain name into the IP address for the website associated with that domain name so that the user can connect to the website they

1

are trying to reach. CloudFlare also optimizes the delivery of customers' websites from the customers' origin server to visitors' browsers. Briefly summarized, the Court's June 3, 2015 Order concluded that CloudFlare fell within the ambit of the PI because, by providing its services to the domain name grooveshark.li (as well as grooveshark.pw, grooveshark.io, and grooveshark.vc) after it had knowledge of the TRO, it was aiding and abetting the Defendants' infringement. Dkt. No. 58.

## II.  DISCUSSION

CloudFlare confirms that it has complied with the Court's June 3, 2015 Order and has ceased providing services to grooveshark.io, grooveshark.pw, grooveshark.vc, grooveshark.li, and other domain names containing "grooveshark." CloudFlare Br. 2. The present dispute turns on who has the burden of affirmatively identifying any additional infringing sites that are operated by Defendants or those in active concert or participation with them and that are using CloudFlare's services—CloudFlare or Plaintiffs.

CloudFlare contends that "further compliance [with the PI] appears to leave [it] in an untenable position" because "a plausible reading of the preliminary injunction would seem to require CloudFlare to act as the enforcers of Plaintiffs' trademarks and to determine whether *any* of its customers, present *and future*, are entitled or are not entitled to use domain names that contain 'grooveshark,' 'in whole or in part,' depending on whether the customer has a license from Plaintiff UMG or whether the customer's use is non-infringing as a matter of law." CloudFlare Br. 2. CloudFlare also represents to the Court that it "currently has no automated means of filtering out users at the time of registration based on the domain names they use." CloudFlare Br. 6. Based on this concern, CloudFlare "asks the Court to modify the injunction to make clear that CloudFlare must cease serving a domain name only when given notice by the Plaintiffs that the domain name infringes Plaintiffs' trademark," CloudFlare Br. 2, or if "CloudFlare has knowledge of an infringement," CloudFlare Reply 2.

Plaintiffs, in contrast, place the initial burden for identifying potentially infringing CloudFlare customers on the shoulders of CloudFlare, and they contend that, if CloudFlare is in

doubt as to whether a possibly infringing site is authorized to use the Grooveshark mark, it should simply pick up the phone and call Plaintiffs. Opp'n Br. 5.

The Court concludes that the correct solution lies somewhere in between the rhetoric of the two sides. On the one hand, this is Plaintiffs' lawsuit, not CloudFlare's, which remains merely a third party to this action. Moreover, based on the Plaintiffs' previous filings, it appears that Plaintiffs are actively policing their intellectual property and are identifying new infringing sites as they appear. *See* Dkt. No. 58 at 2-3. Thus, it is consistent with this Court's prior Orders to require Plaintiffs to bring any new infringing sites to CloudFlare's attention, rather than require CloudFlare set up a filter for its customer database and bring infringing sites to Plaintiffs' attention. If, on the other hand, CloudFlare has knowledge of an infringement on the part of one of its customers, it may not sit on its hands. Thus, it is also consistent with this Court's prior Orders to require CloudFlare to cease serving that customer—as CloudFlare itself proposes—even if it has not yet received a specific request from the Plaintiffs. CloudFlare Br. 2.

Finally, CloudFlare's proposed order, which was submitted through Orders and Judgments, contains an additional request that is not mentioned in its opening brief and only vaguely referenced in its reply: upon receipt of notice from Plaintiffs that a domain name infringes any of the Grooveshark marks, CloudFlare would have five days to terminate a customer's account and would be permitted to first notify the customer of its intention to terminate its services, providing the customer an opportunity to file an objection with the Court. Although the Court agrees with CloudFlare that some reasonable amount of time is necessary to achieve compliance, the Court shares Plaintiffs' concern that a five-day delay could potentially frustrate the effective enforcement of the PI based on the previous history of "grooveshark" copycat sites moving from one country-code domain to another. *See* Dkt. No. 58 at 2. Moreover, by placing the burden on Plaintiffs to identify any additional "grooveshark" sites, the problem of incorrectly identifying an infringing website seems greatly reduced. In any event, upon receipt of notice or knowledge that a domain name infringes any of the Grooveshark marks,

CloudFlare is certainly free to immediately notify customers of the impending termination of their accounts.

### III. CONCLUSION

For the reasons stated above, CloudFlare's motion is GRANTED in part and DENIED in part. Consistent with the PI and this Court's June 3, 2015 Order, the Court concludes that the burden is on Plaintiffs to bring additional infringing sites that are operated by Defendants or those in active concert or participation with them and that are using CloudFlare's services to CloudFlare's attention. At the same time, if CloudFlare has knowledge that a domain name it is serving infringes any of the Grooveshark marks it must promptly act to cease providing services even if it did not yet learn of the infringement from Plaintiffs.

Thus, the Court clarifies the PI as follows: Upon receipt of notice from Plaintiffs or if CloudFlare otherwise has knowledge of an infringement on the part of one of its customers, CloudFlare shall cease providing its services to that customer as soon as possible, but no later than 48 hours after receiving such notice or obtaining such knowledge. CloudFlare is, of course, free to expeditiously notify customers of the impending termination of their accounts as a result of this and related Court Orders.

In the event of any future dispute regarding the PI, the Court encourages Plaintiffs and CloudFlare to make a greater effort at reaching a practical compromise.

This resolves Dkt. No. 71.

SO ORDERED.

Dated: July ___9___, 2015
New York, New York

ALISON J. NATHAN
United States District Judge