**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARISTA RECORDS LLC, ATLANTIC RECORDING CORPORATION, CAPITOL RECORDS, LLC, ELEKTRA ENTERTAINMENT GROUP INC., LAFACE RECORDS LLC, SONY MUSIC ENTERTAINMENT, UMG RECORDINGS, INC., WARNER BROS. RECORDS INC., WARNER MUSIC GROUP CORP., and ZOMBA RECORDING LLC,<br><br>     *Plaintiffs*,<br><br>     v.<br><br>VITA TKACH, and DOES 1-10, D/B/A GROOVESHARK.IO AND GROOVESHARK.PW,<br><br>     *Defendants*. | 15-CV-3701 (AJN) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**ORDER TO SHOW CAUSE FOR DEFAULT JUDGMENT AND**
**PERMANENT INJUNCTION ORDER**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................. 1

FACTUAL BACKGROUND ................................................................................. 2

I.     The Parties .................................................................................................. 2

        A.    Plaintiffs....................................................................................... 2

        B.    The Grooveshark Marks and Logo ........................................... 3

        C.    Defendants .................................................................................. 4

II.    The Counterfeit Service .............................................................................. 4

III.   Procedural History and Defendants' Violation of the TRO and
Preliminary Injunction ............................................................................... 6

ARGUMENT ....................................................................................................... 9

I.     The Entry of a Default Judgment is Warranted. ......................................... 9

II.    Defendants Are Liable for Trademark Counterfeiting and the Use of
False Designations of Origin. ................................................................... 10

        A.    Plaintiff UMG Owns The Grooveshark Marks, Which Are Valid
and Protectable........................................................................ 10

        B.    Consumers Are Likely to Be Confused as to the Source of
Defendants' Counterfeit Products........................................... 10

III.   Defendants Are Liable for Cybersquatting. .............................................. 12

IV.   Defendants Are Liable for Copyright Infringement. ................................. 12

V.    UMG Is Entitled to Maximum Statutory Damages for Willful
Counterfeiting and Cybersquatting........................................................... 15

VI.   Plaintiffs Are Entitled to a Maximum Award of Statutory Damages for
Copyright Infringement. ........................................................................... 17

VII.  Plaintiffs Are Entitled to Reasonable Attorneys' Fees and Costs. ........... 18

VIII. Plaintiffs Are Entitled to a Permanent Injunction.................................... 19

        A.    Plaintiffs Meet the Requirements for Injunctive Relief................ 20

        B.    The ACPA Authorizes the Domain Name Transfer Sought By
Plaintiffs........................................................................................ 22

i

CONCLUSION.................................................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Albert Furst von Thurn und Taxis v. Karl Prince von Thurn und Taxis*,
    No. 04 Civ. 6107(DAB), 2006 WL 2289847 (S.D.N.Y. Aug. 8, 2006) ..............................12

*Arista Records, LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010)...........................................................................................12, 14

*Arista Records LLC v. Lime Grp. LLC*,
    784 F. Supp. 2d 398 (S.D.N.Y. 2011)...................................................................................14

*Arista Records LLC v. Usenet.com, Inc.*,
    633 F. Supp. 2d 124 (S.D.N.Y. 2009)...................................................................................14

*Bambu Sales, Inc. v. Ozak Trading Inc.*,
    58 F.3d 849 (2d Cir. 1995).....................................................................................................19

*BMG Music v. Gonzalez*,
    430 F.3d 888 (7th Cir. 2005) ...............................................................................................21

*Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v.*
    *Moulton Masonry & Const., LLC*,
    779 F.3d 182 (2d Cir. 2015)......................................................................................................9

*Bridgeport Music, Inc. v. WB Music Corp.*,
    520 F.3d 588 (6th Cir. 2008) ...............................................................................................19

*Capitol Records, LLC, d/b/a EMI Music North Am. v. Escape Media Grp., Inc.*,
    No. 12-CV-6646 (AJN), 2015 WL 1402049 (S.D.N.Y. Mar. 25, 2015) ..........................13, 14

*Chloe v. Zarafshan*,
    No. 1:06-cv-3140-RJH-MHD, 2009 WL 2956827 (S.D.N.Y. Sept. 15, 2009) .....................15

*Compaq Comput. Corp. v. Ergonome Inc.*,
    387 F.3d 403 (5th Cir. 2004) ...............................................................................................19

*Diarama Trading Co., Inc. v. J. Walter Thompson USA., Inc.*,
    No. 01 Civ. 2950 (DAB)(DCF), 2005 WL 2148925 (S.D.N.Y. Sept. 6, 2005) .....................12

*Entral Grp. Int'l v. Sun Sports Bar Inc.*,
    No. 05-cv-4836 (CBA), 2007 WL 2891419 (E.D.N.Y. Sept. 28, 2007) ...............................18

*Fresh Del Monte Produce Inc. v. Del Monte Foods Co.*,
    933 F. Supp. 2d 655 (S.D.N.Y. 2013).....................................................................................21

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
    286 F. Supp. 2d 284 (S.D.N.Y. 2003)................................................................11

*Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*,
    826 F. Supp. 2d 619 (S.D.N.Y. 2011)..........................................................19, 20

*In Design v. Lauren Knitwear Corp.*,
    782 F. Supp. 824 (S.D.N.Y. 1991)..................................................................19

*Kepner-Tregoe, Inc. v. Vroom*,
    186 F.3d 283 (2d Cir. 1999)......................................................................18, 19

*Kroll-O'Gara Co. v. First Def. Int'l, Inc.*,
    No. 99 Civ. 4899 (SAS), 2000 WL 369721 (S.D.N.Y. Apr. 11, 2000)...................18

*Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*,
    192 F.3d 337 (2d Cir. 1999)........................................................................10

*Lava Records LLC v. Ates*,
    No. Civ.A. 05-1314, 2006 WL 1914166 (W.D. La. July 11, 2006) .......................21

*Levi Strauss & Co. v. Ding Shijun d/b/a/ LevisOnline.com*,
    No. 11-cv-7495 (WHP), Dkt. No. 29 (S.D.N.Y. Jan. 4, 2012)..................................16

*Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*,
    378 F. Supp. 2d 448 (S.D.N.Y. 2005).........................................................10, 11

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
    676 F.3d 83 (2d Cir. 2012)..........................................................................19

*Macklin v. Mueck*,
    No. 00-10492-Civ., 2005 WL 1529259 (S.D. Fla. Jan. 28, 2005)..........................18

*Manno v. Tenn. Prod. Ctr., Inc*,
    657 F. Supp. 2d 425 (S.D.N.Y. 2009)..............................................................17

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005)..............................................................................13, 14

*Nat'l Football League v. Chen Cheng d/b/a njljerseydiscount.com*,
    No. 11-cv-344 (WHP), Dkt. No. 21 (S.D.N.Y. Mar. 24, 2011)..........................16, 23

*Nat'l Football League v. Lee*,
    No. 11-cv-8911 (PKC), Dkt. No. 24 (S.D.N.Y. Feb. 17, 2012) ...........................16

*Nat'l Football League v. PrimeTime 24 Joint Venture*,
    131 F. Supp. 2d 458 (S.D.N.Y. 2001)..............................................................18

*NML Capital, Ltd. v. Republic of Argentina*,
    699 F.3d 246 (2d Cir. 2012)........................................................................21

*Philip Morris USA v. Otamedia Ltd.*,
    331 F. Supp. 2d 228 (S.D.N.Y. 2004)...................................................................23

*Phillip Morris USA Inc. v. A & V Minimarket, Inc.*,
    592 F. Supp. 2d 669 (S.D.N.Y. 2009)....................................................................9

*Phillip Morris USA Inc. v. Marlboro Express*,
    No. 03-CV-1161 (CPS), 2005 WL 2076921 (E.D.N.Y. Aug. 26, 2005)................16

*Polaroid Corp. v. Polarad Electronics Corp.*
    287 F.2d 492 (2d Cir. 1961)...................................................................................11

*RC Entm't, Inc. v. Rodriguez*,
    No. 98 Civ. 8585 (BSJ), 1999 WL 777903 (S.D.N.Y. Sept. 29, 1999)..................19

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004)...................................................................................21

*Rovio Entm't, Ltd. v. Allstar Vending, Inc.*,
    No. 14-CV-7346 (KBF), __ F. Supp. 3d __, 2015 WL 1508497 (S.D.N.Y.
    Apr. 1, 2015)..........................................................................................................15

*RSO Records, Inc. v. Peri*,
    596 F. Supp. 849 (S.D.N.Y. 1984)........................................................................18

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010).....................................................................................20

*Sara Lee Corp. v. Bags of N.Y., Inc.*,
    36 F. Supp. 2d 161 (S.D.N.Y. 1999)......................................................................15

*Scarves by Vera, Inc. v. Todo Imports Ltd.*,
    544 F.2d 1167 (2d Cir. 1976).................................................................................22

*SEC v. Mgmt. Dynamics, Inc.*,
    515 F.2d 801 (2d Cir. 1975)...................................................................................21

*Silhouette Int'l Schmied AG v. Chakhbazian*,
    No. 04 Civ. 3613 (RJH)(AJP), 2004 WL 2211660 (S.D.N.Y. Oct. 4, 2004) .........15

*Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*,
    202 F.3d 489 (2d Cir. 2000)..............................................................................20, 23

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., Inc.*,
    74 F.3d 488 (4th Cir. 1996)...................................................................................18

*Tiffany (NJ) Inc. v. Luban*,
    282 F. Supp. 2d 123 (S.D.N.Y. 2003)....................................................................17

*Tiffany (NJ) LLC v. Qi Andrew,*
   No. 10 Civ. 9471 (KPF)(HBP), 2015 WL 3701602 (S.D.N.Y. June 15, 2015) .....................16

*Time, Inc. v. Petersen Publ'g Co.,*
   173 F.3d 113 (2d Cir. 1999).........................................................................................................11

*True Religion Apparel, Inc. v. Xiaokang Lei d/b/a truereligionjeans4outlet.com,*
   No. 11-cv-8242 (HB), Dkt. No. 31 (S.D.N.Y. Mar. 12, 2012)................................................23

*U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.,*
   No. 04 Civ. 6189 (JFK), 2008 WL 3906889 (S.D.N.Y. Aug. 21, 2008)................................19

*UMG Recording, Inc. v. Escape Media Grp., Inc.,*
   No. 11 Civ. 8407, 2014 WL 5089743 (S.D.N.Y. Sept. 29, 2014) ...........................................13

*Union of Orthodox Jewish Congregations of Am. v. Am. Food & Beverage Inc.,*
   704 F. Supp. 2d 288 (S.D.N.Y. 2010).......................................................................................19

*Van Der Zee v. Greenidge,*
   No. 03 Civ. 8659 (RLE), 2006 WL 44020 (S.D.N.Y. Jan. 6, 2006)........................................17

*Virgin Enters. Ltd. v. Enom, Inc.,*
   No. 08-cv-0328 (JGK) (THK), 2008 WL 4054418 (S.D.N.Y. Aug. 18, 2008).......................23

*Warner Bros. Entm't Inc. v. RDR Books,*
   575 F. Supp. 2d 513 (S.D.N.Y. 2008).......................................................................................21

*Warner Bros. Entm't v. Caridi,*
   346 F. Supp. 2d 1068 (C.D. Cal. 2004) ....................................................................................18

*WPIX, Inc. v. ivi, Inc.,*
   691 F.3d 275 (2d Cir. 2012).......................................................................................................22

STATUTES

15 U.S.C. § 1057.....................................................................................................................................10

15 U.S.C. § 1116............................................................................................................................11, 19

15 U.S.C. § 1117............................................................................................................................15, 19

15 U.S.C. § 1125....................................................................................................................12, 20, 23

15 U.S.C. § 1127.....................................................................................................................................11

17 U.S.C. § 502.....................................................................................................................................20

17 U.S.C. § 504.....................................................................................................................................17

17 U.S.C. § 505.....................................................................................................................................18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 65(d) ...................................................................................................................24

Plaintiffs Arista Records LLC, Atlantic Recording Corp., Capitol Records, LLC, Elektra Entertainment Group Inc., LaFace Records LLC, Sony Music Entertainment, UMG Recordings, Inc., Warner Bros. Records Inc., Warner Music Group Corp., and Zomba Recording LLC (collectively "Plaintiffs") hereby submit this Memorandum of Law in support of an Order to Show Cause for Default Judgment and Permanent Injunction Order against Defendants Vita Tkach ("Tkach") and Does 1-10 (collectively "Defendants").

## PRELIMINARY STATEMENT

Defendants are scofflaw Internet pirates who launched and operated a "copycat" version of a well-known music streaming service known as "Grooveshark."  Defendants launched their "copycat" version of Grooveshark (hereinafter the "Counterfeit Service") within days after the former operators of the real Grooveshark service, who were themselves the subject of Plaintiffs' multi-year enforcement efforts, announced the termination of their operation of Grooveshark and the assignment of all trademarks and other intellectual property related thereto to Plaintiff UMG Recordings, Inc. ("UMG").

Through their Counterfeit Service, Defendants allowed users around the world to download and stream infringing copies of Plaintiffs' sound recordings on a massive scale, in flagrant violation of Plaintiffs' copyrights.  Defendants branded their Counterfeit Service by stealing UMG's trademarks used to identify the real Grooveshark service, thereby intentionally sowing confusion in the marketplace and causing consumers to believe that the original Grooveshark service was resurrected, notwithstanding Plaintiffs' collective enforcement efforts. Since it first launched, the Counterfeit Service has been accessible at various times via the following infringing domain names: grooveshark.io, grooveshark.pw, grooveshark.vc, and grooveshark.li (the "Infringing Domain Names").

Plaintiffs initiated this action on May 12, 2015, to stop Defendants' brazen and massive infringement and to recover damages therefrom. Defendants have failed to answer the Complaint or otherwise participate in this case in any manner.

Defendants are now in default and all of the requirements for entry of default judgment have been satisfied. The Clerk of the Court has entered a default against Defendants. Accordingly, Plaintiffs now seek a final judgment based on the well-pleaded allegations of their Complaint that Defendants are liable for trademark counterfeiting, using false designations of origin, cybersquatting and willful copyright infringement. Plaintiff UMG seeks an award of maximum statutory damages under the Lanham Act for willful trademark counterfeiting under 15 U.S.C. § 1117(c)(2) and for willful cybersquatting under 15 U.S.C. § 1117(d); and all Plaintiffs seek an award of maximum statutory damages under the Copyright Act for willful infringement of their copyrights under 17 U.S.C. § 504(c). Plaintiffs further seek a permanent injunction prohibiting Defendants from operating the Counterfeit Service and infringing Plaintiffs' trademarks and copyrighted works. Finally, Plaintiffs seek an award of attorneys' fees pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117.

## FACTUAL BACKGROUND

### I.   The Parties

#### A.      Plaintiffs

Plaintiffs are well-known record companies in the business of producing, manufacturing, distributing, selling, licensing, and facilitating the distribution, sale, public performance, and other authorized uses of sound recordings (*i.e.*, recorded music). *See* Complaint ("Compl.") ¶ 19, Dkt. No. 17. Plaintiffs are the copyright owners or owners of exclusive rights with respect to the majority of copyrighted sound recordings sold in the United States, including by some of the most popular and successful recording artists of all time, such as Beyoncé, Bob Marley, Green

2

Day, Justin Timberlake, Santana, and many more. *Id.* ¶ 33. An illustrative list of Plaintiffs' federally copyrighted sound recordings that Defendants have illegally reproduced, distributed, and/or performed to their users is attached as Exhibit E to the Complaint filed in this action. Each Plaintiff has Certificates of Copyright Registration for these copyrighted sound recordings. *Id.* ¶ 36.

**B.     The Grooveshark Marks and Logo**

The former operators of the real Grooveshark service, Escape Media Group, Inc. ("Escape"), were the subject of years of litigation brought by Plaintiffs that culminated in three separate court orders requiring Escape to terminate their operation of Grooveshark. *Id.* ¶¶ 2-6. As part of their settlement of the litigation with Plaintiffs, Escape conveyed to Plaintiff UMG ownership of federally-registered trademarks pertaining to the Grooveshark service, including the word mark "Grooveshark" and the shark fin logo design featured on the Grooveshark.com website (the "Grooveshark Marks"). *Id.* ¶¶ 5, 30. These marks have been registered with the United States Trademark Office for, *inter alia*, online music streaming services (Reg. No. 4114779 for the word mark GROOVESHARK and Reg. No. 4114780 for the Shark Fin Logo Design), and UMG is the owner of the registrations and all the goodwill associated with these marks. *Id.* ¶¶ 30-31.

The Grooveshark Marks are well known and have been widely and extensively used and promoted in interstate commerce on or in connection with the music streaming services offered by Escape. *Id.* ¶ 32. As such, the public and relevant consumers have come to recognize the Grooveshark Marks as identifying a single source of services (*i.e.*, the Grooveshark music service). *Id.*

### C.       Defendants

Defendants have operated the Counterfeit Service from locations outside the United States.  *Id.* ¶ 37.  On or about May 2, 2015, Defendants obtained registrations for the Infringing Domain Names "grooveshark.io" and "grooveshark.pw."  *Id.* ¶¶ 38-39; Declaration of Mark McDevitt in Support of TRO ("McDevitt TRO Decl.") ¶ 9, Dkt. No. 22.  The registration record for Grooveshark.io lists Defendant "Vita Tkach" as the Domain Owner, with an address in the city of Vinnytsia in the Ukraine.  *See* Compl. ¶ 40; McDevitt TRO Decl. ¶ 10 & Ex. B (registration record).[1]  In the course of third party discovery, Plaintiffs also have confirmed that Vita Tkach is registrant for the "Grooveshark.vc" and "grooveshark.li" Infringing Domain Names, and that Vita Tkach has operated the Counterfeit Service from the Ukraine.  *See* Declaration of Gianni P. Servodidio in Support of Default Judgment ("Servodidio Default Decl.") (submitted herewith), ¶ 17.

## II.   The Counterfeit Service

On May 5, 2015, Defendants launched their Counterfeit Service at the web address "grooveshark.io," which allowed users to download and stream infringing copies of Plaintiffs' sound recordings directly from servers operated or controlled by Defendants, in flagrant violation of Plaintiffs' copyrights.  *See* Compl. ¶ 7; McDevitt TRO Decl. ¶ 12.  Defendants' Counterfeit Service prominently featured counterfeit replicas of the Grooveshark Marks as well as identical graphical elements taken from the original Grooveshark website:

---

[1]  Registration of the grooveshark.pw domain is in the name of "WhoisGuard, Inc.," an identity protection service based in Panama.  McDevitt TRO Decl. ¶ 10.

*Figure A. The Counterfeit Service:*



*Figure B. The original Grooveshark music service:*



Compl. ¶ 8; Declaration of Gianni P. Servodidio in Support of TRO ("Servodidio TRO Decl.") ¶

18 & Exs. A, F (website screenshots), Dkt. No. 23.[2]

---

[2]  As set forth in Complaint, the Counterfeit Service hosted a vast number of MP3 music files (a popular format for digital music files).  Compl. ¶ 49.  Users who visited the Grooveshark.io website were able to locate these MP3 files with a search box, copied from the original Grooveshark website, which was prominently displayed to the user.  *Id.* ¶ 50.  After a user

In furtherance of their unlawful scheme, Defendants contacted various U.S.-based media outlets using the aliases "New Grooveshark" and "Shark" to boast of their efforts to copy and resurrect the original Grooveshark service.   In emails to reporters, the operators of the Counterfeit Service admitted their bad faith, stating, for example, that they copied the original Grooveshark website "[b]ecause YES, we can. And we want to.  Simple as that."  Compl. ¶ 9; McDevitt TRO Decl. ¶ 14 & Ex. D.

Adding to their attempts to mislead the public, Defendants described the Counterfeit Service on popular search engines with the patently false and misleading claim that the Counterfeit Service was the "New Grooveshark.com."  *See* Compl. ¶ 44 & Ex. H (Google and Bing search results for the terms "Grooveshark" and "Grooveshark.io," respectively).  As part of this campaign of deception, "Shark" claimed an affiliation with Escape, telling the media that he or she "was connected to Grooveshark a few years back."  Compl. ¶ 45 & Ex. I.

These efforts have succeeded in causing actual confusion among Internet users.   A selection of posts from Twitter.com shows that users were misled into believing, *inter alia*, that "Grooveshark is back, and how!" "Grooveshark is back from the dead," "[S]omeone revived the recently defunct Grooveshark," "Grooveshark is back up through Grooveshark_io," and "[S]omeone resurrected Grooveshark."  *See* Compl. ¶ 48 & Ex. J.

### III.  Procedural History and Defendants' Violation of the TRO and Preliminary Injunction

On May 12, 2015, Plaintiffs filed their Complaint along with an *ex parte* application for a

---

entered a search query, the Counterfeit Service directed users to search result pages, which contained links to MP3 files located on Defendants' servers.  *Id.* ¶ 51.  This process enabled users to reproduce or perform the song embodied in each MP3 file.  *Id.*  Each result on a search result page contained two types of icons:  (a) a "download" icon, which enabled users to download a new copy of the MP3 file, and (b) a "play" icon, which opened a small in-page player and began playing the song.  *Id.*

Temporary Restraining Order, a seizure order, and an order to show cause for a preliminary injunction against Defendants.  *See* Dkt. No. 17.  The next day, the Part I Judge of this Court granted Plaintiffs' Motion and entered the Temporary Restraining Order, enjoining Defendants from infringing Plaintiffs' trademarks and copyrights (hereinafter "TRO").  Servodidio Default Decl. ¶ 5; *see* TRO, Dkt. No. 18.  The TRO further required that Defendants' then-current domain name registrar, Namecheap Inc. ("Namecheap"), prevent the transfer of the groovshark.io and grooveshark.pw domain names to any third party and to render them inaccessible during the pendency of this action.  Servodidio Default Decl. ¶ 5.

Plaintiffs promptly served the TRO on Defendants and Namecheap.  Declaration of Kenneth L. Doroshow in Support of TRO ("Doroshow TRO Decl.") ¶¶ 6, 11, Dkt. No. 34.  While Defendants openly flouted the TRO (as described herein), Namecheap complied with it, the effect of which was the disabling of the "grooveshark.io" and "grooveshark.pw" domains.  *See* Doroshow TRO Decl. ¶ 7; Supplemental Declaration of Mark McDevitt ("Supp. McDevitt Decl.") ¶ 3, Dkt. No. 38.

Within hours after Namecheap disabled these domain names, Defendants registered a new infringing domain name, "grooveshark.vc," with a different domain name registrar named Dynadot, LLC ("Dynadot"), and used that domain as the new online location for the Counterfeit Service.  Supp. McDevitt Decl. ¶ 4.  Defendants further vowed that Plaintiffs "will not stop us" and that "we're more determined than ever to keep Grooveshark alive and kicking."  *See* Doroshow Declaration in Support of Application for Supplemental Order ¶ 8 & Ex. F, Dkt. No. 39.  Plaintiffs promptly served Dynadot with the TRO, and, like Namecheap, it thereafter disabled access to the "grooveshark.vc" domain.  *See* Supp. McDevitt Decl. ¶ 4.

On May 15, 2015, Defendants registered yet another domain name, "grooveshark.li,"

where the Counterfeit Service continued to be accessible to users. *Id.* ¶ 5. Defendants registered this new Infringing Domain Name with a domain name registrar located in Switzerland in an obvious attempt to evade Plaintiffs' ongoing (and thus far successful) enforcement efforts involving the U.S.-based registrars. *See id.*

On May 21, 2015, the Court issued an Order in which it extended the TRO, scheduled a preliminary injunction hearing on June 3, 2015, and warned Defendants that the Court would enter a preliminary injunction if they failed to participate in this litigation. *See* Dkt. No. 33 (hereinafter the "May 21 Order"). Although Plaintiffs served the Court's May 21 Order on Defendants, Defendants failed to file any response thereto or otherwise appear in the action. Servodidio Default Decl. ¶ 9.

On June 1, 2015, the Court entered a Preliminary Injunction against Defendants and those in active concert or participation with them, enjoining, *inter alia*, the operation of the Counterfeit Service. *See* Dkt. No. 53 (hereinafter "Preliminary Injunction"). Plaintiffs served the Preliminary Injunction Order on Defendants who once again ignored it while they continued to operate the Counterfeit Service (accessible by that time at the grooveshark.li domain name). Servodidio Default Decl. ¶ 11.

Meanwhile, Plaintiffs were seeking to have CloudFlare, Inc. ("CloudFlare"), a third-party provider of Internet services, comply with the Court's orders by ceasing its ongoing provision of services to the Counterfeit Service. *See* Supp. McDevitt Decl. ¶¶ 6-7. When CloudFlare refused to discontinue the provision of its services to Defendants after being served with the TRO, Plaintiffs filed a Supplemental Application with the Court to confirm that the TRO and Preliminary Injunction applied to CloudFlare. *See* Dkt. No. 35. On June 3, 2015, the Court issued an Order confirming that CloudFlare was bound by the TRO and Preliminary Injunction

and ordered that it cease providing services to Defendants.  *See* Dkt. No. 58.[3]  On June 3, 2015, CloudFlare complied with the Court's Order and discontinued its services to Defendants. Servodidio Default Decl. ¶ 15.

## ARGUMENT

**I.   The Entry of a Default Judgment is Warranted.**

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, a default judgment may be entered against a defendant who never appears or answers a complaint.  *See Phillip Morris USA Inc. v. A & V Minimarket, Inc.*, 592 F. Supp. 2d 669, 672 (S.D.N.Y. 2009). Furthermore, "a party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 189 (2d Cir. 2015) (internal quotations and citation omitted); *see also Phillip Morris*, 592 F. Supp. 2d at 672.  In this case, the Complaint, pleadings and declarations filed in support thereof clearly demonstrate that a default judgment should be entered against Defendants.[4]

---

[3]   On July 9, 2015, the Court clarified that Plaintiffs have the burden to bring additional infringing sites to the attention of CloudFlare and that, upon receipt of such notice from Plaintiffs or if CloudFlare otherwise has knowledge of an infringement on the part of one of its customers, it must cease providing its services to that customer no later than 48 hours after receiving such notice or obtaining such knowledge.  *See* Order at 3-4, Dkt. No. 82.

[4]  Jurisdiction for a default judgment is proper here.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, 15 U.S.C. §§ 1116 and 1121, and 17 U.S.C. § 502.  Compl. ¶¶ 14-15.  Moreover, as the allegations in the Complaint establish, the Court has personal jurisdiction over Defendants because (1) the defendants committed tortious acts outside New York; (2) the cause of action arose from those acts; (3) the tortious acts caused an injury to a person or property in New York; (4) the defendants expected or should have reasonably expected the acts to have consequences in New York; and (5) the defendants derived substantial revenue from interstate or international commerce.  *See id.* ¶ 16.

II.     **Defendants Are Liable for Trademark Counterfeiting and the Use of False Designations of Origin.**

Plaintiff UMG is entitled to default judgment on its claims for trademark counterfeiting and false designation of origin.  As the well-pleaded allegations of the Complaint demonstrate, Plaintiff UMG owns the Grooveshark Marks, the Grooveshark Marks are valid and entitled to strong protection, and there is a likelihood of confusion between the Counterfeit Service and the genuine service offered under the Grooveshark Marks.  *See, e.g., Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 454 (S.D.N.Y. 2005) (setting forth the two elements for a claim of trademark infringement or false designation of origin as (1) ownership of a "valid mark entitled to protection" and (2) defendants' use of a similar mark in commerce "in a way that would likely cause confusion").

A.     **Plaintiff UMG Owns The Grooveshark Marks, Which Are Valid and Protectable.**

Plaintiff UMG has established that it is the owner of all right, title, and interest in the Grooveshark Marks in connection with the same services being offered by Defendants under their counterfeit marks; namely, an online music streaming website.  Compl. ¶¶ 5, 8, 30-32.  The registrations for the Grooveshark Marks are prima facie evidence of UMG's ownership of the Grooveshark Marks, their validity, as well as of UMG's exclusive right to use its marks in commerce in connection with the goods or services specified in the registrations.  *See* 15 U.S.C. § 1057(b); *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999).  UMG has thus sufficiently demonstrated ownership of the Grooveshark Marks and that these Marks are valid and protectable.

B.     **Consumers Are Likely to Be Confused as to the Source of Defendants' Counterfeit Products.**

A counterfeit mark is a spurious mark that: (1) is identical to or substantially

indistinguishable from a registered mark; (2) is being used for the same goods and services as the plaintiff's mark; and (3) is being used without the authorization of the owner of the mark. *See* 15 U.S.C. §§ 1116(d), 1127. Courts in this District have found that, "where counterfeit marks are involved, it is not necessary to perform the step-by-step examination of each *Polaroid* factor because counterfeit marks are inherently confusing." *Lorillard Tobacco*, 378 F. Supp. 2d at 455 (citations and internal quotation marks omitted).[5] This is because "confusing the customer is the whole purpose of creating counterfeit goods [or services]." *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003).

Here, a simple visual comparison confirms that Defendants have adopted counterfeit replicas of the Grooveshark Marks for the identical service—a music streaming website— without UMG's permission, and are attempting to pass off their service as the "new Grooveshark.com." *See* Compl. ¶¶ 8, 43, 44. Thus, Defendants' use of the counterfeit mark is "inherently confusing." *Lorillard Tobacco Co.*, 378 F. Supp. 2d at 455. Indeed, as noted above, the actual confusion of consumers in this respect is readily apparent. *See supra* at 6 (discussing Twitter posts demonstrating confusion as to whether the Counterfeit Service was a resurrection of the original Grooveshark service). Accordingly, a default judgment is warranted as to UMG's claims for counterfeiting and false designation of origin.[6]

---

[5] In *Polaroid Corp. v. Polarad Electronics Corp.*, the Second Circuit set forth an eight factor test to be used when considering the likelihood of confusion of two marks. 287 F.2d 492, 495-96 (2d Cir. 1961).

[6] As UMG has established its claim for counterfeiting, it necessarily has demonstrated that Defendants are liable for the use of false designation of origin which also requires a showing of a protectable mark and a likelihood of confusion. *See Time, Inc. v. Petersen Publ'g Co.*, 173 F.3d 113, 117 (2d Cir. 1999).

### III.    Defendants Are Liable for Cybersquatting.

The Anti-Cybersquatting Consumer Protection Act of 1996 ("ACPA") is applicable in instances in which a domain name registrant has a bad faith intent to profit by "cybersquatting" a domain name that "is identical or confusingly similar to" the distinctive or famous mark of another.  15 U.S.C. § 1125(d).  The ACPA is meant to address counterfeiters who "'register well-known marks to prey on consumer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site, and target distinctive marks to defraud consumers.'"  *Diarama Trading Co., Inc. v. J. Walter Thompson USA., Inc.*, No. 01 Civ. 2950 (DAB)(DCF), 2005 WL 2148925, at *12 (S.D.N.Y. Sept. 6, 2005) (quoting *Lucas Nursery v. Grosse*, 359 F.3d 806, 809 (6th Cir. 2004)); *see also Albert Furst von Thurn und Taxis v. Karl Prince von Thurn und Taxis*, No. 04 Civ. 6107(DAB), 2006 WL 2289847, at *13 (S.D.N.Y. Aug. 8, 2006).

Here, the well pleaded allegations of the Complaint, as well as Defendants' open contempt and total disregard for these proceedings, amply demonstrate that Defendants have engaged in bad faith cybersquatting in violation of ACPA.  Defendants registered four Infringing Domain Names—each of which is comprised of the exact Grooveshark word mark in its entirety—and Defendants have used these domain names to confuse consumers and illegally divert traffic to the Counterfeit Service.  *See* Compl. ¶¶ 54, 55; Supp. McDevitt Decl. ¶¶ 4, 5; Pls.' Mem. in Supp. of TRO ("TRO Mem.") at 24-27, Dkt. No. 20.  Thus, entry of a default judgment on Plaintiff UMG's cybersquatting claim is appropriate.

### IV.    Defendants Are Liable for Copyright Infringement.

To establish copyright infringement, a plaintiff must show "(1) ownership of a valid copyright" and (2) a violation of "any of the copyright owner's five exclusive rights" under 17 U.S.C. § 106.  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (listing copyright

owner's exclusive rights to "reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of, [the] copyrighted work"); *Capitol Records, LLC, d/b/a EMI Music North Am. v. Escape Media Grp., Inc. ("EMI")*, No. 12-CV-6646 (AJN), 2015 WL 1402049, at *38 (S.D.N.Y. Mar. 25, 2015); *UMG Recording, Inc. v. Escape Media Grp., Inc. ("Arista Music")*, No. 11 Civ. 8407, 2014 WL 5089743, at *19 (S.D.N.Y. Sept. 29, 2014); *see also* TRO Mem. at 27-30.  Plaintiffs have demonstrated both elements here.

The well-pleaded allegations in the Complaint, which are deemed admitted on Defendants' default, readily establish Defendants' direct copyright infringement.  Plaintiffs own copyrights or exclusive rights in each of the 89 works listed in Exhibit E, Compl. ¶ 36 (the "Works-in-Suit"), and Defendants have infringed Plaintiffs' exclusive rights by reproducing, distributing and publicly performing Plaintiffs' works via the Counterfeit Service.  *Id.* ¶¶ 1, 3, 34-36.

Indeed, even beyond the allegations in the Complaint, Plaintiffs have provided conclusive evidence that infringing copies of MP3 files that correspond to each of the Works-in-Suit have been streamed, reproduced, and distributed via the Counterfeit Service to computers located in New York.  McDevitt TRO Decl. ¶¶ 27-29.  This constitutes direct infringement of Plaintiffs' exclusive rights under the Copyright Act.  *See, e.g.*, *EMI*, 2015 WL 1402049, at *38-40; *Arista Music*, 2014 WL 5089743, at *19-23.

Plaintiffs also have established that Defendants are secondarily liable for the infringement of users of the Counterfeit Service under the theories of inducement of infringement, vicarious liability, and contributory liability.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd. ("Grokster")*, 545 U.S. 913, 930, 934-36 (2005) (recognizing separate doctrines).

<u>First</u>, Defendants are liable for inducement because they: "(1) engaged in purposeful conduct that encouraged copyright infringement, with (2) the intent to encourage such infringement." *Arista Records LLC v. Lime Grp. LLC* (*"LimeWire"*), 784 F. Supp. 2d 398, 425 (S.D.N.Y. 2011); *Arista Records LLC v. Usenet.com, Inc.* (*"Usenet"*), 633 F. Supp. 2d 124, 150-52 (S.D.N.Y. 2009).  As the Complaint establishes, Defendants operated the Counterfeit Service with the object of promoting its use to infringe Plaintiffs' copyrighted sound recordings.  Compl. ¶¶ 42-48, 83-88; *see* TRO Mem. at 9-12.  Not only did Defendants specifically invite users to stream popular and obviously copyrighted sound recordings on demand, but they also prominently encouraged users to download unauthorized copies of those sound recordings with ease.  *See* Compl. ¶¶ 49-56, 84; TRO Mem. at 10-11.

<u>Second</u>, Defendants are vicariously liable for copyright infringement because they "profit[ed] from direct infringement while declining to exercise a right to stop or limit it." *Grokster*, 545 U.S. at 930; *EMI*, 2015 WL 1402049, at *41-*43; *LimeWire*, 784 F. Supp. 2d at 423.[7]  The allegations of the Complaint establish these elements, as Defendants provided users with access to a comprehensive library of Plaintiffs' popular sound recordings in order to draw users to the Counterfeit Service, while Defendants declined to exercise their right and ability to prevent such user infringement.  *See* Compl. ¶¶ 49-56, 83-88; TRO Mem. at 10-11.

<u>Finally</u>, Defendants are liable for contributory copyright infringement because they materially contributed to their users' infringing conduct with knowledge of the same.  *See Arista Records, LLC v. Doe 3*, 604 F.3d at 117-18; *EMI*, 2015 WL 1402049, at *43.  As the well-

---

[7]  All that is required to satisfy this element is a "causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of *how substantial* the benefit is in proportion to a defendant's overall profits." *Usenet*, 633 F. Supp. 2d at 157 (emphasis added) (citations and quotations omitted).  This relationship is established when the infringing material acts as a "draw" to attract users. *Id.* at 156-57.

pleaded allegations of the Complaint establish, Defendants have actual and constructive knowledge of the infringing activity of the Counterfeit Service's users, and they knowingly caused and materially contributed to users' infringement of Plaintiffs' copyrights by providing the means to search the Counterfeit Service for copyrighted music files and to stream and download those files.  Compl. ¶¶ 42-56, 87; *see* TRO Mem. at 10-12; McDevitt TRO Decl., Exs. D-G.

## V.   UMG Is Entitled to Maximum Statutory Damages for Willful Counterfeiting and Cybersquatting.

Where, as here, a case involves willful infringement, the Lanham Act provides for an award of statutory damages of up to $2,000,000 for each counterfeited mark per type of good offered.   15 U.S.C. § 1117(c).   The Lanham Act also provides for statutory damages for Defendants' willful cybersquatting of up to $100,000 for each Infringing Domain Name.   15 U.S.C. § 1117(d).  Statutory damages are intended to serve as both compensatory and punitive relief for a plaintiff who has been harmed by a willful counterfeiter and to serve as a deterrent against future counterfeiting.  *Sara Lee Corp. v. Bags of N.Y., Inc.*, 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999); *see Silhouette Int'l Schmied AG v. Chakhbazian*, No. 04 Civ. 3613 (RJH)(AJP), 2004 WL 2211660, at *2 (S.D.N.Y. Oct. 4, 2004).

Here, the Court may infer that Defendants willfully counterfeited the Grooveshark marks and engaged in cybersquatting simply on the basis of Defendants' default.  *See Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, No. 14-CV-7346 (KBF), __ F. Supp. 3d __, 2015 WL 1508497, at *5 (S.D.N.Y. Apr. 1, 2015) (drawing inference of willful trademark infringement by virtue of a defendant's default); *Chloe v. Zarafshan*, No. 1:06-cv-3140-RJH-MHD, 2009 WL 2956827, at *7 (S.D.N.Y. Sept. 15, 2009) ("Willfulness may be established by a party's default because an innocent party would presumably have made an effort to defend itself.").  Even without such an

inference, Plaintiffs' well-pleaded allegations demonstrate that Defendants' acts of infringement were inarguably willful.  As set forth above, Defendants launched their Counterfeit Service by stealing the Grooveshark Marks that UMG had just obtained through a settlement agreement. Defendants openly bragged about their intention to thwart plaintiffs' enforcement efforts in interviews with the media, and continued to operate the Counterfeit Service and register additional Infringing Domain Names in violation of multiple court orders.  *See supra* at 4-8; Compl. ¶¶ 9, 46; TRO Mem. at 9-11; Servodidio Default Decl. ¶ 12.

Under these circumstances, a maximum award of statutory damages is appropriate.  *See Tiffany (NJ) LLC v. Qi Andrew*, No. 10 Civ. 9471 (KPF)(HBP), 2015 WL 3701602, at *10-11 (S.D.N.Y. June 15, 2015) (awarding maximum $100,000 statutory damages on default judgment for cybersquatting); *Nat'l Football League v. Lee*, No. 11-cv-8911 (PKC), Default J. & Permanent Inj. at 6, Dkt. No. 24 (S.D.N.Y. Feb. 17, 2012) (awarding maximum $4,000,000 statutory damages on default judgment for trademark counterfeiting); *Levi Strauss & Co. v. Ding Shijun d/b/a/ LevisOnline.com*, No. 11-cv-7495 (WHP), Default J. & Permanent Inj. at 7, Dkt. No. 29 (S.D.N.Y. Jan. 4, 2012) (awarding maximum $6,000,000 statutory damages on default judgment for trademark counterfeiting); *Nat'l Football League v. Chen Cheng d/b/a njljerseydiscount.com*, No. 11-cv-0344 (WHP), Default J. & Permanent Inj. at 6, Dkt. No. 21 (S.D.N.Y. Mar. 24, 2011) (awarding maximum $4,000,000 statutory damages on default judgment for trademark counterfeiting); *Phillip Morris USA Inc. v. Marlboro Express*, No. 03-CV-1161 (CPS), 2005 WL 2076921, at *6 (E.D.N.Y. Aug. 26, 2005) (awarding maximum $4,000,000 statutory damages on summary judgment against trademark counterfeiter).

Thus, UMG respectfully requests entry of judgment against Defendants in the amount of $4,000,000 for willful counterfeiting of the two Grooveshark Marks as authorized by 15 U.S.C. §

1117(c)(2) and in the amount of $400,0000 for the bad faith registration of the four Infringing

Domain Names as authorized by 15 U.S.C. § 1117(d).[8]

## VI.    Plaintiffs Are Entitled to a Maximum Award of Statutory Damages for Copyright Infringement.

Section 504(c) of the Copyright Act allows a plaintiff to elect to recover statutory

damages "instead of actual damages and profits."   17 U.S.C. § 504(c)(1).   While statutory

damages generally range from $750 to $30,000 per work, the ceiling for individual awards is

extended to $150,000 per work infringed in cases where the infringement was willful.  *See id.* §

504(c)(1), (2).  As set forth herein, Defendants' egregious infringement and conduct in this case

warrants a statutory maximum of $150,000 per work infringed.

As noted above, the Court may infer that Defendants willfully infringed Plaintiffs'

copyrights given the entry of default.  *See supra* at 15; *see also Van Der Zee v. Greenidge*, No.

03 Civ. 8659 (RLE), 2006 WL 44020, at *3 (S.D.N.Y. Jan. 6, 2006) (inferring willfulness in

copyright case).  However, even without such an inference, Plaintiffs' well pleaded allegations,

coupled with Defendants' contemptuous conduct since the filing of this case, readily establish

that Defendants' acts of copyright infringement were willful.  As alleged in the Complaint,

Defendants launched the Counterfeit Service for the admitted purpose of infringing Plaintiffs'

sound recording copyrights on a massive scale by claiming to have resurrected the original

Grooveshark service – a service already found by two separate courts to have infringed

Plaintiffs' copyrights.  Compl. ¶¶ 4, 9, 46.  Thereafter, Defendants continued to operate the

---

[8]  A hearing regarding damages is not required here as the uncontested evidence contained in the multiple declarations filed in support of Plaintiffs' Motion for a TRO readily establishes the bases for the statutory damage awards specified in the proposed default judgment.  *See, e.g.*, *Manno v. Tenn. Prod. Ctr., Inc*, 657 F. Supp. 2d 425, 431 (S.D.N.Y. 2009) (conducting inquiry into damages based on parties' written submissions and finding defendant's conduct demonstrated willfulness in determining statutory damages); *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124-25 (S.D.N.Y. 2003) (awarding statutory damages based on plaintiffs' written submissions).

Counterfeit Service in open defiance of this Court's orders, even going so far as to register at least two additional infringing domain names after the issuance of the TRO, declaring through the media that Plaintiffs "will not stop us" and that "we're more determined than ever to keep grooveshark alive and kicking."  *See supra* at 4-8.

Courts in this and other Circuits have routinely held that such willful misconduct justifies a large award per work infringed, including awards of the statutory maximum.  *See Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288-89 (2d Cir. 1999) (upholding maximum award for willful infringement); *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., Inc.*, 74 F.3d 488, 496-97 (4th Cir. 1996) (same); *Nat'l Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 479-80 (S.D.N.Y. 2001) (awarding maximum for willful infringement for certain periods of infringement); *RSO Records, Inc. v. Peri*, 596 F. Supp. 849, 862-63 (S.D.N.Y. 1984) (awarding maximum for willful infringement); *Entral Grp. Int'l v. Sun Sports Bar Inc.*, No. 05-cv-4836 (CBA), 2007 WL 2891419, at *5-6 (E.D.N.Y. Sept. 28, 2007) (same); *Macklin v. Mueck,* No. 00-10492-Civ., 2005 WL 1529259, at *1 (S.D. Fla. Jan. 28, 2005) (same); *Warner Bros. Entm't v. Caridi*, 346 F. Supp. 2d 1068, 1074 (C.D. Cal. 2004) (same).

Given the egregious circumstances of this case, Plaintiffs should be awarded the full amount of statutory damages of $150,000 for each of the 89 works identified in the Complaint, for a total of $13,350,000.

## VII.   Plaintiffs Are Entitled to Reasonable Attorneys' Fees and Costs.

Section 505 of the Copyright Act specifically authorizes the court to "allow the recovery of full costs by or against any party" and "also [to] award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.  Although such fees are awarded in the court's discretion, "they are the rule rather than the exception and should be awarded routinely." *Kroll-O'Gara Co. v. First Def. Int'l, Inc.*, No. 99 Civ. 4899 (SAS), 2000 WL 369721, at *1

(S.D.N.Y. Apr. 11, 2000) (emphasis added) (internal quotations and citation omitted); *RC Entm't, Inc. v. Rodriguez*, No. 98 Civ. 8585 (BSJ), 1999 WL 777903, at *3 (S.D.N.Y. Sept. 29, 1999); *In Design v. Lauren Knitwear Corp.*, 782 F. Supp. 824, 836 (S.D.N.Y. 1991); *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 592 (6th Cir. 2008); *Compaq Comput. Corp. v. Ergonome Inc.*, 387 F.3d 403, 411 (5th Cir. 2004).  In cases of willful infringement, an award of attorneys' fees and costs under Section 505 is "justified" and "in line with the statutory goal of deterrence."  *Kepner-Tregoe, Inc.*, 186 F.3d at 289; *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 634 (S.D.N.Y. 2011); *U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.*, No. 04 Civ. 6189 (JFK), 2008 WL 3906889, at *17 (S.D.N.Y. Aug. 21, 2008).[9]

For the reasons already shown, and in light of Defendants' default and willful conduct, Plaintiffs are the prevailing parties here.  Accordingly, Plaintiffs should be awarded their reasonable attorneys' fees and costs in an amount to be proven in a forthcoming submission.

**VIII.   Plaintiffs Are Entitled to a Permanent Injunction.**

A court may "issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction."  *Hounddog Prods.*, 826 F. Supp. 2d at 632 (internal citations and quotation marks omitted).

Under Section 34 of the Lanham Act, a court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable."  15 U.S.C. §

---

[9] The Lanham Act similarly authorizes the court to "award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a).  "The finding of willfulness determines the right to attorneys' fees."  *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (affirming grant of attorneys' fees and default judgment against trademark infringer); *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111-12 (2d Cir. 2012) (affirming award of attorneys' fees against willful trademark counterfeiters); *Union of Orthodox Jewish Congregations of Am. v. Am. Food & Beverage Inc.*, 704 F. Supp. 2d 288, 293 (S.D.N.Y. 2010) (granting default judgment and awarding attorneys' fees against trademark counterfeiter).

1116(a).  The Lanham Act also allows "the forfeiture or cancellation of the [infringing] domain name or the transfer of the domain name to the owner of the mark."  15 U.S.C. § 1125(d)(1)(C); *Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 500 (2d Cir. 2000) (affirming district court's order transferring the domain and permanently enjoining infringers from taking any action to prevent or hinder the transfer of such domain).  Section 502(a) of the Copyright Act further authorizes the Court to grant "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a); *see also Hounddog Prods.*, 826 F. Supp. 2d at 632-33 (granting permanent injunction on a motion for default judgment).

A.      Plaintiffs Meet the Requirements for Injunctive Relief.

A plaintiff seeking to obtain a permanent injunction must establish: "'(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'"  *Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).  All of these elements are readily satisfied here.

First, Plaintiffs have demonstrated that they will suffer irreparable injury if Defendants are permitted to operate the Counterfeit Service.  *See* Compl. ¶¶ 49-56, 62-63; TRO Mem. at 30-33.  Indeed, the need for permanent injunctive relief is particularly acute in this case.  As noted above, Defendants openly defied this Court's TRO and Preliminary Injunction orders by continuing to operate the Counterfeit Service and going so far as to register two additional infringing domain names with two different domain name registrars in an attempt to thwart Plaintiffs' enforcement efforts.  *See supra* at 7-8.   Immediately after the entry of the TRO and

consequent shutdown of grooveshark.io, Defendants were quoted in the media saying: "You will not stop us . . . after this hit we're more determined than ever to keep grooveshark alive and kicking." Servodidio Default Decl. ¶ 12. It is well established that such "past violations may . . . justify an inference that a defendant is likely to violate the law in the future if not enjoined." *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975); *see also Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 405 (2d Cir. 2004) (previous infringing behavior was justification for injunction).[10]

<u>Second</u>, while an award of statutory damages against Defendants is warranted, damages alone cannot protect Plaintiffs against future infringements by Defendants – only an injunction can do so. *See Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, 553 (S.D.N.Y. 2008) (finding money damages alone are not adequate remedy in view of irreparable harm from continued infringement). Indeed, an award of damages is likely to be ineffective in preventing further infringement as Defendants have refused to appear in the case and operate outside the U.S., rendering any judgment uncollectible. *See, e.g.*, *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 262 (2d Cir. 2012) ("damages are an ineffective remedy" because defendant "will simply refuse to pay any judgment"); *Lava Records LLC v. Ates*, No. Civ.A. 05-1314, 2006 WL 1914166, at *3 (W.D. La. July 11, 2006) (harm from infringement is not remedied "by a damage award that may or may not be collectible").

<u>Third</u>, the balance of hardships plainly favors the plaintiffs. As the Court already found

---

[10] The fact that Counterfeit Service remains inaccessible at this time does not render moot the need for a permanent injunction. Defendants' repeated pattern of violation of court orders in this action as well as their statements of defiance and bad faith underscore the need for permanent injunctive relief. *See, e.g., BMG Music v. Gonzalez,* 430 F.3d 888, 893 (7th Cir. 2005) (permanent injunction appropriate to "ensure that the misconduct does not recur as soon as the case ends"); *Fresh Del Monte Produce Inc. v. Del Monte Foods Co.*, 933 F. Supp. 2d 655, 661 (S.D.N.Y. 2013) (issuing permanent injunction because "post-trial cessation" of infringing conduct did not moot injunctive relief).

when granting the TRO, the harm that Plaintiffs would suffer in the absence of an injunction clearly outweighs any harm to Defendants' legitimate interests from granting such an order. *See* TRO ¶ 10. Indeed, Defendants appear to have no legitimate business activities that would be harmed by an injunction. Servodidio Default Decl. ¶ 18.

Fourth, a permanent injunction would serve the strong public interest in not being misled as to the origin, source, or sponsorship of trademarked goods and services. *See Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1173 (2d Cir. 1976). Furthermore, "the public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating" those works. *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) (affirming grant of preliminary injunction in copyright case).

Finally, and for the reasons set forth in this Court's June 3, 2015 Order as modified on July 9, 2015, the injunction should continue to apply to CloudFlare with regard to the services it previously provided to Defendants. *See* Mem. & Order at 9-10, Dkt No. 58 ("[T]he Court concludes that CloudFlare is in active concert or participation with Defendants . . . [and] concludes and clarifies that CloudFlare was bound by the TRO and is now bound by the existing preliminary injunction"). The proposed injunction merely carries forward the identical terms already ordered by the Court in this regard.

## B.     The ACPA Authorizes the Domain Name Transfer Sought By Plaintiffs.

As admitted by Defendants through default, the Infringing Domain Names are essential components of Defendants' infringing activities and incorporate the Grooveshark word mark in its entirety. Indeed, they are the very means by which Defendants have operated the Counterfeit Service. Compl. ¶¶ 7, 49-56. To render any injunction meaningful, therefore, Defendants (and, if Defendants refuse to comply, the domain registrars and registries who hold or list the

Infringing Domain Names) should be required to transfer control of the Infringing Domain Names to Plaintiffs. Such a remedy is specifically provided for by the ACPA which states that, "[i]n any civil action involving the registration, trafficking, or use of a domain name . . . a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(C).

Based on such statutory authority, courts in this District regularly order the transfer of infringing domain names to the rightful trademark owners. *See, e.g.*, *Sporty's Farm*, 202 F.3d at 499-500 (affirming transfer of infringing domain name); *True Religion Apparel, Inc. v. Xiaokang Lei d/b/a truereligionjeans4outlet.com*, No. 11-cv-8242 (HB), Def. J. & Permanent Inj. at 12-14, Dkt. No. 31 (S.D.N.Y. Mar. 12, 2012) (ordering transfer of infringing domain names); *Nat'l Football League v. Chen Cheng d/b/a nfljerseydiscount.com*, No. 11-cv-344 (WHP), Default J. & Permanent Inj. at 7, Dkt. No. 21 (S.D.N.Y. Mar. 24, 2011) (same); *Virgin Enters. Ltd. v. Enom, Inc.*, No. 08-cv-0328 (JGK) (THK), 2008 WL 4054418, at *4 (S.D.N.Y. Aug. 18, 2008) (ordering transfer of infringing domain name on default judgment). The Court should therefore order the transfer of all four Infringing Domain Names to Plaintiffs.

Alternatively, and for many of the same reasons articulated above, Plaintiffs are entitled to a domain name transfer under the court's equitable powers to render the injunction meaningful. As noted, absent a transfer of the instrumentalities of infringement to Plaintiffs, Defendants or other third parties could assume control of the Infringing Domain Names. Such a result would render an injunction meaningless. *See, e.g., Philip Morris USA v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 245-47 (S.D.N.Y. 2004) (holding that court had equitable power to order transfer to plaintiff of domain names of websites engaged in sales of counterfeit cigarettes).[11]

---

[11] Plaintiffs' proposed permanent injunction comports with Rule 65(d) of the Federal Rules of

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter a Default Judgment and Permanent Injunction against Defendants in the form of the Proposed Order.

DATED: New York, NY
       October 28, 2015

Respectfully submitted,

JENNER & BLOCK LLP


By: _Kenneth L. Doroshow_

Kenneth L. Doroshow (KD-8374)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone: (202) 639-6027
Facsimile: (202) 639-6066

Andrew H. Bart (AB-6724)
Gianni P. Servodidio (GS-0713)
Lindsay W. Bowen (LB-8510)
Alison I. Stein (AS-2884)
919 Third Avenue
39th Floor
New York, NY 10022
Telephone: (212) 891-1600
Facsimile: (212) 891-1699

*Attorneys for Plaintiffs*

---

Civil Procedure. The proposed injunction "state[s] the reasons why it issued," "state[s] its terms specifically," and "describe[s] in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required." Fed. R. Civ. P. 65(d).